Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
E-mail:   gkleiner@rinconlawllp.com
          cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

THE SAN FRANCISCO ART INSTITUTE,
    a California nonprofit
    public benefit corporation,

    Debtor.

Case No. 23-30250 HLB
Chapter 7
Hon. Hannah L. Blumenstiel

**DECLARATION OF PAUL MANSDORF IN SUPPORT OF MOTIONS FOR AUTHORITY TO (I) PAY A PRIVATE SECURITY FIRM AND (II) PAY/ COMPENSATE THIRD-PARTY SERVICE PROVIDERS AT 800 CHESTNUT STREET, SAN FRANCISCO, CA**

[No Hearing Required Unless Requested]

I, Paul Mansdorf, declare as follows:

1.  I am serving as Chapter 7 Trustee of the estate of the above Debtor. This declaration is filed in support of my Motion for Authority to Engage a Private Security Firm (Pro Guard Security Services, Inc.) and my Motion for Authority to Pay / Compensate Third-Party Service Providers at 800 Chestnut Street, San Francisco, California.

2.  Attached as **Exhibit A** is a copy of "Security Officer Services Agreement" ("Agreement") I have entered into with Pro Guard Security Services, Inc. ("Pro Guard") to provide security services for leased real property commonly referred to as 800 Chestnut Street, San Francisco, California ("Premises"). The Debtor is the tenant at the Premises. According to information I have received, Pro Guard has provided security at the Premises for years prior to the

1  petition date. The estimated charge for Pro Guard's service is approximately $1,250 per day which
2  is equal to approximately $38,500 per month.

3.  The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023 ("Petition Date"). I am informed and believe and on that basis state that (i) through July 2022, the Debtor had operated for over 150 years as an arts education institution, (ii) the Premises was the Debtor's main campus and administrative office, and the Debtor ceased day-today operations in July 2022.

4.  The Premises contains much of the Debtor's personal property, including, among other things, certain books and records related to the Debtor's operations, assorted personal property (e.g., FF&E), multiple works of art, including several that are extremely valuable. I first went to the Premises on April 24, 2023 and have been to it roughly 4 additional times since that date – most recently on May 13, 2023. While at the Premises I have been advised that, on more than one occasion, people have sought to break into the building. In order me to protect the property from intruders, evaluate the lease for the Premises and the personal property contained in the Premises, I believe it is necessary and appropriate to continue the pre-petition security services that Pro Guard (or such other security service that I may engage) has been providing to the Premises.

5.  If authorized by the Court, the estate will only pay Pro Guard on account of services that arose after the Petition Date.

6.  Concurrent with the filing of this notice, my counsel has also filed a motion seeking authority to pay other basic costs related to the Premises such as insurance, water, gas, electricity, janitorial services, trash, and internet connectivity ("Insurance and Other Service Costs. I estimate that, over the course of six months post-petition, the estate will incur administrative expenses for the insurance of approximately $14,250 and, no more than $2,500 per month for the other services.

7.  I believe, in the exercise of my business judgment, that continuing to maintain 24-hour security at the Premises and paying for post-petition Insurance and Other Service Costs are critical in order to preserve the potential value of the lease for Premises and the contents located in the Premises for the benefit of the estate.

///

I declare under penalty of perjury under the laws of the United States of America that, except for statements made on information and belief, the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 15th day of May 2023 in Berkeley, California.

Paul J. Mansdorf
Digitally signed by Paul J. Mansdorf
Date: 2023.05.15 15:01:01 -07'00'

PAUL MANSDORF


# ProGuard Security Services, Inc.
## SECURITY OFFICER SERVICE AGREEMENT

THIS AGREEMENT is made and entered into by and between PROGUARD SECURITY SERVICES, INC. ("**ProGuard**"), a Delaware corporation with an office at 300 Montgomery Street, Suite 813, San Francisco, California 94104, and the person or entity executing this agreement below ("**Customer**"), Paul Mansdorft, Trustee, solely in his capacity as Trustee of the Estate of San Francisco Art Institute, to be effective as of the date set forth below (the "**Date**").

WITNESSETH:

IN CONSIDERATION of the mutual covenants hereinafter set forth, ProGuard and Customer agree as follows.

1. <u>SCOPE OF SERVICES; POST ORDERS</u>. ProGuard shall provide to Customer, at the Protected Premises (as defined below) only, those security services which are specified in those currently effective Post Orders which have been executed by both ProGuard and Customer (the "**Post Orders**"), including among other matters the number of man hours to be provided (the "**Services**"). Changes in the Services may be made from time to time by mutual agreement between ProGuard and Customer, but no such change shall become effective until specified in writing in a subsequently dated Post Order signed by both parties. All Post Orders referring to this Agreement and signed by both ProGuard and Customer shall form a part of this Agreement and shall be incorporated herein for all purposes. ProGuard does not agree to provide, and shall not be responsible for, any Services which have not been specified herein or in a Post Order signed by both parties hereto. ProGuard shall obtain and keep current all licenses required by law.

2. <u>PROTECTED PREMISES</u>. Customer desires to contract for the Services described herein and in the Post Order(s), and ProGuard desires to provide the Services, at those specific premises which are owned or leased by Customer and specified on the signature page hereto or in any effective Post Orders (the "**Protected Premises**").

3. <u>TERM</u>. Unless otherwise specified in the Post Order, the term of this Agreement shall commence on the Effective Date and shall continue until the initial termination date specified below (the "**Initial Term**"). Following the Initial Term, this Agreement shall be automatically renewed and extended for an indefinite number of successive 14-day periods; *provided, however,* that either party hereto may at any time terminate this Agreement (whether during or after the Initial Term) by giving the other written notice of the notifying party's intention to terminate.

4. <u>COMPENSATION TO PROGUARD</u>.

   A. <u>Regular Compensation</u>. Customer agrees to pay ProGuard for regular scheduled Services at the following rates per man hour of service (subject to adjustment as provided below):

| Position Rate | Cost | Overtime/Holiday/Events |
|---|---|---|
| Special Coverage Security | $51.48 per hour | $51.48 per hour |

   B. <u>Billing</u>. ProGuard shall be compensated at the rates described in table above, billable bi-weekly in arrears. Invoices for Services rendered hereunder will be mailed or delivered to Customer at the address specified below (the "**Customer Address**"), and are payable not later than the



Initials: Customer __PM__ Company __MW__       Page 1
112016-5

**EXHIBIT A**

Case: 23-30250   Doc# 24   Filed: 05/16/23   Entered: 05/16/23 05:52:47   Page 4 of 8



reasonable amount of time as determined by the U.S. Bankruptcy Court, after the date specified thereon (the "**_Billing Date_**"). Invoices are deemed correct and valid after a thirty-day review period starting on the Billing Date.

        C.    <u>Payment Schedule</u>. Payment shall be made no later than the reasonable amount of time as determined by the U.S. Bankruptcy Court of the receipt of an invoice by Customer from ProGuard. Rates specified herein shall remain in effect through THE Initial Term, after which ProGuard may issue proposed rate adjustments, the acceptance of which shall be deemed a revision of the Agreement retroactive to the previous expiration date. Rates for any special hazard or high-risk coverage will be mutually agreed to between Customer and ProGuard.

        D.    <u>Wage Escalation</u>. If there is enacted any Law, regulation, ruling, or mandate by any authority having jurisdiction of the subject matter which alters the hours of service, rates of pay, working conditions, or ProGuard's cost of performing the Services provided for herein, then ProGuard may upon written notice to Customer adjust the rates for Services provided for in Paragraph A above.

        E.    <u>Holiday Rates; Overtime</u>. ProGuard recognizes eight (8) holidays: New Year's Day, Presidents Day, Memorial Day, Juneteenth, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. Overtime and time billed on holidays will be billed at the higher of the Overtime/Holiday rates specified above or any higher rate required by applicable law to be paid to the personnel involved.

5.    <u>SECURITY PERSONNEL</u>.

        A.    <u>Employees of ProGuard</u>. The Services will be provided by employees of ProGuard, which shall be solely responsible for all matters relating to their employment, including but not limited the terms thereof, and all decisions relating to hiring, compensation, termination, direction, and compliance with all federal, state and local laws and regulations. ProGuard shall also have and exercise in its sole discretion full and exclusive control and supervision of the manner in which its employees and agents perform the Services and work to be provided under this Agreement. Customer agrees that during the term of this Agreement it will not, without ProGuard's prior written approval, employ, or solicit, or accept any application for employment by, any employee or employees of ProGuard who have at any time during the proceeding twelve months rendered security guard services at any premises of Customer.

        B.    <u>Approval of Assigned Employees</u>. Customer shall have the right to approve any employee proposed by ProGuard to be assigned to the Protected Premises. If any employee of ProGuard is not so approved by Customer, ProGuard shall not assign such person to the Protected Premises and shall propose substitute personnel. Customer shall also have the right at any time to withdraw its approval of such employee of ProGuard, with or without cause, and ProGuard shall provide substitute personnel for Customer's approval within a reasonable period of time, but in no event more than two (2) weeks.

6.    <u>EQUIPMENT</u>. ProGuard shall provide equipment necessary to perform the Services, including uniforms and personal security equipment as needed. Additional equipment requested by the Customer will be charged per a preset payment schedule.



Initials: Customer_____ PM _____ Company_____ NW _____

Page 2
112016-5

**EXHIBIT A**

DocuSign Envelope ID: 554B7617-D3B7-4AAA-A2BC-85E9E8B0DC8E



7.  **RELATIONSHIP OF THE PARTIES**. The relationship between ProGuard and Customer hereunder is that of an independent contractor. Nothing contained in this Agreement may be construed, interpreted, or held out to others as creating any agency, partnership, joint venture, employment, or fiduciary relationship, or as any other form of joint enterprise, between ProGuard and Customer or any of their respective owners, managers, officers, employees, agents (collectively, "***Personnel***"). Neither Party hereto shall have, or shall be held out to third parties as having, any authority to contract for or bind the other Party in any manner whatsoever.

8.  **LIMITS OF LIABILITY**. Customer acknowledges and agrees that the Services provided hereunder are not intended to and will not constitute any form of maximum or absolute security of any kind. Rather, they provide a degree of security resulting from the reasonable efforts of security personnel to carry out mutually agreed upon security procedures, at the Protected Premises, during the hours mutually agreed upon. ProGuard is not an insurer, and the amounts payable to ProGuard under this Agreement are based solely upon the value of the Services rendered. They are unrelated to the value of Customer's property or the lives or property of Customer, its Personnel and guests, or anyone else. Customer hereby waives all rights of subrogation against ProGuard and ProGuard's insurance company. Any offset by Customer from amounts payable to ProGuard without Company's prior agreement is prohibited.

9.  ProGuard shall release Customer from any liability or penalty which may be imposed on Contractor by reason of any alleged violation or violations of applicable law by Contractor in performance of the Work unless Manager knowingly contributes to such violation, or alleged violation.

10. **INSURANCE**.

    A.  **Evidence of Insurance Held by ProGuard**. On Customer's request, ProGuard will provide Customer evidence of the following insurance coverage:

    (i)  Workmen's Compensation, as required by applicable law, covering all security personnel engaged in the furnishing of the Services; and

    (ii) Comprehensive general liability covering liability for personal injury (which shall include false arrest detention or imprisonment, malicious prosecution, libel, slander, defamation of character, or violation of privacy) and property damage with the following limits: Property Damage/Personal Injury Liability - Single Limit Liability - $1,000,000. Aggregate - $2,000,000.

    B.  **Automobile Coverage Provided by Customer**. To the extent that automobiles or mobile equipment are furnished by Customer for the use of ProGuard personnel it is agreed that such vehicles shall be insured by Customer and that ProGuard shall be deemed to be a permissive user under any such insurance policy.

11. **INDEMNIFICATION**.

    A.  **By ProGuard**. ProGuard agrees to indemnify and hold harmless Customer and its Personnel from and against all liabilities, demands, claims, damages, suits, or judgments, including attorneys' fees and other costs and expenses incident thereto, resulting from harm (including but not limited to harm resulting from false arrest, searches, libel, and slander), injury, or death to persons, or loss, damage or destruction to property, resulting from the gross negligence or willful misconduct of ProGuard or its directors, officers, agents or employees, while any such person is acting within the scope of his or her employment by ProGuard.

    B.  **By Customer**. Customer agrees to indemnify and hold harmless ProGuard and its Personnel from and against all liabilities, demands, claims, damages, suits or judgments, including



Initials: Customer PM  Company MN

Page 3
112016-5

**EXHIBIT A**

Case: 23-30250    Doc# 24    Filed: 05/16/23    Entered: 05/16/23 05:52:47    Page 6 of 8



attorneys' fees and other costs and expenses incident thereto, resulting from harm (including but not limited to harm arising from false arrests, searches, libel, and slander), injury, or death to persons, or loss, damage or destruction to property, based on or arising out of (i) the performance by ProGuard or its Personnel, at the request of Customer or its Personnel, of any act or activity other than the Services, or (ii) any act or condition constituting gross negligence or willful misconduct of Customer or its directors, officers, agents or employees.

12. <u>DISPUTES</u>; Customer shall notify ProGuard in writing of any dispute regarding an invoice and the nature thereof within thirty business days of receipt, otherwise such dispute and defenses to non-payment shall be waived. Customer shall promptly pay the undisputed portion of the invoice and the parties shall attempt to resolve in good faith any disputed portion. Any controversy or claim arising out of or relating to this agreement, will, at the request of any party, be determined by the U.S. Bankruptcy Court. Judgment on the award rendered by the U.S. Bankruptcy Court may be entered in any court having competent jurisdiction.

13. <u>DEFAULT</u>. If Customer shall default in the payment of any amount due and payable to ProGuard hereunder or in performing or observing any other agreement or condition of this Agreement on Customer's part to be performed or observed, and if such default shall not have been cured by Customer within five (5) days after written notice thereof from ProGuard to Customer, ProGuard may employ an attorney to enforce any provision of this Agreement, including the collection of any amount due and payable to ProGuard hereunder, and Customer agrees to pay to ProGuard the full amount of the attorneys' fees incurred by ProGuard in connection therewith as well as all other costs and expenses incurred by ProGuard in connection with such enforcement of this Agreement. The rights of ProGuard to recover all amounts due and payable to it hereunder, including attorneys' fees, shall survive the, termination of the Agreement by ProGuard as provided above. The rights and remedies to which ProGuard may be entitled, either by law or by this Agreement, are cumulative and the exercise of any one of them shall not impair ProGuard's right to exercise any other of them.

14. BANKRUPTCY. If voluntary bankruptcy proceedings be instituted by Customer or if proceedings be instituted by anyone else to adjudge Customer a bankrupt, or if Customer makes an assignment for the benefit of creditor, or if the interest of Customer in this Agreement passes by operation of law to any person other than Customer, this Agreement may, at the option of ProGuard, be terminated immediately by written notice to Customer.

15. <u>GENERAL PROVISIONS</u>.

    A.    <u>Notices</u>. All notices, demands, consents or approvals required under this Agreement shall be in writing and shall be deemed given when delivered personally or three (3) business days after being deposited in the U.S. Mail, first class postage prepaid, return receipt requested, addressed to the party to receive same at the address of such party shown below or such other address as such party may hereafter designate to the other in writing.

    B.    <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between ProGuard and Customer with respect to the subject matter hereof, and supersedes all prior and contemporaneous understandings and agreements, both written and oral, with respect thereto. Except as provided in Section 4, above, it may not be altered, changed, or supplemented except by a written instrument signed by both ProGuard and Customer; and no failure to exercise, or delay in exercising, any right, remedy, or privilege arising from this Agreement will serve as a waiver thereof. If any term of this Agreement is found by a court to be invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other term or provision hereof. This



Page 4
112016-5

**EXHIBIT A**

DocuSign Envelope ID: 554B7617-D3B7-4AAA-A2BC-85E9E8B0DC8E



Agreement shall bind and inure to the benefit of ProGuard and Customer and their respective heirs, executors, administrators, successors, and (except as otherwise provided in the Agreement) their respective assigns.

    C.    *Force Majeure*. ProGuard shall not be liable for any interruption, delay or failure to perform any obligation under this Agreement that may result from causes beyond its reasonable control, including but not limited to strikes, lockouts or other labor difficulties, acts of any government, riot, insurrection or other hostilities, embargo, fuel or energy shortage, fire, flood, acts of God, wrecks or transportation delays, or inability to obtain necessary labor, materials, or utilities. In any such event, ProGuard will promptly notify the Customer, either orally or in writing, upon learning of the occurrence of such event, and its obligations hereunder shall be postponed for such time as its performance is suspended or delayed on account thereof.

    D.    *Governing Law*. This Agreement shall be governed by and enforced pursuant to the laws of the State of California, without reference to the choice or conflict of laws rules or doctrines of that or any other jurisdiction. Any legal action with respect to this Agreement shall be heard exclusively in courts located in the City and County of San Francisco, California. Each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding, and waives any defense of inconvenient forum.

    E.    *Counterparts.* This Agreement may be executed in counterparts which when taken together shall constitute one fully executed original. Signatures delivered via facsimile or e-mail shall be treated as originals.

    F.    *Attorney's Fees.* If either Party takes legal action against the other to enforce this Agreement or recover damages hereunder, the Party in whose favor final judgment is entered shall recover from the other Party its reasonable attorneys' fees and costs.

    G.    *Captions*. The section and paragraph captions used herein are for convenience only and not be deemed to have been included for any other purpose.

IN WITNESS WHEREOF, this Agreement is executed below, to be effective as of the date signed by ProGuard below (the "*Effective Date*").

| Customer | Paul Mansdorft, Trustee, solely in his capacity as Trustee of the Estate of San Francisco Art Institute | ProGuard | |
|---|---|---|---|
| Date | 4/21/2023 | Date | 4/21/2023 |
| Title | Chapter 7 Trustee | Title | CEO |
| Signature | *Paul Mansdorf* (DocuSigned) | Signature | *Nils Welin* (DocuSigned) |
| Print Name | Paul Mansdorf | Print Name | Nils Welin |
| ProGuard License No. | PPO 119678 | | |
| Customer Billing Address: | 1569 Solano Ave #703 Berkeley, CA 94707 | | |
| Protected Premises | 800 Chestnut St., San Francisco CA. | | |
| Initial Termination Date: | 5/21/2023 | | |
| Effective Date: | 4/21/2023 | | |

Initials: Customer __PM__ (DS)    Company __NW__ (DS)    Page 5

112016-5

**EXHIBIT A**