Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.:  415-672-5991
Facsimile No.:  415-680-1712
E-mail:       gkleiner@rinconlawllp.com
              cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE SAN FRANCISCO ART INSTITUTE,<br>    a California nonprofit<br>    public benefit corporation,<br><br>          Debtor. | Case No. 23-30250 HLB<br>Chapter 7<br>Hon. Hannah L. Blumenstiel<br><br>**DECLARATION OF GREGG S. KLEINER**<br>**RE PROPOSED ORDER**<br><br>Date:       December 21, 2023<br>Time:       10:00 a.m.<br>Place:      Zoom Video Conference |

I, Gregg S. Kleiner, declare as follows:

1.     I am an attorney authorized to practice before this Court and counsel to Paul Mansdorf, Trustee in Bankruptcy of the estate of the above-named Debtor.

2.     On November 22, 2023, counsel for the proposed purchaser of the estate's leasehold interest in the Chestnut Campus, and certain property located at the Chestnut Campus, including the Mural, as described in the Trustee's motion[1], caused to be filed the Declaration of Lynn Feintech in Support of Motion for Authority to: (I) Sell Estate's Interest In Personal Property; (II) Assume and

---

[1] Motion for Authority to: (I) Sell Estate's Interest in Personal Property; (II) Assume and Assign Estate's Interest in Real Property Lease; (III) Amend Non-Residential Real Property Lease; (IV) Pay Cure Amount to Landlord; and (V) Pay Commissions and Related Costs of Sale (Lease for 800 Chestnut Street, San Francisco, California and Mural by Diego Rivera and Other Personal Property) filed November 22, 2023 as Docket 129 ("Motion").

Assign Estate's Interest in Real Property Lease; (III) Amend Non-Residential Real Property Lease; (IV) Pay Cure Amount to Landlord; and (V) Pay Commissions and Related Costs of Sale as Docket 134 ("Feintech Declaration").

3.     Attached to the Feintech Declaration as Exhibit A [Docket 134-1] was a copy of the proposed "Order (A) Approving Asset Purchase Agreement by and Between Paul Mansdorf, as Trustee Appointed Pursuant to Chapter 7 of the Bankruptcy Code for The San Francisco Art Institute, And BM-AI LLC, (B) Approving the Sale of Substantially All of SFAI's Assets to BM-AI, LLC, Pursuant to 11 U.S.C. § 363; (C) Approving the Assumption and Assignment of the Lease and the Payment of Cure Obligations Related Thereto; and (D) Granting Related Relief."

4.     Since the filing of the Feintech Declaration, changes have been agreed to among the parties and made to the form of proposed order approving the Motion.

5.     Attached to this declaration as **Exhibit A** is a copy of a redline comparison showing the changes made to the proposed order since the filing of the Feintech Declaration.

6.     Attached to this declaration as **Exhibit B** is a "clean" version of the revised proposed order that the Trustee will lodge with the Court.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 21st day of December 2023 in San Francisco, California.


                              */s/ Gregg S. Kleiner*
                              GREGG S. KLEINER

2

1  Gregg S. Kleiner
   ~~(State Bar No.~~, SBN 141311~~)~~
2  Charles P. Maher
   ~~(State Bar No.~~, SBN 124748~~)~~
3  RINCON Law LLP
4  268 Bush Street, Suite 3335
   San Francisco, CA 94104
5  Telephone: (415) 672-5991
   Facsimile No.: ~~(415) 680-1712~~415-680-1712
6  ~~Emails: gkleiner@rinconlawllp.com~~
7  ~~cmaher@rinconlawllp.com~~
   gkleiner@rinconlawllp.com
8  cmaher@rinconlawllp.com

9  Counsel for PAUL MANSDORF,
   Chapter 7 Trustee

10              UNITED STATES BANKRUPTCY COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
14  In re                                   ~~CASE NO~~Case No. 23-30250 HLB

15  THE SAN FRANCISCO ART INSTITUTE, a
    California nonprofit public benefit corporation,    Chapter 7
16                                          Hon. Hannah L. Blumenstiel
    Debtor.
17                                          **ORDER (A)
18                                          ~~APPROVING~~AUTHORIZING
                                            TRUSTEE TO ENTER INTO ASSET
19                                          PURCHASE AGREEMENT ~~BY AND
                                            BETWEEN PAUL MANSDORF, AS
20                                          TRUSTEE APPOINTED PURSUANT TO
                                            CHAPTER 7 OF THE BANKRUPTCY
21                                          CODE FOR THE SAN FRANCISCO
                                            ART INSTITUTE, AND~~WITH BM-AI
22                                          LLC,
                                            (B) APPROVING THE SALE OF
23                                          SUBSTANTIALLY ALL OF SFAI'S
                                            ASSETS TO BM-AI, LLC, PURSUANT
24                                          TO 11 U.S.C. § 363; (C) APPROVING
                                            AMENDMENTS TO AND THE
25                                          ASSUMPTION AND ASSIGNMENT OF
26                                          ~~THE~~DEBTOR'S LEASE WITH THE
                                            UC REGENTS, AND THE PAYMENT
27                                          OF CURE OBLIGATIONS RELATED
                                            THERETO; AND (D) GRANTING
28                                          RELATED RELIEF**

                        ~~019848.0001 4876-1623-4385.2~~ -1

|   |   |
|---|---|
| **Sale Hearing** | |
| Date: | [•]December 21, 2023 |
| Time: | [•] (Pacific Time)10:00 a.m. |
| Place: | 450 Golden Gate Ave., 16th FloorZoom Video Conference San Francisco, CA 94102 |
| Judge: | Hon. Hannah L. Blumenstiel |

On [•]December 21, 2023 at [•] (Pacific Time)10:00 a.m., a sale hearing (the "Sale Hearing") was held before the Honorable Hannah L. Blumenstiel, United States Bankruptcy Judge in the Northern District of California (the "Court") to consider the motion [Docket No. 129] (the "Motion")[1] filed by Paul Mansdorf, solely in his capacity as the trustee (the "Trustee") appointed pursuant to chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") infor the above-captioned bankruptcy caseestate of The San Francisco Art Institute, a California non-profit public benefit corporation (the "Debtor"). All appearances at the Sale Hearing were stated on the record thereat.

The Court having reviewed and considered (i) the Motion, the notice of the Motion, and all Declarations and evidence filed in connection with the Motion; (ii) any objections thereto; and (iii) the statements of counsel and the evidence presented at the Sale Hearing, and it appearing the Court hashaving jurisdiction over this matter and, that notice of the Motion has been proper, and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish good, sufficient and just cause for the relief granted herein;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

**Jurisdiction, Statutory Predicates, and Final Order**

A.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges and Authorizing

---

[1] Any capitalized terms used herein shall have the meaning ascribed to them in the Motion unless otherwise defined herein.

Bankruptcy Appeals to be Decided by the Ninth Circuit Bankruptcy Appellate Panel, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "<u>Bankruptcy Local Rules</u>").

B. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C. The statutory predicates for relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, and 9014.

D. This order (the "<u>Order</u>") constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1).

E. A reasonable and sufficient opportunity to object and be heard with respect to the Motion and the Sale Hearing has been afforded to all interested persons and entities.

**<u>Good Faith of Buyer</u>**

F. The sale and assignment (the "<u>Sale</u>") of the Purchased Assets as defined in the Purchase and Sale Agreement and Escrow Instructions, dated November 21, 2023, [Exhibit A to Docket 129-1] (as may be amended, the "<u>Agreement</u>") outside the ordinary course, to the Buyer for ~~the purchase price (the "Purchase Price") attributable to the Debtor's assets to be sold and assigned to the Buyer~~ (1) $22,500,000 for the Chestnut Campus, paid to the UC Regents, and (2) $7,500,000 for the Mural and Related Property (the assets described in F(2), the "Purchased Assets")[2], paid to the Trustee for the benefit of the Debtor's estate (collectively, the "Purchase Price") under the Agreement and other consideration and benefits set forth in the Agreement, is a sound and prudent exercise of the Trustee's reasonable business judgment and is in the best interests of the estate (the "<u>Estate</u>") and its creditors.

G. The Agreement entered into by and between the Trustee and the Buyer was proposed, negotiated and entered into by the parties thereto without collusion, in good faith and from arm's length bargaining positions. Neither the Trustee nor the Buyer has engaged in any

---

[2]  For the avoidance of doubt, this Order approves the sale and assignment of assets of the Debtor and Estate (as defined below) to Buyer.  This Order does not approve the sale or assignment of any assets owned by the UC Regents (as defined below), other than the Lease (as defined below).

019848.0001 4876-1623-4385.2-3

**EXHIBIT A**

conduct that could cause the Agreement or the sale and assignment of the Purchased Assets to the Buyer to be invalidated or avoided under 11 U.S.C. § 363(n).  Specifically, among other things, including the testimony of the Trustee in his declaration filed in support of the Motion  (the "Mansdorf Declaration") [Docket No. ~~129~~129-1] and the testimony of the Buyer's representative, Lynn Feintech, in her declaration filed in support of the Motion  (the "Feintech Declaration") [Docket No. ●134]: (i) the Trustee was free to market the Purchased Assets and to negotiate with any other party that expressed an interest in buying the Purchased Assets, and the Buyer recognized the same; (ii) the Buyer does not have undisclosed pre or post-petition relationships with the Trustee, or insiders of the Debtor as defined in 11 U.S.C. § 101(31); (iii) the negotiation and execution of the Agreement and all aspects of the Sale of the Purchased Assets were conducted in good faith; (iv) the Buyer in no way induced or caused the filing of the Debtor's bankruptcy case; and (v) all payments to be made by the Buyer in connection with the Sale have been disclosed to the Trustee and this Court.

H.    Accordingly, upon consummation of the sale of the Purchased Assets as set forth in the Agreement, the Buyer will be a buyer in good faith within the meaning of 11 U.S.C. § 363(m) and is therefore entitled to the protections afforded thereby.

**The Highest and Best Offer**

~~I.    The Trustee, having retained the services of Cushman & Wakefield of California, Inc. as its real estate broker (the "Trustee's Broker"), diligently and in good faith marketed the Purchased Assets to obtain the highest or best offers, and accordingly the consideration to be paid by the Buyer with respect to the Purchased Assets constitutes reasonably equivalent value, market value, and fair consideration under the Bankruptcy Code and applicable law.~~

I.    ~~J.~~The sale process conducted by the Trustee for the Purchased Assets was conducted in accordance with, and otherwise complied with, in all respects ~~with~~, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The sale process afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer for the Purchased Assets.  As set forth in the Mansdorf Declaration, the Agreement constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Estate than any

**EXHIBIT A**

other available option.  The terms and conditions of the Agreement are fair and reasonable and entry into the Agreement by the Trustee is a sound and prudent exercise of his reasonable business judgment, and the Sale is in the best interests of the Estate and its creditors.

**No Fraudulent Transfer or Successor Liability**

J. ~~K.~~ The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors.  Neither the Trustee nor the Buyer is entering into the transactions contemplated by the Agreement fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws or otherwise.

K. ~~L.~~ The Trustee gave all parties in interest adequate notice and a reasonable opportunity to object and be heard with respect to the Trustee's and the Buyer's explicit request within the Agreement for a finding that the Buyer is not and shall not be considered, construed, or otherwise understood to be a successor in interest to the Debtor and is not assuming or otherwise liable for the claims against the Debtor.  No party in interest objected to the Trustee's request for such a finding and no party in interest presented any evidence that successor liability should apply to this transaction in any manner.  The Buyer is not a mere continuation of the Debtor or the Estate, and no continuity of enterprise exists between the Buyer and the Debtor or the Estate.  The Buyer is not holding itself out to the public as a continuation of the Debtor or the Estate.  The Buyer is not a successor to the Debtor or the Estate, and the acquisition of the Purchased Assets by Buyer does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtor or the Estate.

**Validity of Transfer**

L. ~~M.~~ Subject only to the entry of this Order, the Trustee on behalf of the Debtor and Estate has, and at all relevant times had, (i) full power and authority to negotiate, execute and deliver the Agreement and all other documents contemplated thereby, (ii) all authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby.

M. ~~N. The Estate is the sole and lawful owner of the Purchased Assets.~~ The transfer of

EXHIBIT A

the Purchased Assets to the Buyer will be, as of the date of the closing of the transactions contemplated by the Agreement (the "Closing Date"), a legal, valid, and effective transfer of the Purchased Assets, which shall vest the Buyer with all right, title, and interest of the Estate and Debtor to the Purchased Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.  The Motion is GRANTED in its entirety.

2.  Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by pleading filed with the Court, are hereby denied and overruled with prejudice. Those parties who were given notice of the Motion and who did not object or withdrew their objection to the Motion are deemed to have consented to all transactions contemplated hereby.

**Approval of the Agreement**

3.  The Agreement, ~~and all other ancillary documents,~~ and all of the terms and conditions thereof, are hereby approved.

4.  The Trustee is authorized to take any and all actions necessary or appropriate to (i) consummate the sale of the Purchased Assets to the Buyer, (ii) fully perform and implement the Agreement and consummate the closing (the "Closing") of the transactions contemplated in the Agreement and this Order; and (iii) take any and all further actions as may be reasonably necessary to consummate any of the transactions contemplated in this Order and the Agreement, including without limitation to execute any releases, termination statements, assignments, consents or instruments on behalf of any third party, which are necessary or appropriate to effectuate or consummate the transactions contemplated in this Order and the Agreement

5.  The sale of the Purchased Assets to the Buyer constitutes a legal, valid and effective transfer, sale, and assignment of the Purchased Assets, and shall vest the Buyer with all rights, title and interests of the Estate and Debtor in and to the Purchased Assets.

6.  Other than as expressly set forth in the Agreement, the Buyer has not assumed and shall not be liable for any liabilities of the Estate or Debtor. The Buyer is not a continuation of, or

**EXHIBIT A**

successor to, the Debtor or the ~~Estateand~~Estate and the Buyer shall have no successor, vicarious or transferee liability as to the Debtor, the Trustee, or the Estate, other than as to the Lease.

7.    This Order is and shall be binding upon all persons and entities, including, without limitation, all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

**Amendment and Assumption and Assignment of the Lease**

8.    The Trustee is authorized to execute: (i) the Fourth Amendment to Triple Net Lease dated as of October 30, 2023; and (ii) the Fifth Amendment to Triple Net Lease dated as of November 16, 2023, which amendments are respectively attached as Exhibits B and C to the Mansdorf Declaration.

9.    ~~8.~~ Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Trustee is authorized to  assume and assign that certain Triple Net Lease with an effective date of October 30, 2020 by and between the Debtor, as tenant, and The Regents of the University of California, a California public corporation (the "UC Regents"), as landlord, as amended by that certain First Lease Amendment dated as of April 8, 2022, by that certain Second Amendment to Triple Net Lease dated as of August 31, 2022, by that certain Third Amendment to Triple Net Lease dated as of October 1, 2022, by that certain Fourth Amendment to Triple Net Lease dated as of October 30, 2023, that certain ~~Firth~~Fifth Amendment to Triple Net Lease dated as of November 16, 2023,and as will be amended by that certain Sixth Amendment to Triple Net Lease dated as the Closing Date (as amended, the "Lease") to Buyer.

10.    ~~9.~~ The Trustee is authorized to execute a substantially similar version of that certain Sixth Amendment to Triple Net Lease attached as Exhibit C to the Agreement in connection with consummating the Agreement.

11.    ~~10.~~ The Lease is valid and binding, in full force and effect and, except as provided

**EXHIBIT A**

Case: 23-30250    Doc# 153    Filed: 12/21/23    Entered: 12/21/23 14:30:01    Page 9 of 23

in this Order, enforceable in accordance with its terms.

12. ~~11.~~ The Buyer has provided adequate assurance of its future performance under the Lease and the proposed assumption and assignment of the Lease satisfies the requirements of the Bankruptcy Code including, among other things, sections 365(b)(1) and (3) and 365(f) to the extent applicable.

13. ~~12.~~ The cure costs identified in the Agreement (the "Cure Costs") are the sole amounts necessary to be paid upon assumption of the Lease under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code ~~and shall be paid by the Trustee as provided in the Agreement.~~

14. The Trustee is authorized to pay from the sale proceeds: (i) the Cure Cost, $1,500,000, to the UC Regents within three (3) business days of Closing; (ii) the sum of $337,500 to the Estate's broker, Cushman & Wakefield of California, Inc.; (iii) one-half of any sales taxes associated with the sale of the Mural and other personal property; and (iv) the Estate's portion of closing costs associated with the Sale.

15. ~~13.~~ Upon the payment of the Cure Costs, the Lease shall remain in full force and effect, and no default shall exist under the Lease nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default. The Cure Costs shall not be subject to further dispute or audit. After the payment of the Cure Costs by the Trustee, the Buyer shall not have any liabilities to the UC Regents under the Lease other than the Buyer's obligations under the Lease that accrue and become payable after the occurrence of the Closing.

16. ~~14.~~ Other than as set forth in the Agreement, there shall be no assignment fees, increases, or any other fees charged to the Buyer as a result of the Sale and the assignment of the Lease.

~~15.~~ Pursuant to sections 363(b) and (m) and 365(a), (b) and (f) of the Bankruptcy Code, the assumption, assignment and sale to the Buyer of the Lease by the Trustee shall be effectuated by this Order, effective as of the Closing.

**Other Provisions**

019848.0001 4876-1623-4385.2 -8-

EXHIBIT A

17. ~~16.~~ The Trustee and the UC Regents, as applicable, shall execute and deliver, upon the reasonable request of the Buyer, and shall not charge the Buyer for any instruments, applications, consents or other documents which may be required or requested to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

18. ~~17.~~ The consideration provided by the Buyer for the Purchased Assets shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and may not be avoided under 11 U.S.C. § 363(n). The transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale.  The Buyer is hereby afforded the full protections of section 363(m) of the Bankruptcy Code.

19. ~~18.~~ The Court shall retain jurisdiction ~~to~~: (a) to interpret, implement and enforce the terms and conditions of this Order; ~~and~~ (b) to resolve any disputes arising under or related to this Order; and (c) as provided in the Agreement.

20. ~~19.~~ The terms and provisions of this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Estate, any creditors of the Debtor or the Estate, the Trustee, the Buyer, the UC Regents, their respective successors and assigns and any affected third parties.

21. ~~20.~~ No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

22. ~~21.~~ The failure specifically to include any particular provision of the Agreement or any related ancillary document in this Order related to the sale and assignment of the Purchased Assets shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement and all related ancillary documents be authorized and approved in their entirety as they relate to sale and assignment of the Purchased Assets; provided, however, that this Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Order.  The Agreement and any related documents or other instruments may be modified, amended or supplemented in writing by the

EXHIBIT A

parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate.

23. ~~22.~~ Any time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24. ~~23.~~ This Order, along with the Agreement and the Motion, constitute an itemized statement of the assets sold, the name of Buyer, and the price received for the assets as a whole as required by Bankruptcy Rule 6004(f)(1).

* * * END OF ORDER * * *

EXHIBIT A

1

2                                    **COURT SERVICE LIST**

3    ~~All parties will be served via e-filing notifications.~~

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

~~019848.0001 4876-1623-4385.2~~ -11

Document comparison by Workshare Compare on Thursday, December 21, 2023 8:17:46 AM

| Input: | |
|---|---|
| Document 1 ID | file://S:\Pleadings\Gregg S. Kleiner\SFAI\Sale of Real and Personal Property\SFAI - Sale Order (11.17 ERF). (4873-2527-4770.1).docx |
| Description | SFAI - Sale Order (11.17 ERF). (4873-2527-4770.1) |
| Document 2 ID | file://S:\Pleadings\Gregg S. Kleiner\SFAI\Sale of Real and Personal Property\V4  SFAI - Sale Order.docx |
| Description | V4  SFAI - Sale Order |
| Rendering set | Standard |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |

| | |
|---|---|
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 62 |
| Deletions | 63 |
| Moved from | 2 |
| Moved to | 2 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 129 |

EXHIBIT A

1 | Gregg S. Kleiner, SBN 141311
Charles P. Maher, SBN 124748
2 | RINCON Law LLP
268 Bush Street, Suite 3335
3 | San Francisco, CA 94104
Telephone: (415) 672-5991
4 | Facsimile No.: 415-680-1712
gkleiner@rinconlawllp.com
5 | cmaher@rinconlawllp.com
6 |
7 | Counsel for PAUL MANSDORF,
Chapter 7 Trustee
8 | 

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 23-30250 HLB |
| | Chapter 7 |
| THE SAN FRANCISCO ART INSTITUTE, | Hon. Hannah L. Blumenstiel |
| a California nonprofit public benefit corporation, | |
| | **ORDER (A) AUTHORIZING TRUSTEE TO ENTER INTO ASSET PURCHASE AGREEMENT WITH BM-AI LLC, (B) APPROVING THE SALE OF SUBSTANTIALLY ALL OF SFAI'S ASSETS TO BM-AI, LLC, PURSUANT TO 11 U.S.C. § 363; (C) APPROVING AMENDMENTS TO AND THE ASSUMPTION AND ASSIGNMENT OF DEBTOR'S LEASE WITH THE UC REGENTS, AND THE PAYMENT OF CURE OBLIGATIONS RELATED THERETO; AND (D) GRANTING RELATED RELIEF** |
| Debtor. | |
| | Sale Hearing |
| | Date:       December 21, 2023 |
| | Time:       10:00 a.m. |
| | Place:      Zoom Video Conference |
| | Judge:      Hon. Hannah L. Blumenstiel |

On December 21, 2023 at 10:00 a.m., a sale hearing (the "Sale Hearing") was held before

the Honorable Hannah L. Blumenstiel, United States Bankruptcy Judge in the Northern District of

1

**EXHIBIT B**

California (the "Court") to consider the motion [Docket No. 129] (the "Motion")[1] filed by Paul Mansdorf, solely in his capacity as the trustee (the "Trustee") appointed pursuant to chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") for the estate of The San Francisco Art Institute, a California non-profit public benefit corporation (the "Debtor"). All appearances at the Sale Hearing were stated on the record.

The Court having reviewed and considered (i) the Motion, the notice of the Motion, and all Declarations and evidence filed in connection with the Motion; (ii) any objections thereto; and (iii) the statements of counsel and the evidence presented at the Sale Hearing, the Court having jurisdiction over this matter, that notice of the Motion has been proper, and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish good, sufficient and just cause for the relief granted herein;

**THE COURT HEREBY FINDS AND DETERMINES THAT:**

**Jurisdiction, Statutory Predicates, and Final Order**

A.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges and Authorizing Bankruptcy Appeals to be Decided by the Ninth Circuit Bankruptcy Appellate Panel, General Order 24 (N.D. Cal.), and Rule 5011-1(a) of the Bankruptcy Local Rules for the Northern District of California (the "Bankruptcy Local Rules").

B.      This is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      The statutory predicates for relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9006, and 9014.

D.      This order (the "Order") constitutes a final order within the meaning of 28 U.S.C. § 158(a)(1).

E.      A reasonable and sufficient opportunity to object and be heard with respect to the Motion and the Sale Hearing has been afforded to all interested persons and entities.

---

[1] Any capitalized terms used herein shall have the meaning ascribed to them in the Motion unless otherwise defined herein.

2

EXHIBIT B

**Good Faith of Buyer**

F.    The sale and assignment (the "Sale") of the Purchased Assets as defined in the Purchase and Sale Agreement and Escrow Instructions, dated November 21, 2023, [Exhibit A to Docket 129-1] (as may be amended, the "Agreement") outside the ordinary course, to the Buyer for (1) $22,500,000 for the Chestnut Campus, paid to the UC Regents, and (2) $7,500,000 for the Mural and Related Property (the assets described in F(2), the "Purchased Assets")[2], paid to the Trustee for the benefit of the Debtor's estate (collectively, the "Purchase Price") under the Agreement and other consideration and benefits set forth in the Agreement, is a sound and prudent exercise of the Trustee's reasonable business judgment and is in the best interests of the estate (the "Estate") and its creditors.

G.    The Agreement entered into by and between the Trustee and the Buyer was proposed, negotiated and entered into by the parties thereto without collusion, in good faith and from arm's length bargaining positions. Neither the Trustee nor the Buyer has engaged in any conduct that could cause the Agreement or the sale and assignment of the Purchased Assets to the Buyer to be invalidated or avoided under 11 U.S.C. § 363(n). Specifically, among other things, including the testimony of the Trustee in his declaration filed in support of the Motion (the "Mansdorf Declaration") [Docket No. 129-1] and the testimony of the Buyer's representative, Lynn Feintech, in her declaration filed in support of the Motion (the "Feintech Declaration") [Docket No. 134]: (i) the Trustee was free to market the Purchased Assets and to negotiate with any other party that expressed an interest in buying the Purchased Assets, and the Buyer recognized the same; (ii) the Buyer does not have undisclosed pre or post-petition relationships with the Trustee, or insiders of the Debtor as defined in 11 U.S.C. § 101(31); (iii) the negotiation and execution of the Agreement and all aspects of the Sale of the Purchased Assets were conducted in good faith; (iv) the Buyer in no way induced or caused the filing of the Debtor's bankruptcy case; and (v) all payments to be made by the Buyer in connection with the Sale have been disclosed to the Trustee and this Court.

---

[2] For the avoidance of doubt, this Order approves the sale and assignment of assets of the Debtor and Estate (as defined below) to Buyer. This Order does not approve the sale or assignment of any assets owned by the UC Regents (as defined below), other than the Lease (as defined below).

3

H.     Accordingly, upon consummation of the sale of the Purchased Assets as set forth in the Agreement, the Buyer will be a buyer in good faith within the meaning of 11 U.S.C. § 363(m) and is therefore entitled to the protections afforded thereby.

**The Highest and Best Offer**

I.     The sale process conducted by the Trustee for the Purchased Assets was conducted in accordance with, and otherwise complied with, in all respects, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules. The sale process afforded a full, fair, and reasonable opportunity for any entity to make a higher or otherwise better offer for the Purchased Assets. As set forth in the Mansdorf Declaration, the Agreement constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Estate than any other available option. The terms and conditions of the Agreement are fair and reasonable and entry into the Agreement by the Trustee is a sound and prudent exercise of his reasonable business judgment, and the Sale is in the best interests of the Estate and its creditors.

**No Fraudulent Transfer or Successor Liability**

J.     The Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors. Neither the Trustee nor the Buyer is entering into the transactions contemplated by the Agreement fraudulently for purposes of statutory and/or common law fraudulent conveyance and fraudulent transfer laws or otherwise.

K.     The Trustee gave all parties in interest adequate notice and a reasonable opportunity to object and be heard with respect to the Trustee's and the Buyer's explicit request within the Agreement for a finding that the Buyer is not and shall not be considered, construed, or otherwise understood to be a successor in interest to the Debtor and is not assuming or otherwise liable for the claims against the Debtor.  No party in interest objected to the Trustee's request for such a finding and no party in interest presented any evidence that successor liability should apply to this transaction in any manner. The Buyer is not a mere continuation of the Debtor or the Estate, and no continuity of enterprise exists between the Buyer and the Debtor or the Estate. The Buyer is not holding itself out to the public as a continuation of the Debtor or the Estate. The Buyer is not a

4

<span style="color:blue">**EXHIBIT B**</span>

successor to the Debtor or the Estate, and the acquisition of the Purchased Assets by Buyer does not amount to a consolidation, merger, or de facto merger of the Buyer and the Debtor or the Estate.

**Validity of Transfer**

L.       Subject only to the entry of this Order, the Trustee on behalf of the Debtor and Estate has, and at all relevant times had, (i) full power and authority to negotiate, execute and deliver the Agreement and all other documents contemplated thereby, (ii) all authority necessary to consummate the transactions contemplated by the Agreement, and (iii) taken all action necessary to authorize and approve the Agreement and the consummation of the transactions contemplated thereby.

M.       The transfer of the Purchased Assets to the Buyer will be, as of the date of the closing of the transactions contemplated by the Agreement (the "Closing Date"), a legal, valid, and effective transfer of the Purchased Assets, which shall vest the Buyer with all right, title, and interest of the Estate and Debtor to the Purchased Assets.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

**General Provisions**

1.       The Motion is GRANTED in its entirety.

2.       Any objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by pleading filed with the Court, are hereby denied and overruled with prejudice. Those parties who were given notice of the Motion and who did not object or withdrew their objection to the Motion are deemed to have consented to all transactions contemplated hereby.

**Approval of the Agreement**

3.       The Agreement and all of the terms and conditions thereof, are hereby approved.

4.       The Trustee is authorized to take any and all actions necessary or appropriate to (i) consummate the sale of the Purchased Assets to the Buyer, (ii) fully perform and implement the Agreement and consummate the closing (the "Closing") of the transactions contemplated in the Agreement and this Order; and (iii) take any and all further actions as may be reasonably necessary to consummate any of the transactions contemplated in this Order and the Agreement, including

5

**EXHIBIT B**

without limitation to execute any releases, termination statements, assignments, consents or instruments on behalf of any third party, which are necessary or appropriate to effectuate or consummate the transactions contemplated in this Order and the Agreement

5.    The sale of the Purchased Assets to the Buyer constitutes a legal, valid and effective transfer, sale, and assignment of the Purchased Assets, and shall vest the Buyer with all rights, title and interests of the Estate and Debtor in and to the Purchased Assets.

6.    Other than as expressly set forth in the Agreement, the Buyer has not assumed and shall not be liable for any liabilities of the Estate or Debtor. The Buyer is not a continuation of, or successor to, the Debtor or the Estate and the Buyer shall have no successor, vicarious or transferee liability as to the Debtor, the Trustee, or the Estate, other than as to the Lease.

7.    This Order is and shall be binding upon all persons and entities, including, without limitation, all persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

**Amendment and Assumption and Assignment of the Lease**

8.    The Trustee is authorized to execute: (i) the Fourth Amendment to Triple Net Lease dated as of October 30, 2023; and (ii) the Fifth Amendment to Triple Net Lease dated as of November 16, 2023, which amendments are respectively attached as Exhibits B and C to the Mansdorf Declaration.

9.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, the Trustee is authorized to assume and assign that certain Triple Net Lease with an effective date of October 30, 2020 by and between the Debtor, as tenant, and The Regents of the University of California, a California public corporation (the "UC Regents"), as landlord, as amended by that certain First Lease Amendment dated as of April 8, 2022, by that certain Second Amendment to Triple Net Lease dated as of August 31, 2022, by that certain Third Amendment to Triple Net Lease dated as of

6

October 1, 2022, by that certain Fourth Amendment to Triple Net Lease dated as of October 30, 2023, that certain Fifth Amendment to Triple Net Lease dated as of November 16, 2023,and as will be amended by that certain Sixth Amendment to Triple Net Lease dated as the Closing Date (as amended, the "Lease") to Buyer.

10.　　The Trustee is authorized to execute a substantially similar version of that certain Sixth Amendment to Triple Net Lease attached as Exhibit C to the Agreement in connection with consummating the Agreement.

11.　　The Lease is valid and binding, in full force and effect and, except as provided in this Order, enforceable in accordance with its terms.

12.　　The Buyer has provided adequate assurance of its future performance under the Lease and the proposed assumption and assignment of the Lease satisfies the requirements of the Bankruptcy Code including, among other things, sections 365(b)(1) and (3) and 365(f) to the extent applicable.

13.　　The cure costs identified in the Agreement (the "Cure Costs") are the sole amounts necessary to be paid upon assumption of the Lease under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code.

14.　　The Trustee is authorized to pay from the sale proceeds: (i) the Cure Cost, $1,500,000, to the UC Regents within three (3) business days of Closing; (ii) the sum of $337,500 to the Estate's broker, Cushman & Wakefield of California, Inc.; (iii) one-half of any sales taxes associated with the sale of the Mural and other personal property; and (iv) the Estate's portion of closing costs associated with the Sale.

15.　　Upon the payment of the Cure Costs, the Lease shall remain in full force and effect, and no default shall exist under the Lease nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.  The Cure Costs shall not be subject to further dispute or audit. After the payment of the Cure Costs by the Trustee, the Buyer shall not have any liabilities to the UC Regents under the Lease other than the Buyer's obligations under the Lease that accrue and become payable after the occurrence of the Closing.

7

EXHIBIT B

16.     Other than as set forth in the Agreement, there shall be no assignment fees, increases, or any other fees charged to the Buyer as a result of the Sale and the assignment of the Lease. Pursuant to sections 363(b) and (m) and 365(a), (b) and (f) of the Bankruptcy Code, the assumption, assignment and sale to the Buyer of the Lease by the Trustee shall be effectuated by this Order, effective as of the Closing.

**Other Provisions**

17.     The Trustee and the UC Regents, as applicable, shall execute and deliver, upon the reasonable request of the Buyer, and shall not charge the Buyer for any instruments, applications, consents or other documents which may be required or requested to effectuate the applicable transfers in connection with the Sale of the Purchased Assets.

18.     The consideration provided by the Buyer for the Purchased Assets shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and may not be avoided under 11 U.S.C. § 363(n). The transactions contemplated by the Agreement are undertaken by the Buyer without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale. The Buyer is hereby afforded the full protections of section 363(m) of the Bankruptcy Code.

19.     The Court shall retain jurisdiction: (a) to interpret, implement and enforce the terms and conditions of this Order; (b) to resolve any disputes arising under or related to this Order; and (c) as provided in the Agreement.

20.     The terms and provisions of this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, the Estate, any creditors of the Debtor or the Estate, the Trustee, the Buyer, the UC Regents, their respective successors and assigns and any affected third parties.

21.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

22.     The failure specifically to include any particular provision of the Agreement or any related ancillary document in this Order related to the sale and assignment of the Purchased Assets shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that

8

the Agreement and all related ancillary documents be authorized and approved in their entirety as they relate to sale and assignment of the Purchased Assets; provided, however, that this Order shall govern if there is any inconsistency between the Agreement (including all ancillary documents executed in connection therewith) and this Order. The Agreement and any related documents or other instruments may be modified, amended or supplemented in writing by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Estate.

23. Any time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24. This Order, along with the Agreement and the Motion, constitute an itemized statement of the assets sold, the name of Buyer, and the price received for the assets as a whole as required by Bankruptcy Rule 6004(f)(1).

* * * END OF ORDER * * *

9

EXHIBIT B