1  Gregg S. Kleiner, State Bar No. 141311
   Charles P. Maher, State Bar No. 124748
2  RINCON LAW LLP
   268 Bush Street, Suite 3335
3  San Francisco, CA 94104
   Telephone No.:  415-840-6385
4  Facsimile No.:  415-680-1712
   E-mail:    gkleiner@rinconlawllp.com
5             cmaher@rinconlawllp.com

6
   Counsel for PAUL MANSDORF,
7  Trustee in Bankruptcy

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11 In re                              Case No. 23-30250 HLB
                                      Chapter 7
12 THE SAN FRANCISCO ART INSTITUTE,   Hon. Hannah L. Blumenstiel
       a California nonprofit
13     public benefit corporation,    **OBJECTION TO CLAIM 40**
                                      **(FMC Pier 2 Sublessor, LLC)**
14         Debtor.
                                      [No Hearing Requested]
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................................. 1

      A.    The FMC Lease and FMC Recourse Note ................................................ 1

II.   ANALYSIS ........................................................................................................ 2

      A.    FMC is Not Entitled to Interest Accruing After the December 30, 2022, Lease
            Termination Date .................................................................................... 2

      B.    Breach of Lease and Lease Termination ................................................ 4

      C.    The Lease Termination Date Marks the Start Date for Calculating FMC's Damage
            Claim ...................................................................................................... 5

      D.    FMC Incorrectly Calculates the Capped Portion of the Claim ............... 7

            1.    The 15% cap under Section 502(b)(6) is a measure of time not rent. ......... 8

            2.    Interest, Utilities, Attorney's Fees and Other Costs Are Not Legitimate
                  Components of a Section 502(b)(6) Claim ................................. 11

III.  CONCLUSION .................................................................................................. 13

**TABLE OF AUTHORITIES**

**Cases**

*American Title Ins. Co. v. Lacelaw Corp.*,
 861 F.2d 224, 226 (9th Cir 1986)................................................................. 6

*In re 1441 Veteran Street Co.*,
 144 F.3d 1288, 1291-92 (9th Cir. 1998) .......................................................... 3

*In re AB Liquidating Corp.*,
 416 F.3d 961, 964-965 (9th Cir.2005)........................................................... 7

*In re Connectix Corp.*,
 372 B.R. 488, 493- 494 (Bankr. N.D. Cal. 2007) ................................. 6, 7, 8, 9

*In re Cortlandt Liquidating LLC*,
 648 B.R. 137, 141 (Bankr. S.D. NY 2023) ...................................................... 8

*In re Denali Family Services*,
 506 B.R. 73, 82 (Bankr. D. Alaska 2014) ................................................... 7, 12

*In re El Toro Materials Co., Inc.*,
 504 F.3d 978, 981-982 (9th Cir. 2007).................................................. 4, 8, 11

*In re Heller Ehrman LLP*,
 2011 WL 635224 (N.D. Cal. 2011) ................................................................. 8

*In re Iron-Oak Supply Corp.*,
 169 B.R. 414, 419 (Bankr. E.D. Cal. 1994) ..................................................... 8

*In re Kupfer*,
 852 F.3d 853, 857-859 (9th Cir. 2016)..................................................... 3, 4, 12

*In re Mayan Networks Corp.*,
 306 B.R. 295, 299-301 (2004)............................................................... 3, 4, 7

*In re McSheridan*,
 184 B.R. 91, 99-100 (B.A.P. 9th Cir.1995)......................................... 3, 4, 7, 11, 12

*In re PPI Enterprises, Inc.*,
 324 F.3d 197, 209-210 (3rd Cir.2003) ............................................................. 7

*Lariat Cos. v. Wigley (In re Wigley)*,
 533 B.R. 267, 270–71 (8th Cir. BAP 2015) ...................................................... 3

**Statutes**

11 U.S.C. § 502(b)(6)........................................................................................passim

11 U.S.C. § 502(b)(6)(A)..............................................................................7, 9, 11

11 U.S.C. § 506(a)......................................................................................................3

11 U.S.C. § 506(a)(1)................................................................................................3

11 U.S.C. § 553..........................................................................................................3

1   Paul Mansdorf, Chapter 7 Trustee (**Trustee**") of the estate of The San Francisco Art Institute

2   ("**Debtor**" or "**SFAI**") objects to Claim 40 filed by FMC Pier 2 Sublessor, LLC filed as a secured

3   claim in the amount of $3,064,029.95 ("**Claim**"). A true and correct copy of Claim 40, which

4   includes a 13 page "addendum" is attached hereto as **Exhibit A**. The Claim of FMC Pier 2 Sublessor,

5   LLC ("**FMC**") is for damages related to the Debtor's breach of the lease of real property located at

6   Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**").

7   FMC's claim is for: (a) pre-petition arrearages; (b) rejection damages capped by Section

8   502(b)(6); (c) "termination damages"; and (d) post-lease termination interest and other fees and

9   costs.

10   As set forth in detail below, the Trustee asserts that (a) the Claim is incorrectly calculated

11   and overstated, (b) the Claim is unsecured, and (c) FMC is not entitled to collect damages for post-

12   lease termination charges such as interest, attorney fees, utilities or late fees. By this Objection, the

13   Trustee prays for the Claim to be reclassified as an unsecured claim in the amount of $2,197,844.06

14   as of the petition date, which sum is being reduced annually by setoffs, is currently $1,422,844.06,

15   and will be paid in full in January 2027.  The setoffs are pursuant to the terms of the Amended and

16   Restated Unsecured Recourse Promissory Note dated October 28, 2020, by which FMC owes the

17   estate $11,932,478.36 in original principal amount ("**FMC Recourse Note**"). The Debtor filed its

18   voluntary petition under Chapter 7 of the Bankruptcy Code on April 19, 2023 ("**Petition Date**").

19   On the Petition Date, FMC owed the Debtor $11,389,310 under the note. Claim Addendum, ¶ 16.

20   **I.      BACKGROUND**

21   **A.      The FMC Lease and FMC Recourse Note**

22   On June 9, 2016, SFAI entered into a lease with Fort Mason Center for the Premises. The

23   Trustee understands that the Premises was intended to be a satellite campus for the Debtor, whose

24   primary campus and administrative location was 800 Chestnut Street, San Francisco, California.

25   The lease had an initial term through December 31, 2033. Claim Addendum, ¶ 5. The lease required

26   FMC to make substantial tenant improvements to the Premises at its cost; however, FMC did not

27   have the funds to fulfill this obligation. FMC and the Debtor reached an agreement under which the

28   Debtor agreed to borrow money from a financial institution on a secured basis (*i.e.*, by a deed of

trust against 800 Chestnut Street) and lend the loan proceeds to FMC on an unsecured basis to enable FMC to pay for the tenant improvements. FMC's obligation to the Debtor was documented by the FMC Recourse Note.[1] A true and correct copy of FMC Recourse Note is attached as Exhibit A to the Declaration of Paul Mansdorf filed in support of this claim objection ("**Mansdorf Declaration**"). In the Trustee's opinion, the transaction with FMC in 2016 was the beginning of the Debtor's demise.

The last page of the FMC Recourse Note includes a payment schedule, pursuant to which FMC is to make annual payments to SFAI. Under the provisions of the note, FMC is obligated to make payments to SFAI (now to the Trustee) in arrears each January as follows: (1) $240,000 annually for 2017 through 2021; (2) $387,500 annually for 2022, 2023 and 2024; and (3) $553,000 for 2025 through the date on which the FMC Recourse Note is paid off ("**Annual Payments**").

## II.   ANALYSIS

### A.   FMC is Not Entitled to Interest Accruing After the December 30, 2022, Lease Termination Date.

FMC asserts that the Claim is secured by its right to setoff against the FMC Recourse Note and that it is entitled to interest following the Lease Termination Date (defined below). Claim Addendum, ¶ 16. The FMC Recourse Note does provide, at ¶ 6, that, in the event of a default by the Debtor, FMC may offset the Annual Payments against sums the Debtor owes FMC under the provisions of the lease. The lease was terminated by FMC on December 30, 2022 (the "**Lease Termination Date**"). Claim Addendum, ¶ 2.  Since the Lease Termination Date, FMC has exercised two setoffs- for calendar years ending 2022 and 2023, each in the amount of $387,500.  See, Claim Addendum at ¶ 6 and Dockets 174 and 175.

Although FMC has the contractual and a common law right to offset the Annual Payments against sums due and owing under the lease, its right to setoff against the note is limited and is no different from a landlord's draws on a security deposit, letter of credit or like instrument.

---

[1] The Trustee understands that at some point in the past the original promissory note from FMC was lost or misplaced. A replacement note, the FMC Recourse Note, was delivered to the Debtor on or about October 28, 2020. The Trustee is in possession of the original FMC Recourse Note, which he believes has material value for the estate. The Trustee anticipates that the value of the FMC Recourse Note could increase once this Objection to the Claim has been resolved.

> As the court below pointed out, although *Oldden* expressly deals only with security deposits, the rationale of *Oldden* applies to anything that is equivalent to a security deposit. In fact, a "security deposit" is not limited to cash only. If the collateral would come back to the Debtor, but for the existence of the pledge of security, then it is a security deposit for the purposes of this analysis.

*In re Mayan Networks Corp.*, 306 B.R. 295, 300-301 (2004); and *In re Kupfer*, 852 F.3d 853, 858 (9ᵗʰ Cir. 2016) (Adopting the position taken by *Lariat Cos. v. Wigley (In re Wigley)*, 533 B.R. 267, 270–71 (8ᵗʰ Cir. BAP 2015) that interest that arises *after* the lease termination could not be included in the landlord's claim).

While FMC does not have a lien, it asserts it is entitled to be paid interest on the Claim pursuant to Section 553 and the first sentence of Section 506(a)(1) of the Code: "An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim … to the extent of the amount subject to setoff…." 11 U.S.C. Section 506(a)(1). The section further provides that the value shall be "…determined in light of the purpose of the valuation and of the proposed disposition or use of such property…." *Id.*

Unlike a debtor in Chapter 11 or 13 who intends to retain encumbered property and must have the "proposed disposition" of the property valued under Section 506(a), FMC's right to setoff is subject to the limitation imposed by Bankruptcy Code Section 502(b)(6). *In re 1441 Veteran Street Co.*, 144 F.3d 1288, 1291-92 (9ᵗʰ Cir. 1998) (analyzing the application of valuations of encumbered property under Section 506(a) as the disposition of the property evolved during the case).

FMC is not entitled to collect post lease termination interest as part of its Claim because it falls outside the allowed parameters of "rent reserved" as capped under Section 502(b)(6). *In re Kupfer*, 852 F.3d 853, 858 (9ᵗʰ Cir. 2016) (Adopting the position taken by the 8ᵗʰ Circuit BAP that interest that arose *after* the lease termination could not be included in the landlord's claim). *In re McSheridan*, 184 B.R. 91, 99-100 (B.A.P. 9ᵗʰ Cir.1995) (Setting out the allowed elements of what

constitutes a claim under Section 502(b)(6).[2] To allow a creditor with a capped claim to be able to collect interest on the claim after the lease termination would allow landlords with setoff rights to do an "end around" the provisions of the Code and be paid sums in excess of the statutorily capped amount of its claim. *In re Mayan Networks Corp.*, 306 B.R. 295, 300 (2004). Because interest after the Lease Termination Date is not rent reserved as provided by Section 502(b)(6), the Claim must be reclassified as a general unsecured claim.

### B.    Breach of Lease and Lease Termination

The Claim has two basic components: (1) sums owed to FMC due to the Debtor's breach of the lease through the Lease Termination Date (i.e., December 30, 2022); and (2) the portion of the claim that is capped pursuant to Section 502(b)(6), which is also known as "reserved rent" under the statute. FMC has incorrectly calculated both components.

According to the Claim, in the fall of 2022, the Debtor was in breach of multiple obligations under the lease with FMC, including its obligation to timely pay rent. According to FMC, after the Debtor failed to cure multiple defaults under the provisions of the lease, the lease was "terminated" and "… FMC regained possession of the Premises on December, 30, 2022…." Claim Addendum, ¶ 2.

On the Lease Termination Date, the lease had a term of 11 years and one (1) day remaining under the provisions of the lease. The lease was scheduled to terminate on December 31, 2033. Claim Addendum, ¶ 5. The Claim provides that, as of the January 5, 2023, the Debtor's obligation to FMC was $789,926.46, before its January 5, 2023 application of the 2022 note set off of $387,500. This sum comprises unpaid rent, additional rent, utilities, a utilities credit, interest, and late fees. *See*, Claim Addendum, ¶ 6 and Exhibit 1 attached to the Claim. The Trustee **does not** dispute that FMC is allowed to base its breach of lease calculations through the Lease Termination Date on the components listed in the foregoing sentence. FMC's calculation of its breach lease damages is, however, inaccurate.

---

[2] While *McSheridan* was overruled, in part, by *In re El Toro Materials Co., Inc.*, 504 F.3d 978, 981-982 (9th Cir. 2007) to the extent the opinion acts as a "…limit on tort claims other than those based on lost rent, rent-like payments or other damages directly arising from a tenant's failure to complete a lease term….", its test (discussed in Section II.D.2, below) is still utilized in the this Circuit and *In re Kupfer*, 852 F.3d 853, 857 (9th Cir. 2016).

This is because FMC's calculation of its breach of lease damages (i.e., damages that arose though the Lease Termination Date) does not conform with the provisions of Section 502(b)(6) which provides, in relevant part:

> If a party in interest objects to a claim,--
>
> the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that —
>
> ...
>
> > (6) if such claim is the claim of a lessor for damages *resulting from the termination of a lease of real property*, such claim exceeds —
> >
> > > (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease,
> > >
> > > (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates[.]

11 U.S.C. § 502(b)(6) (emphasis added).

When Section 502(b)(6) is followed, FMC's damage claim through the Lease Termination Date totals $569,578.10. A detailed breakdown of the components of the pre-termination claim is included as Exhibit A to the Declaration of Richard Pierotti filed in support of this Objection to Claim. As discussed in the following sections, the Trustee also disputes the manner and mechanism by which FMC calculates the balance of its damages – rent reserved – following the Lease Termination Date.

**C.     The Lease Termination Date Marks the Start Date for Calculating FMC's Damage Claim**

There are multiple errors in how FMC calculated the capped portion of the Claim. First, as expressly provided in the Claim, the lease "terminated" on December 30, 2022 and FMC "regained possession" of the Premises on the same date. Claim Addendum at ¶ 2. FMC's statements in the

Claim constitute judicial admissions. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir 1986).

The Claim discloses that FMC continued to assess breach of contract damages after the Lease Termination Date through the Petition Date. Claim Addendum at ¶¶ 6-7. These damages include post-Lease Termination Date rent and expenses of $260,440.43, late charges of $30,054.14, interest of $16,095.06, and FMC's January 5, 2023, application of FMC's $387,500 Annual Payment to SFAI for 2022 as a setoff. *See*, Claim Addendum at ¶ 6 and Exhibit 1 to the Claim.

Including these post-termination date/pre-petition arrears and the $387,500 payment/setoff in this fashion contradicts the express provisions of Section 502(b)(6)[3] and, consequently, results in a significantly larger claim being asserted against the bankruptcy estate than is statutorily allowed. This is because the period to commence calculating the capped portion of the claim is the date of surrender/termination, not the petition date. *In re Connectix Corp.*, 372 B.R. 488, 494 (Bankr. N.D. Cal. 2007).

In *Connectix*, the parties agreed that the debtor surrendered the leased premises to the landlord nearly two years prior to the petition date. Following the surrender of the leased property, but before the petition date, the landlord made two draws on the debtor's letter of credit that acted as a security deposit. Following the petition date, the landlord, in its claim, applied the draws it made on the letter of credit against the post-termination/pre-petition lease damages, not to the capped claim. The Chapter 7 trustee objected.

In reaching its conclusion that the clock for calculating the Section 502(b)(6) cap began to run at surrender of the leased premises and that the pre-petition letter of credit draws must be applied to the capped portion of the claim, Judge Morgan conducted an in-depth review of the Section's legislative history and application of the provisions predecessor under the Act and concluded that

> …the Bankruptcy Act provided that, in liquidation cases, a landlord's
> claim would not be allowed in excess of 'the year next succeeding'
> *the date of surrender or reentry, which ever occurred first, regardless*
> *of whether that date was before or after the petition date.*

---

[3] "…damages resulting from the termination of a lease of real property,…" 11 U.S.C. § 502(b)(6).

6

* * *

> "'The damages a landlord may assert from termination of a lease are limited to the rent reserved for the greater of one year or 10% [15% in the final bill] of the remaining lease term, not to exceed three years after *the earlier of' the petition date or the date of surrender or repossession*. H.R.Rep. No. 595, 95th Cong., 1st Sess. 353 (1977), U.S. Code Cong. & Admin. News 1978, pp. 5787, 6448, *reprinted in* Collier on Bankruptcy, vol. C, App. Pt. 4(d)(i)."

*Connectix*, 488 B.R. at 492 (emphasis supplied); *Accord*, *In re PPI Enterprises, Inc*., 324 F.3d 197, 209-210 (3rd Cir.2003) (Holding that where lease was terminated prior to petition date, the letter of credit/security deposit is applied to capped claim); *In re AB Liquidating Corp.*, 416 F.3d 961, 964-965 (9th Cir.2005) (A tenant's security deposit or other form of payment that is designed to ensure payment under the lease is to be applied to the capped claim under Section 502(b)(6)); *In re Mayan Networks Corp.*, 306 B.R. 295, 299 (2004) ("It is clear that security deposits are to be applied after the § 502(b)(6) cap, thereby reducing the unsecured claim that a landlord may have against the estate.").

    Applying the statute to the SFAI facts, FMC's damages for unpaid rent and related damages prior to the Lease Termination Date total $569,578.10, which sum excludes the portions of the Claim identified in paragraph 6 (b)-(e) of the Claim Addendum. The corrected calculations are set forth in the Pierotti Declaration, Exhibit A.

### D.    FMC Incorrectly Calculates the Capped Portion of the Claim

    Section 502(b)(6) caps a lessor's claim for rent reserved under the lease at the greater of one year, or 15%, but not to exceed three years, of the remaining **term** of the lease. Section 502(b)(6)(A) does not include as "rent reserved" under the lease non-periodic payments to FMC such as late fees, interest, attorneys fees or utilities. *In re McSheridan*, 184 B.R. 91, 99-100 (B.A.P. 9th Cir.1995);[4] and *In re Denali Family Services*, 506 B.R. 73, 82 (Bankr. D. Alaska 2014).

---

[4] See footnote 2.

7

The Claim miscalculates the capped component by (i) calculating the 15% cap on the **total amount** of remaining rent due under the lease as of the Petition Date (as opposed to the **time** remaining after the Lease Termination Date), and (ii) including as part of the capped claim the post-Lease Termination Date charges that are not reserved rent under the lease. Utilizing this incorrect method, FMC aggregates the total remaining sums due under the lease to be $16,400,472.76, takes 15% of this sum and concludes that the capped component of the Claim totals $2,460,070.91. *See*, Claim Addendum at ¶¶ 7-10, Exhibits 2 and 3 to the Claim.

1.      The 15% cap under Section 502(b)(6) is a measure of time not rent.

The standard for over 30 years in cases in the Ninth Circuit is that the capped component of a lessor's claim is calculated as a measure of the time remaining, not a measure of rent. "Under a plain reading of the statute, the number of months of rent that can be claimed as damages is determined by multiplying the remaining term by 15 percent because more than 80 and fewer than 240 months remained on the lease after the date of the filing of the petition." *In re Iron-Oak Supply Corp.*, 169 B.R. 414, 419 (Bankr. E.D. Cal. 1994); "The correct interpretation, however, is that the Congress intended that the phrase "remaining term" be a measure of time, not rent." *Id.* at 420; *In re Connectix Corp.*, 372 B.R. 488, 493- 494 (Bankr. N.D. Cal. 2007) (following an extensive review of the Legislative History for Section 502(b)(6), the *Connectix* court concluded: "Based on the language and the legislative history of § 502(b)(6), it is apparent that the fifteen percent calculation is a function of time, not the remaining rent due under the lease."); *In re Heller Ehrman LLP*, 2011 WL 635224 (N.D. Cal. 2011) ("the [9th Circuit] adopted the time approach in addressing the congressional intent of the statute in *In re El Toro Materials Co., Inc.*, 504 F.3d 978, 980 n. 3 (9th Cir.2007)."); *In re Cortlandt Liquidating LLC*, 648 B.R. 137, 141 (Bankr. S.D. NY 2023) (Applying the time approach to the capped claim and noting that the time approach has been adopted by "Colliers [e.g. 4 Collier on Bankruptcy ¶ 502.03[7][c] (16th ed. 2022) and the "American Bankruptcy Institute Commission to Study the Reform of Chapter 11, ISBN: 978-1-937651-84-8, Section V.A.6, pp. 129-30, 135.").

Applying Section 502(b)(6) to the Claim as a function of "time," the lease had a remaining term after the Lease Termination Date of 11 years or 132 months, plus one (1) day. Fifteen percent

of 132 months equals 19.8 months, or 19 months and 24 days. August 23, 2024, is 19.8 months and one day after the Lease Termination Date. Applying the components of the rent reserved under the lease from Exhibit 2 of the Claim and calculating the Section 502(b)(6)(A) component of the Claim as a function of time, the total capped portion of the claim equals $1,628,265.96. The components (and for 2024, the fraction of the components) used to calculate the capped claimed are from Exhibit 2 of the Claim: (A) base rent; and (B) "December Additional Base Rent." The Trustee's total capped claim calculations are reflected in Exhibit B to the Pierotti Declaration and summarized in Table A, below. As discussed in the following section, reserved rent does not include post Lease Termination Date attorneys' fees, interest, late fees, utilities, etc.

## Table A
## Summary of Future Rent Calculations

| 19.8 Months of Rent | Base Rent |
|---|---|
| 31-Dec-22 (one day) | 1,524.19 |
| 2023 (12 months) | 977,177.00 |
| 2024 (7.8 months) | 649,564.77 |
| **Total Reserved Rent** | **1,628,265.96** |

The capped component of the Claim set forth in the chart above is as of the Termination Date and is the amount FMC should have included in the Claim as of the petition date. Adding the correct capped amount (Pierotti Dec., Ex. B) to the correct pre-Termination Date damages amount, $569,578.10 (Pierotti Dec., Ex. A), produces a total claim of $2,197,844.06 as of the petition date.

To establish the current, December 2024, amount of the Claim, the Trustee has deducted (i) the setoff of $387,500 that arose for calendar year 2022 (Claim Addendum at ¶ 6); and (ii) the setoff of $387,500 that arose for calendar year 2023.[5] *In re Connectix Corp.*, 372 B.R. 488, 495 (Bankr. N.D. Cal. 2007) (Concluding that post lease termination payments are applied to the capped portion of the claim). As of today, the remaining part of the capped component is $853,165.96.[6] Adding that

---

[5] See, Stipulation and Order authorizing post-petition setoff, Dockets 174 and 175.
[6] Capped claim amount on Lease Termination Date, $1,628,265.96, less two setoffs of $387,500.

sum to the pre-Termination Date damages ($569,578.10) produces a current total Claim amount of $1,422,844.06. Pierotti Declaration, Exhibit C.

As reflected in Table B, below, setoffs for 2024 ($387,500), 2025 ($553,000), and 2026 (partial setoff of $482,344.06) will result in payment of the Claim in full in January 2027 and FMC will be obligated *to pay to the Trustee* $70,655.94 at that time.

**Table B**
**Payment of Claim in Full After Set-Offs Made Through January 1, 2027,**
**With a Partial Set-Off for 2026**

| Year | Section 502(b)(6) Damages | Section 502(b)(6) Damages After FMC Note Reduction / Setoff | Claim Amount After Applying Annual Note Offsets | Setoffs By FMC Under Note |
|---|---|---|---|---|
| Pre-Termination Damages | $569,578.10 | $569,578.10 | | |
| Capped Claim (reserved rent) | $1,628,265.96 | $1,628,265.96 | | |
| Total Claim | $2,197,844.06 | $2,197,844.06 | | |
| 2022 | | -$387,500.00 | $1,810,344.06 | Setoff 1/5/23 (FMC Claim para 6.) |
| 2023 | | -$387,500.00 | $1,422,844.06 | Setoff 3/5/24 (Dockets 174 & 175) |
| 2024 | | -$387,500.00 | $1,035,344.06 | To be set off 1/1/25 |
| 2025 | | -$553,000.00 | $482,344.06 | To be set off 1/1/26 |
| 2026 | | -$482,344.06 | $0.00 | To be set off 1/1/27 |

10

2. Interest, Utilities, Attorney's Fees and Other Costs Are Not Legitimate Components of a Section 502(b)(6) Claim

FMC asserts it is entitled to interest, attorneys' fees, utilities, other costs, late fees, reimbursement and indemnity, etc., after the Lease Termination Date. Claim Addendum at ¶¶ 13-15. FMC is not entitled to payment of any such fees or costs, as they fall outside the allowed parameters of rent reserved as capped under Section 502(b)(6). The Ninth Circuit has employed a test to determine what components can be used in calculating the sums that a landlord with a capped claim can collect from a bankruptcy estate:

> We hold that the following three-part test must be met for a charge to constitute "rent reserved" under § 502(b)(6)(A):
>
> 1) The charge must: (a) be designated as "rent" or "additional rent" in the lease; or (b) be provided as the tenant's/lessee's obligation in the lease;
>
> 2) The charge must be related to the value of the property or the lease thereon; and
>
> 3) the charge must be properly classifiable as rent because it is a fixed, regular or periodic charge.

*In re McSheridan*, 184 B.R. 91, 99-100 (B.A.P. 9th Cir.1995).

The test in *McSheridan* was clarified in *In re El Toro Materials Co., Inc.*, 504 F.3d 978 (9th Cir. 2007). In *El Toro*, the debtor objected to a $23 million component of its former landlord's claim related to alleged damages the debtor cause to leased property by "…leaving one million tons of its wet clay 'goo,' mining equipment and other materials…" after rejecting the lease. *El Toro*, 504 F.3d at 979. Concluding that the landlord could include the damages caused by the debtor to its property as part of its claim, the panel in *El Toro* adopted a test to determine what damages a landlord can include:

> A simple test reveals whether the damages result from the rejection of the lease: Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?

*Id.*

1    In applying the *El Toro* test to the capped portion of a landlord's claim where the lease was

2    terminated prior to the petition date, another Ninth Circuit panel concluded that legal fees that arose

3    *after* the lease termination could not be included in the landlord's claim.

4

5              "Fees attributable to litigating Creditors' claims for future rent are
             capped, because such claims would not arise were the leases not

6             terminated."

7    *In re Kupfer*, 852 F.3d 853, 859 (9th Cir. 2016). The court also adopted the position taken by the

8    Eighth Circuit BAP that interest that arose *after* the lease termination could not be included in the

9    landlord's claim. *Id.* 852 F.3d at 858.

10              The Premises lease provided that SFAI was responsible for "charges for electricity gas water

11   sewer and trash services." Lease at Section 8.02(a). Because these charges do not qualify as a fixed,

12   regular or periodic charge, they do not satisfy the second and third requirements of the *McSheridan*

13   test, they do not qualify as rent reserved for purposes of the Section 502(b)(6) cap. *In re McSheridan*,

14   184 B.R. 91, 99-100 (B.A.P. 9th Cir.1995); *accord, In re Denali Family Services*, 506 B.R. 73, 82

15   (Bankr. D. Alaska 2014).[7]

16              After the set-offs for 2022 and 2023 are deducted, FMC's Claim, as correctly calculated, is

17   currently $1,422,844.10. This amount is subject to annual reductions.

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26

27   [7] In the event that the Court concludes utility charges can be allowed as reserved rent under Section 502(b)(6), the monthly averages included in the Claim should not be used. Instead, FMC should be required to provide an updated utilities schedule that reflects the actual metered/invoiced amounts that were charged for the Debtor's portion of the

28   Premises from the Lease Termination Date through August 24, 2024, less any credits.

1  **III.    CONCLUSION**

2          For the reasons provided in this Objection, the Claim should be reclassified as a general

3  unsecured claim in the present amount of $1,422,844.10, which amount shall be subject to reduction

4  by the amount of the Annual Payment on the first business day of January, commencing in January

5  2025, until setoffs reduce the claim to zero.

6

7  DATED:  December 4, 2024           RINCON LAW LLP

8

9                                      By: */s/Gregg S. Kleiner*

10                                          GREGG S. KLEINER
                                            Counsel for PAUL MANSDORF,
11                                          Trustee in Bankruptcy

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Fill in this information to identify the case:**

Debtor 1 ___San Francisco Art Institute___

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: ___Northern District of California___ [▾]

Case number ___23-30250___

---

Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

---

## Part 1: Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | **FMC Pier 2 Sublessor, LLC**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. Has this claim been acquired from someone else? | ☑ No<br>☐ Yes. From whom? _____ |

| 3. Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| | **Farella Braun + Martel, Attn: Gary Kaplan, Esq.**<br>Name | _____<br>Name |
| | **One Bush Street, Suite 900**<br>Number          Street | _____<br>Number          Street |
| | **San Francisco          CA          94104**<br>City          State          ZIP Code | _____<br>City          State          ZIP Code |
| | Contact phone **415-954-4940** | Contact phone _____ |
| | Contact email **gkaplan@fbm.com** | Contact email _____ |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| 4. Does this claim amend one already filed? | ☑ No<br>☐ Yes. Claim number on court claims registry (if known) _____     Filed on _____<br>MM / DD / YYYY |
|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes. Who made the earlier filing? _____ |

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____ |

7. **How much is the claim?**    $_____3,064,029.95. **Does this amount include interest or other charges?**

         ☐ No
         ☑ Yes. Attach statement itemizing interest, fees, expenses, or other
             charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Breach of real property lease _____

9. **Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

     **Nature of property:**

     ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim*
         *Attachment* (Official Form 410-A) with this *Proof of Claim*.
     ☐ Motor vehicle
     ☑ Other. Describe:    Setoff against promissory note (see attached Addendum) _____

     **Basis for perfection:**    _____

     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for
     example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has
     been filed or recorded.)

     **Value of property:**    $ __11,389,310.00__
     **Amount of the claim that is secured:**    $ __3,064,029.95__
     **Amount of the claim that is unsecured:**    $ _____0.00 (The sum of the secured and unsecured
                                                   amounts should match the amount in line 7.)

     **Amount necessary to cure any default as of the date of the petition:**    $ __472,443.20__

     **Annual Interest Rate** (when case was filed) __10.00__ %
     ☑ Fixed
     ☐ Variable

10. **Is this claim based on a lease?**

☐ No
☑ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ __472,443.20__

11. **Is this claim subject to a right of setoff?**

☐ No
☑ Yes. Identify the property: Promissory note dated 10/30/20 (see attached Addendum) _____

Case 23-30250    Claim 40    Filed 06/23/23    Desc Main Document    Page 2 of 16

EXHIBIT A

Case: 23-30250    Doc# 217    Filed: 12/04/24    Entered: 12/04/24 08:06:13    Page 19 of 33

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | | **Amount entitled to priority** |
|---|---|---|

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

**Amount entitled to priority**

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

$_____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).

$_____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).

$_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).

$_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).

$_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.

$_____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  06/23/2023
                  MM / DD / YYYY

*Signature*

Print the name of the person who is completing and signing this claim:

Name  **Gary**                                    **Kaplan**
       First name          Middle name            Last name

Title  **Attorney for Creditor**

Company  **Farella Braun + Martel LLP**
         Identify the corporate servicer as the company if the authorized agent is a servicer.

Address  **One Bush Street, Suite 900**
         Number          Street

         **San Francisco**                    **CA**      **94104**
         City                                 State       ZIP Code

Contact phone  **415-954-4940**              Email  gkaplan@fbm.com

| | |
|---|---|
| 1 | Gary M. Kaplan (State Bar No. 155530) |
| 2 | FARELLA BRAUN + MARTEL LLP<br>One Bush Street, Suite 900 |
| 3 | San Francisco, CA 94104<br>Telephone: (415) 954-4400 |
| 4 | Facsimile: (415) 954-4480<br>Email: gkaplan@fbm.com |
| 5 | |
| 6 | Attorneys for Creditor<br>FMC Pier 2 Sublessor, LLC |
| 7 | |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re: | Case No.: 23-30250 HLB |
| THE SAN FRANCISCO ART INSTITUTE, a<br>California nonprofit public benefit corporation, | Chapter 7 |
| Debtor. | |

## <u>ADDENDUM TO PROOF OF CLAIM BY FMC PIER 2 SUBLESSOR, LLC</u>

1. Creditor FMC Pier 2 Sublessor, LLC ("FMC") hereby provides this Addendum to its Proof of Claim (the "Claim") for amounts owed to it by The San Francisco Art Institute ("SFAI" or the "Debtor"), the debtor in the above-captioned case (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court") with respect to that certain Sublease dated June 9, 2016, as amended from time to time, including the Amendment of Sublease dated October 30, 2020, the "Sublease"[1]) between FMC as Sublandlord and Debtor as Subtenant, with respect to certain real property generally described as the southern portion of Pier 2, Fort Mason Center, San Francisco, California, previously known as the Herbst Pavilion and more particularly described in the Sublease (the "Premises").

2. Pursuant to the Notice of Termination of Sublease provided to Debtor on December

---

[1] Such documents are not attached as they contain confidential and/or proprietary information. FMC is willing to provide copies of such documents to the Trustee and other interested parties upon request, subject to appropriate protection of such confidential and/or proprietary information.

Farella Braun + Martel LLP<br>
One Bush Street, Suite 900<br>
San Francisco, CA 94104<br>
(415) 954-4400

FMC CLAIM ADDENDUM

Case 23-30250    Claim 40    Filed 06/23/23    Desc Main Document    Page 4 of 16

EXHIBIT A

Case: 23-30250    Doc# 217    Filed: 12/04/24    Entered: 12/04/24 08:06:13    Page 21 of 33

22, 2022,[2] FMC terminated the Sublease in accordance thereof based on Debtor's numerous uncured defaults, as set forth in that notice and numerous prior notices (including those dated October 13, 2022 and December 5, 2022), and FMC regained possession of the Premises on December 30, 2022 (the "Repossession Date").

3.    On April 19, 2022 (the "Petition Date") the Debtor commenced the Bankruptcy Case in the Bankruptcy Court by filing a Voluntary Petition under Chapter 7 of the Bankruptcy Code, and Paul Mansdorf was appointed as the Chapter 7 trustee in the Bankruptcy Case (the "Trustee")

4.    Although Debtor's Bankruptcy Schedules assert that the Debtor has continuing rights in the Premises pursuant to the Sublease, the Trustee (through counsel) has acknowledged that the estate does not assert such interest and recognizes that the Sublease was terminated and the Premises repossessed by FMC prior to the Petition Date.

5.    The Claim includes all amounts owed to FMC under or pursuant to the Sublease and applicable law, including (i) amounts owed prior to termination of the Sublease (the "Arrearages"), (ii) rent and other obligations owed by Debtor from the Repossession Date ("Post-Termination Sublease Obligations") through its scheduled termination on December 31, 2033 (the "Sublease Termination Date"), and (iii) other damages resulting from the termination of the Sublease ("Sublease Termination Damages"), plus applicable interest.

6.    As reflected on Exhibit 1 attached hereto, the net amount owed by the Debtor under the Sublease accruing prior to the Petition Date was $472,443.20 (the "Pre-Petition Debt"), comprised of (a) arrearages through the Repossession Date of $551,353.43,[3] **plus** (b) Post-Termination Sublease Obligations from the Repossession Date through the Petition Date (with amounts for April 2023 prorated based on the Petition Date of April 19) of $260,440.57 (net of utility provider credits of $6,945.57), **plus** (c) late charges of $30,054.14 pursuant to Section 9.0 of the Sublease,[4] **plus** (d) accrued interest aggregating $18,095.06 pursuant to Section 16.06 of

---

[2] Such document is not attached as it contains confidential and/or proprietary information.  FMC is willing to provide a copy of such document to the Trustee and other interested parties upon request, subject to appropriate protection of such confidential and/or proprietary information.

[3] The arrearages on Exhibit 1 aggregate $751,353.43 include the Debtor's obligation to restore a security deposit of $200,000.00 by October 1, 2022.  In view of the subsequent termination of the Sublease, FMC is not seeking payment of such $200,000.00 amount, so that the Arrearages pursuant to this Claim amount to $551,353.43.

[4] Section 9.0 states in relevant part: "if any installment of Base Rent or any other sums due from [SFAI] shall not be

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA  94104
(415) 954-4400

Case 23-30250    Claim 40    Filed 06/23/23    Desc Main Document    Page 5 of 16

EXHIBIT A

Case: 23-30250    Doc# 217    Filed: 12/04/24    Entered: 12/04/24 08:06:13    Page 22 of 33

the Sublease,[5] **minus** (e) setoff of $387,500.00 pursuant to FMC's notice to SFAI on January 5, 2023[6] with respect to FMC's obligation to SFAI owed on December 31, 2022 under an Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020[7] (the "Note").[8]

7.   Thus, the Arrearages aggregate $202,426.26, comprised of the Pre-Petition Debt of $472,443.20, **minus** Post-Termination Sublease Obligations from the Repossession Date through the Petition Date of $260,440.57, **minus** interest accruing from the Repossession Date through the Petition Date of $9,576.17.

8.   The Post-Termination Sublease Obligations from the Petition Date through the Sublease Termination Date aggregate $16,140,032.19, as reflected on Exhibit 2 attached hereto..

9.   Thus, the total Post-Termination Sublease Obligations aggregate $16,400,472.76, comprised of (i) $260,440.57 from the Repossession Date through the Petition Date, and (ii) $16,140,032.19 from the Petition Date through the Sublease Termination Date.

10. The "capped" amount of the Post-Termination Sublease Obligations pursuant to Bankruptcy Code Section 502(b)(6) is $2,460,070.91 (the "Capped Post-Termination Sublease Obligations"), which is equal to 15% of the $16,400,472.76 uncapped figure, which constitutes "rent reserved" under the Sublease following the Repossession Date.

11. As reflected on Exhibit 3 attached hereto, the Sublease Termination Damages

---

received by [FMC] within five (5) days of the date due, [SFAI] shall pay to [FMC] a late charge equal to four percent (4%) of the amount not paid."
[5] Section 16.06 provides in relevant part: "Any amount owed by [SFAI] to [FMC] which is not paid when due shall bear interest at the lesser of (a) the 'prime' or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum or (b) the maximum rate of interest permitted by law."
[6] Such document is not attached as it contains confidential and/or proprietary information. FMC is willing to provide a copy of such document to the Trustee and other interested parties upon request, subject to appropriate protection of such confidential and/or proprietary information.
[7] Such document is not attached as it contains confidential and/or proprietary information. FMC is willing to provide a copy of such document to the Trustee and other interested parties upon request, subject to appropriate protection of such confidential and/or proprietary information.
[8] Section 6 of the Note provides in relevant part: "[FMC] may upon written notice to [SFAI] not later than sixty (60) days after the due date of any payment of this Note, offset amounts due as Base Rent, Service District Charges, Adjustment Rent and the Deposit, if such amounts are not paid by [SFAI] when due pursuant to the Sublease ('Unpaid Sublease Amounts') against accrued and unpaid interest and then against the then-principal balance under this Note." Section 8.01(e) of the Sublease likewise provides in pertinent part: "If and to the extent that [SFAI] does not make payment when due of all amounts of Base Rent, Adjustment Rent, Service District Charges, the Deposit and all other additional rent, then FMC may, without notice to [SFAI], offset such unpaid amounts under this Sublease against accrued and unpaid interest and the outstanding balance under the Project Cost Promissory Note."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC CLAIM ADDENDUM                          - 3 -

1    aggregate $391,956.61.

2         12. The liquidated amount of the Claim aggregates $3,064,029.95, comprised of

3    Arrearages of $202,426.26, interest accruing from the Repossession Date through the Petition

4    Date of $9,576.17, Capped Post-Termination Sublease Obligations of $2,460,070.91, and

5    Sublease Termination Damages of $391,956.61.

6         13. The Claim also includes interest accruing after the Petition Date in accordance with

7    Section 16.06 of the Sublease (quoted above), in amounts to be determined.

8         14. The Claim also includes all attorneys' fees and costs incurred by FMC in enforcing

9    the Sublease pursuant to Section 22.01 thereof, in amounts to be determined.[9]

10        15. The Claim also includes all amounts owed now or in the future by the Debtor for any

11   reimbursement, indemnification, or other obligation pursuant to the Sublease (including, without

12   limitation, pursuant to; Section 11.01 and Ex. D, Section 7.2, as well as pursuant to the

13   Reimbursement and Indemnity Agreement dated June 9, 2016 between SFAI and Debtor) and

14   applicable law.

15        16. Pursuant to Section 506(a) of the Bankruptcy Code,[10] the Claim is a secured claim,

16   as it is subject to setoff against FMC's obligations to SFAI under the Note pursuant to the Section

17   6 thereof and Section 8.01(e) of the Sublease, as discussed above.  Because the amount of the

18   Claim is less than the principal balance on the Note of $11,389,310 (per valuation on Debtor's

19   Amended Bankruptcy Schedule A/B filed in the Bankruptcy Case on June 7, 2023, Docket No.

20   55), FMC asserts that the Claim is fully secured.  However, if, and to the extent that any portion

21   of the Claim is determined to be unsecured, then FMC asserts the Claim as an unsecured claim.

22        17. This Claim is filed under the compulsion of the bar date established in the

23   Bankruptcy Case and is filed to protect FMC from potential forfeiture of claims by reason of such

24   bar date.  The filing of this Claim shall not be deemed or construed as:

25             (a)    an election of remedies;

26   _____

27   [9] Section 22.01 provides: "In the event either party is required to commence an action in a court of law to enforce its
     rights under this Sublease, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs."

28   [10] Section 506(a)(1) provides in relevant part: "An allowed claim of a creditor . . . that is subject to setoff under
     section 553 of [the Bankruptcy Code], is a secured claim . . . to the extent of the amount subject to setoff . . . and is an
     unsecured claim to the extent that . . . the amount so subject to setoff is less than the amount of such allowed claim."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA  94104
(415) 954-4400

FMC CLAIM ADDENDUM                    - 4 -

1    (b)    a consent by FMC to the jurisdiction of the Bankruptcy Court or any other

2    court with respect to any proceeding, commenced against or otherwise involving FMC;

3    (c)    a consent by FMC to a jury trial in the Bankruptcy Court or any other court

4    in any proceeding commenced against or otherwise involving FMC, pursuant to 28 U.S.C.

5    §157(e) or otherwise;

6    (d)    a waiver of the right of FMC to a trial by jury in any proceeding

7    commenced against or otherwise involving FMC, notwithstanding the designation or not of such

8    matters as a "core proceeding" pursuant to 28 U.S.C. §157(b)(2), and whether such jury trial is

9    pursuant to statute or the United States or a state Constitution;

10    (e)    a waiver of the right of FMC to have final orders in non-core matters (or in

11    core matters in which the Bankruptcy Court lacks authority to enter final orders) entered only

12    after de novo review by the District Court;

13    (f)    a waiver of the right of FMC to have the reference withdrawn by the

14    District Court in any matter subject to mandatory or discretionary withdrawal;

15    (g)    a waiver of any past, present or future event of default; or

16    (h)    a waiver or limitation of any right FMC may have against the Debtor or

17    any other person, in law or in equity, all of which rights, are expressly reserved by FMC.

18    18. FMC reserves the right to amend or supplement this Claim and to file further

19    pleadings and documents from time to time to: (i) restate liquidated and unliquidated components

20    of the Claim; (ii) assert additional amounts owed by the Debtor that may be revealed after

21    discovery or other investigation has taken place, including, without limitation, seeking amounts

22    owed for conduct occurring prior to or after the filing of this Claim; (iii) request allowance and

23    payment of administrative expenses (whether in respect of amounts asserted herein or otherwise);

24    or (iv) for any other reason should FMC deem appropriate.

25    Dated: June 23, 2023                    FARELLA BRAUN + MARTEL LLP

26    25727\16202646.3                         By:_____/s/ *Gary M. Kaplan*_____
                                                        Gary M. Kaplan
27
                                             Attorneys for Creditor
28                                           FMC Pier 2 Sublessor, LLC

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC CLAIM ADDENDUM                           - 5 -

Case 23-30250    Claim 40    Filed 06/23/23    Desc Main Document    Page 8 of 16

EXHIBIT A

Case: 23-30250    Doc# 217    Filed: 12/04/24    Entered: 12/04/24 08:06:13    Page 25 of 33

# EXHIBIT 1

| Rent Period | (1) Amounts Due At Lease Termination Notice On 12/22/22 | (2) 4% Late Charge Penalty | (3) 10% Annual Interest Due From 11th day of month amount due through 1/5/2023. See note on security deposit | (4) Amount Due As of 1/5/23 Before Note 2 Application | (5) Application of $387,500 Delinquent Rent Against Note 2 On 1/5/23 | (6) Amount Due As of 1/5/23 After Note 2 Application | (7) January 2023 to April 2023 Rent Amounts January Expenses Include $6,945.57 Utility Credit From Provider | (8) 10% Annual Interest Due From 11th day of month amount due through 4/18/2023 | Total Due 4/18/2023 |
|---|---|---|---|---|---|---|---|---|---|
| Security Deposit due 10/1/22 | $ 200,000.00 | $ 8,000.00 | $ 4,000.00 | $ 212,000.00 | $ | $ 212,000.00 | | | $ 212,000.00 |
| November 2022 Base Rent | 47,250.00 | 1,890.00 | 724.93 | 49,864.93 | (49,864.93) | - | | | - |
| November 2022 Expenses (electric through September) | 24,708.71 | 988.35 | 379.09 | 26,076.15 | (26,076.15) | - | | | - |
| December 2022 Base Rent | 47,250.00 | 1,890.00 | 336.58 | 49,476.58 | (49,476.58) | - | | | - |
| December 2022 Expenses (electric through October) | 21,967.72 | 878.71 | 156.48 | 23,002.91 | (23,002.91) | - | | | - |
| December 2022 Additional Rent | 410,177.00 | 16,407.08 | 2,921.81 | 429,505.89 | (239,079.43) | 190,426.46 | | $ 5,373.68 | 195,800.14 |
| January 2023 Base Rent | | | | | | | $ 48,667.50 | 1,293.36 | 49,960.86 |
| January 2023 Expenses (electric for Nov, Dec, Jan) | | | | | | | 28,632.68 | 760.92 | 29,393.60 |
| February 2023 Base Rent | | | | | | | 48,667.50 | 893.35 | 49,560.85 |
| February 2023 Expenses | | | | | | | 23,007.46 | 422.33 | 23,429.79 |
| March 2023 Base Rent | | | | | | | 48,667.50 | 520.01 | 49,187.51 |
| March 2023 Expenses | | | | | | | 20,592.02 | 220.02 | 20,812.04 |
| April 2023 Base Rent (prorated 18 of 30 days) | | | | | | | 29,200.50 | 64.00 | 29,264.50 |
| April 2023 Expenses (prorated 18 of 30 days) | | | | | | | 13,005.42 | 28.51 | 13,033.92 |
| Total | $ 751,353.43 | $ 30,054.14 | $ 8,518.89 | $ 789,926.46 | $ (387,500.00) | $ 402,426.46 | $ 260,440.57 | $ 9,576.17 | $ 672,443.20 |

Notes:
1) Amounts due per lease termination notice
2) 4% late charge per Section 9 of the Sublease
3) 10% annual interest calculated as amount in column D X 10% per year divided by 365 days times # of days from 11th of month amount due.  Security deposit only calculated through lease termination date of 12/22/22 instead of 1/5/23
   Interest not calculated on penalty amount.
4) Sum of 3 previous columns
5) Application of $387,500 -  1st applied to interest, then penalty then principal due.  Not applied to security deposit.
6) Sum of 2 previous columns
7) Rent and expense amounts for January to April
8) 10% annual interest on December rent from 1/6/23 to 4/18/23 and 10% annual interest on January to April amounts from 11th of the month amount due to 4/18/23
9) Sum of 3 previous columns

# EXHIBIT 2

## PART 1 BASE RENT SUMMARY

|  | Monthly Base Rent | X 12 months Total Monthly Base Rent | December Additional Base Rent | Total Rent | Per Exhibit C Lease Rent Schedule | Difference |
|---|---|---|---|---|---|---|
| 2023 | 48,667.50 | 584,010.00 | 393,167.00 | 977,177.00 | 977,177.00 | - |
| 2024 | 50,085.00 | 601,020.00 | 412,190.00 | 1,013,210.00 | 1,013,210.00 | - |
| 2025 | 50,085.00 | 601,020.00 | 548,223.00 | 1,149,243.00 | 1,149,243.00 | - |
| 2026 | 51,587.55 | 619,050.60 | 530,192.40 | 1,149,243.00 | 1,149,243.00 | - |
| 2027 | 53,090.10 | 637,081.20 | 551,535.80 | 1,188,617.00 | 1,188,617.00 | - |
| 2028 | 53,090.10 | 637,081.20 | 590,208.80 | 1,227,290.00 | 1,227,290.00 | - |
| 2029 | 54,682.80 | 656,193.64 | 571,096.36 | 1,227,290.00 | 1,227,290.00 | - |
| 2030 | 56,275.51 | 675,306.07 | 595,708.93 | 1,271,015.00 | 1,271,015.00 | - |
| 2031 | 56,275.51 | 675,306.07 | 638,733.93 | 1,314,040.00 | 1,314,040.00 | - |
| 2032 | 57,963.77 | 695,565.25 | 618,474.75 | 1,314,040.00 | 1,314,040.00 | - |
| 2033 | 59,652.04 | 715,824.44 | 645,230.56 | 1,361,055.00 | 1,361,055.00 | - |
|  |  |  |  | 13,192,220.00 | 13,192,220.00 | - |

## PART 2 OTHER RENT EXPENSES

|  | 2022 Amounts Billed |
|---|---|
| SDC | 125,544.84 |
| Utilities | 57,280.26 |
| Insurance | 75,153.84 |
| Total | 257,978.94 |
| Average 2022 Monthly Other Expenses | 21,498.25 |

2023 to 2033 Monthly Estimate of Other Expenses (2% increase per year)

|  |  |
|---|---|
| 2023 starting with May | 21,928.21 |
| 2024 | 22,366.77 |
| 2025 | 22,814.11 |
| 2026 | 23,270.39 |
| 2027 | 23,735.80 |
| 2028 | 24,210.52 |
| 2029 | 24,694.73 |
| 2030 | 25,188.62 |
| 2031 | 25,692.39 |
| 2032 | 26,206.24 |
| 2033 | 26,730.37 |

## PART 3 FUTURE RENT CALCULATION                    $   16,140,032

|  | Base Rent | Expenses | Total |
|---|---|---|---|
| April 2023 - prorated April 19th to the 30th | 19,467.00 | 8,670.28 | 28,137.28 |
| May-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Jun-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Jul-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Aug-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Sep-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Oct-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Nov-23 | 48,667.50 | 21,928.21 | 70,595.71 |
| Dec-23 | 441,834.50 | 21,928.21 | 463,762.71 |
| Jan-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Feb-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Mar-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Apr-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| May-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Jun-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Jul-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Aug-24 | 50,085.00 | 22,366.77 | 72,451.77 |
| Sep-24 | 50,085.00 | 22,366.77 | 72,451.77 |

|        | Base Rent  | Expenses  | Total      |
|--------|------------|-----------|------------|
| Oct-24 | 50,085.00  | 22,366.77 | 72,451.77  |
| Nov-24 | 50,085.00  | 22,366.77 | 72,451.77  |
| Dec-24 | 462,275.00 | 22,366.77 | 484,641.77 |
|        |            |           |            |
| Jan-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Feb-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Mar-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Apr-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| May-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Jun-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Jul-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Aug-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Sep-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Oct-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Nov-25 | 50,085.00  | 22,814.11 | 72,899.11  |
| Dec-25 | 598,308.00 | 22,814.11 | 621,122.11 |
|        |            |           |            |
| Jan-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Feb-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Mar-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Apr-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| May-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Jun-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Jul-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Aug-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Sep-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Oct-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Nov-26 | 51,587.55  | 23,270.39 | 74,857.94  |
| Dec-26 | 581,779.95 | 23,270.39 | 605,050.34 |
|        |            |           |            |
| Jan-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Feb-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Mar-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Apr-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| May-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Jun-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Jul-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Aug-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Sep-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Oct-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Nov-27 | 53,090.10  | 23,735.80 | 76,825.90  |
| Dec-27 | 604,625.90 | 23,735.80 | 628,361.70 |
|        |            |           |            |
| Jan-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Feb-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Mar-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Apr-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| May-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Jun-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Jul-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Aug-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Sep-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Oct-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Nov-28 | 53,090.10  | 24,210.52 | 77,300.62  |
| Dec-28 | 643,298.90 | 24,210.52 | 667,509.42 |
|        |            |           |            |
| Jan-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Feb-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Mar-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Apr-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| May-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Jun-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Jul-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Aug-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Sep-29 | 54,682.80  | 24,694.73 | 79,377.53  |
| Oct-29 | 54,682.80  | 24,694.73 | 79,377.53  |

**EXHIBIT A**

| | Base Rent | Expenses | Total |
|---|---|---|---|
| Nov-29 | 54,682.80 | 24,694.73 | 79,377.53 |
| Dec-29 | 625,779.17 | 24,694.73 | 650,473.89 |
| | | | |
| Jan-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Feb-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Mar-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Apr-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| May-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Jun-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Jul-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Aug-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Sep-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Oct-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Nov-30 | 56,275.51 | 25,188.62 | 81,464.13 |
| Dec-30 | 651,984.43 | 25,188.62 | 677,173.05 |
| | | | |
| Jan-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Feb-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Mar-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Apr-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| May-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Jun-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Jul-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Aug-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Sep-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Oct-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Nov-31 | 56,275.51 | 25,692.39 | 81,967.90 |
| Dec-31 | 695,009.43 | 25,692.39 | 720,701.83 |
| | | | |
| Jan-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Feb-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Mar-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Apr-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| May-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Jun-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Jul-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Aug-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Sep-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Oct-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Nov-32 | 57,963.77 | 26,206.24 | 84,170.01 |
| Dec-32 | 676,438.52 | 26,206.24 | 702,644.76 |
| | | | |
| Jan-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Feb-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Mar-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Apr-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| May-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Jun-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Jul-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Aug-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Sep-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Oct-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Nov-33 | 59,652.04 | 26,730.37 | 86,382.40 |
| Dec-33 | 704,882.60 | 26,730.37 | 731,612.97 |
| | | | |
| Total Base Rent Above | 13,017,017.00 | 3,123,015.19 | 16,140,032.19 |
| 2023 Base rent prior to bankruptcy | 175,203.00 | | |
| Total 2023 to 2033 Base Rent | 13,192,220.00 | | |
| | | | |
| Total Per Rent Schedule Above | 13,192,220.00 | | |

Case 23-30250   Claim 40   Filed 06/23/23   Desc Main Document   Page 14 of 16

EXHIBIT A

Case: 23-30250   Doc# 217   Filed: 12/04/24   Entered: 12/04/24 08:06:13   Page 31 of 33

# EXHIBIT 3

**Calculation of Additional Sublease Termination Damages**

| Payment Number of Days Back 5/1/2023 | 12 more Days Days Back To April 19 | Date Paid or Estimated Payment Date | Category | Actual Cost Or Estimated Cost Amount |
|---|---|---|---|---|
| N/A | N/A | 3/30/2023 | Semi annual roof & gutter cleaning noted in lease termination notice | $ 1,725.00 |
| N/A | N/A | 3/23/2023 | Moving & Storage Cost of SFAI property less $100 auction proceeds | 5,315.23 |
| N/A | N/A | 3/4/2023 | Storage costs | 1,500.00 |
| N/A | N/A | 3/10/2023 | Storage costs | 1,500.00 |
| N/A | N/A | 4/5/2023 | Storage costs | 1,500.00 |
| 0 | 12 | 5/10/2023 | Storage costs | 1,500.00 |
| 61 | 73 | 7/1/2023 | Repair Leaking Pipes Noted in Lease termination notice | 20,000.00 |
| 244 | 256 | 12/31/2023 | Remaining 2023 Annual Maintenance | 15,000.00 |
| 427 | 439 | 7/1/2024 | 2024 Annual Maintenance | 30,000.00 |
| 792 | 804 | 7/1/2025 | 2025 Annual Maintenance | 30,900.00 |
| 1,157 | 1169 | 7/1/2026 | 2026 Annual Maintenance | 31,827.00 |
| 1,522 | 1534 | 7/1/2027 | 2027 Annual Maintenance | 32,781.81 |
| 1,888 | 1900 | 7/1/2028 | 2028 Annual Maintenance | 33,765.26 |
| 2,253 | 2265 | 7/1/2029 | 2029 Annual Maintenance | 34,778.22 |
| 2,618 | 2630 | 7/1/2030 | 2030 Annual Maintenance | 35,821.57 |
| 2,983 | 2995 | 7/1/2031 | 2031 Annual Maintenance | 36,896.22 |
| 3,349 | 3361 | 7/1/2032 | 2032 Annual Maintenance | 38,003.10 |
| 3,714 | 3726 | 7/1/2033 | 2033 Annual Maintenance | 39,143.20 |
| | | | **Total** | $ 391,956.61 |

Annual maintenance will be approximately $30,000 for 2024 and consists of 2 semi- annual roof and gutter cleanings, elevator annual maintenance servicing, boiler/HVAC/other building systems annual maintenace, pest control, alarm monitoring service fees, and other routine maintenance costs. All of these costs were the responsibility of SFAI under the sublease and now will be incurred by FMC. In calculating the $30,000 estimate, FMC reviewed similar charges incurred by FMC on the neighboring Pier 3 building where such costs would be similar for Pier 2.

For purposes of the caculations above FMC estimated a 3% inflationary increase per year for the 2025 to 2033 annual maintenance costs. Costs would be incurred evenly over the year so FMC used a payment date of 7/1 for purposes of calculating the present value of the future expenditures. For the remainder of 2023 maintenance costs FMC used a payment date of 12/31/23.