Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-840-6385
Facsimile No.: 415-680-1712
E-mail: gkleiner@rinconlawllp.com
cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

THE SAN FRANCISCO ART INSTITUTE,
a California nonprofit
public benefit corporation,

Debtor.

Case No. 23-30250 HLB
Chapter 7
Hon. Hannah L. Blumenstiel

**DECLARATION OF PAUL MANSDORF
IN SUPPORT OF OBJECTION
TO CLAIM 40
(FMC Pier 2 Sublessor, LLC)**

[No Hearing Requested]

I, Paul Mansdorf, declare as follows:

1. I am serving as Chapter 7 Trustee of the estate of The San Francisco Art Institute, a California nonprofit public benefit corporation (the "**Debtor**"). This declaration is filed in support of my objection to Claim 40 filed by FMC Pier 2 Sublessor, LLC filed as a secured claim in the amount of $3,064,029.95 ("**Claim**"). The Claim of FMC Pier 2 Sublessor, LLC ("**FMC**") is for damages related to the Debtor's breach of the lease of real property located at Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**").

2. By my Objection, I am seeking to have the Claim reclassified as an unsecured claim and reduced to $2,197,844.06 as of the petition date, subject to setoff.

///

Case: 23-30250    Doc# 217-1    Filed: 12/04/24    Entered: 12/04/24 08:06:13    Page 1 of 8

1

3. As discussed in detail in the objection, the amount owed under the Claim is being reduced annually and will be paid in full in January 2027, by setoff pursuant to the terms of the Amended and Restated Unsecured Recourse Promissory Note dated October 28, 2020, by which FMC owes the estate $11,932,478.36 in original principal amount ("**FMC Recourse Note**"). Based on my review of the Claim and the Debtor's sworn Schedules, on the Petition Date, FMC owed the Debtor approximately $11,389,310 under the FMC Recourse Note.

4. I am informed and believe and on that basis state that: (i) on or about June 9, 2016, SFAI entered into a lease with Fort Mason Center for the Premises; (ii) the Premises was intended to be a satellite campus for the Debtor, whose primary campus and administrative location was 800 Chestnut Street, San Francisco, California; (iii) the lease required FMC to make substantial tenant improvements to the Premises at its cost; however, FMC did not have the funds to fulfill this obligation; and (iv) FMC and the Debtor reached an agreement under which the Debtor agreed to borrow money from a financial institution on a secured basis (i.e., by a deed of trust against 800 Chestnut Street) and lend the loan proceeds to FMC on an unsecured basis to enable FMC to pay for the tenant improvements.

5. FMC's obligation to the Debtor was documented by the FMC Recourse Note. A true and correct copy of FMC Recourse Note is attached hereto as **Exhibit A**.

6. It is my opinion that the transaction with FMC in 2016 was the beginning of the Debtor's demise. Within approximately three years of entering into the lease for the Premises, the Debtor defaulted under the terms of its promissory note secured by the Chestnut Street campus and the secured creditor commenced foreclosure. But for the intervention of the Regents of the University of California, the Debtor would have lost the Chestnut Street campus to foreclosure in October 2019 and, with it, its most valuable assets: its interest in the real property on Chestnut Street and the Diego Rivera mural at the Chestnut Street campus.

7. I am in possession of the original FMC Recourse Note, which I believe has material value for the estate. I anticipate that the value of the FMC Recourse Note could increase once the objection to the Claim has been resolved.

/ / /

1  Except for statements made upon information and belief, I declare under penalty of perjury
2  that the above statements are true and that if called as a witness I could and would testify to their
3  truthfulness. This declaration is executed on the _____ day of December 2024 in Berkeley,
4  California.

_____
PAUL MANSDORF

Paul J. Mansdorf
Digitally signed by Paul J. Mansdorf
Date: 2024.12.03 16:09:19 -08'00'

# AMENDED AND RESTATED UNSECURED RECOURSE PROMISSORY NOTE

$11,932,478.36                                                               October 28, 2020

THIS NOTE AMENDS AND RESTATES IN ITS ENTIRETY THAT CERTAIN UNSECURED RECOURSE PROMISSORY NOTE DATED JUNE 6, 2016 IN THE ORIGINAL PRINCIPAL AMOUNT OF $15,000,000 MADE BY MAKER IN FAVOR OF THE SAN FRANCISCO ART INSTITUTE.

FOR VALUE RECEIVED, FORT MASON CENTER, a California nonprofit public benefit corporation ("**Maker**"), promises to pay to THE SAN FRANCISCO ART INSTITUTE, a California nonprofit public benefit corporation, or such party's designee ("**Holder**"), in lawful money of the United States, the lesser of the principal sum of Eleven Million Nine Hundred Thirty Two Thousand, Four Hundred Seventy Eight and Thirty-Six Hundredths Dollars ($11,932,478.36), plus interest on the outstanding principal balance hereof, as set forth below.

1. <u>Interest</u>. Interest on the principal sum of this Note shall accrue at the rate of seventy-five hundredths percent (.75%) per annum based on a 365 day year and the actual number of days elapsed.

2. <u>Payments</u>. Interest and principal shall be due annually in accordance with the payment schedule attached hereto as **Exhibit A**, subject to offset pursuant to paragraph 6 below. Any and all unpaid amounts due and owing hereunder shall be due on December 31, 2059.

3. <u>Default Interest; Late Charge</u>. Upon the occurrence of an Event of Default (as defined below), the unpaid principal balance of this Note, together with all interest accrued but unpaid on the date of the Event of Default, shall bear interest at the rate of the "prime" or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum (the "**Default Rate**") commencing on the date the payment was due and continuing until the delinquent payment in full is received by Holder. Maker acknowledges that late payment will cause Holder to incur costs and other damages not otherwise provided for in this Note. Therefore, if any payment is not received by Holder within ten (10) days after written notice from Holder that a payment has not been timely made a late charge shall be charged and is immediately due and payable. The late charge shall be an amount equal to six percent (6%) of the overdue installment. Acceptance of any late payment or late charge will not constitute a waiver of the default with respect to the overdue amount and shall not prevent Holder from exercising any of Holder's other rights and remedies under this Note.

4. <u>Prepayment</u>. This Note may be prepaid in whole or in part, at any time, without penalty or premium, on any date that a payment of interest is due hereunder, upon thirty (30) days prior written notice to Holder.

**EXHIBIT A**

5. Security. This Note is recourse to the Maker but otherwise unsecured and the Holder shall have no direct or indirect lien on any assets of the Maker by reason of this Note.

6. Application of Payments and Offsets. All payments received by Holder shall be applied first to late payment charges, second to accrued interest, then to other charges due with respect to this Note, and then to the unpaid principal balance. The loan evidenced by this Note is made pursuant to that certain FMC Alterations Agreement dated June 6, 2016 between The San Francisco Art Institute and FMC Pier 2 Lessor, LP, and that certain Sublease dated June 6, 2016 between FMC Pier 2 Sublessor, LLC, as "Sublandlord," and The San Francisco Art Institute, as "Subtenant", as amended (the "**Sublease**"). Maker may upon written notice to Holder not later than sixty (60) days after the due date of any payment under this Note, offset amounts due as Base Rent, Service District Charges, Adjustment Rent and the Deposit, if such amounts are not paid by the Subtenant when due pursuant to the Sublease ("**Unpaid Sublease Amounts**") against accrued and unpaid interest and then against the then-principal balance under this Note. Such notice shall specifically identify all Unpaid Sublease Amounts and how they are being credited in Maker's written notice to Holder.

7. Default and Remedies. The unpaid principal balance of this Note, together with all accrued interest thereon, shall, at the option of Holder, become immediately due and payable, without demand or notice, upon the occurrence of any of the following events (each an "**Event of Default**"):

(a) the failure of Maker to pay when due any interest, principal, or other amount payable under this Note, if such failure to pay continues for a period of ten days after written notice from Holder;

(b) Maker (i) becoming the subject of any order for relief in a proceeding under any Debtor Relief Law (as defined below); (ii) becoming unable to pay, or admitting in writing Maker's inability to pay, Maker's debts as they mature; (iii) making an assignment for the benefit of creditors; (iv) applying for or consenting to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or for all or any part of Maker's property or assets; (v) instituting or consenting to any proceeding under any Debtor Relief Law with respect to or all or any part of the Maker's property or assets, or the institution of any similar case or proceeding without the consent of the Maker if such case or proceeding continues undismissed or unstayed for 60 calendar days;

(d) the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or either of them, or for all or any part of Maker's property or assets without the application or consent of Maker, if such appointment continues undischarged or unstayed for 60 calendar days;

(e) the issuance or levy of any judgment, writ, warrant of attachment or execution or similar process against all or any material part of the property or assets of



**EXHIBIT A**

Case: 23-30250   Doc# 217-1   Filed: 12/04/24   Entered: 12/04/24 08:06:13   Page 5 of 8

Maker if such process is not released, vacated or fully bonded within 60 calendar days after its issue or levy; and

(f) the taking of any action by Maker to initiate any of the actions described in paragraphs 7(c) or 7(d) of this Section.

8. As used in this Note, the term "**Debtor Relief Law**" shall mean the Bankruptcy Code of the United States of America, as amended, or any other similar debtor relief law affecting the rights of creditors generally.

9. Maximum Legal Rate of Interest. All agreements between Maker and Holder, whether now existing or hereafter arising, are hereby limited so that in no event shall the interest charged hereunder or agreed to be paid to Holder exceed the maximum amount permissible under applicable law. If Holder ever receives interest or anything deemed interest in excess of the maximum lawful amount, an amount equal to the excessive interest shall be applied to the reduction of the principal, and if it exceeds the unpaid balance of principal hereof, such excess shall be refunded to Maker. If interest otherwise payable to Holder would exceed the maximum lawful amount, the interest payable shall be reduced to the maximum amount permitted under applicable law. This paragraph shall control all agreements between Maker and Holder in connection with the indebtedness evidenced hereby.

10. Subordination. Notwithstanding anything to the contrary herein, the indebtedness evidenced by this Note is subordinate to any and all indebtedness, obligations and liabilities of Maker to First Republic Bank in the manner and to the extent set forth in that certain Debt Subordination Agreement between Holder and First Republic Bank dated of even date herewith, to which reference is hereby made for a more full statement thereof.

11. Miscellaneous. This Note may be modified only by a written agreement executed by Maker and Holder. This Note shall be governed by California law. The terms of this Note shall inure to the benefit of and bind Maker and Holder and their respective heirs, legal representatives and successors and assigns. If this Note is destroyed, lost or stolen, Maker will deliver a new note to Holder on the same terms and conditions as this Note with a notation of the unpaid principal and accrued and unpaid interest in substitution of the prior Note. Holder shall furnish to Maker reasonable evidence that the Note was destroyed, lost or stolen and any security or indemnity that may be reasonably required by Maker in connection with the replacement of this Note. Maker's execution, delivery and performance of this Note have been duly authorized by all necessary action on the part of Maker.

[*The remainder of this page is intentionally blank.*]

3

25727\13659126.5

**EXHIBIT A**

IN WITNESS WHEREOF, Maker has executed this Note as of the date first above written.

MAKER

FORT MASON CENTER,
a California nonprofit public benefit corporation

By: _____
Patrick Nester, Interim Executive Director

25727\13659126.5 [Signature Page – Promissory Note] PN

**EXHIBIT A**

Case: 23-30250   Doc# 217-1   Filed: 12/04/24   Entered: 12/04/24 08:06:13   Page 7 of 8

## Exhibit A

## Payment Schedule

This schedule assumes advancement of the full face amount of the Note. Amounts due may be prorated in accordance with the terms of the Note.

| Payment Date | Amount Due |
|---|---|
| December 31, 2017 | $240,000 |
| December 31, 2018 | $240,000 |
| December 31, 2019 | $240,000 |
| December 31, 2020 | $240,000 |
| December 31, 2021 | $240,000 |
| December 31, 2022 | $387,500 |
| December 31, 2023 | $387,500 |
| December 31, 2024 | $387,500 |
| December 31, 2025 and each anniversary thereafter through and including December 31, 2058 | $553,000 |
| December 31, 2059 (Maturity Date) | Balance on the Note |

25727\13659126.5

**EXHIBIT A**