Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
E-mail:   gkleiner@rinconlawllp.com
          cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

THE SAN FRANCISCO ART INSTITUTE,
    a California nonprofit
    public benefit corporation,

    Debtor.

Case No. 23-30250 HLB
Chapter 7
Hon. Hannah L. Blumenstiel

**MOTION FOR ORDER APPROVING AGREEMENT REGARDING DISPOSITION OF FUNDS**

[No Hearing Required Unless Requested]

Paul Mansdorf, Trustee in Bankruptcy of the estate of the above-named Debtor, hereby moves the Court for an order authorizing him to enter into the agreement with the Attorney General of the State of California described in this motion regarding disposition of estate funds in three accounts maintained by the Debtor at the time it filed its Chapter 7 petition in April 2023.

I.     **BACKGROUND**

Among the accounts the Debtor had on the petition date were two accounts at Charles Schwab and one account at Silicon Valley Bank. The Trustee took possession of the funds in these accounts shortly after his appointment. All three accounts were held in the name of the Debtor without any indication that the funds in the accounts were subject to restrictions on use.

The funds in the Schwab accounts were described in the Trustee's May 18, 2023, notice to creditors in connection with his motion for authority to borrow funds from one of the accounts to

pay for essential expenses. The Trustee proposed to borrow funds from one account that the Debtor had used in the past for purposes other than those that the donor might have intended.

The Trustee's motion led to some controversy with the Attorney General's Office, which acknowledged that the funds were property of the estate but asserted that none of the funds in the three accounts could be used for general purposes and the Trustee should be required to distribute the funds to institutions similar to the Debtor. The Bankruptcy Court approved the borrowing on an interim basis only and set a continued hearing for extended borrowing authority and final approval. In the interim, certain tax refunds came into the Trustee's possession which enabled the Trustee to pay the essential expenses without additional borrowing. The Court approved the interim borrowing on a final basis; the Trustee later reimbursed the account for the funds he had borrowed.

## II. DISPUTE WITH ATTORNEY GENERAL'S OFFICE OVER USE OF FUNDS

The difference of opinion over the use of the funds in the three accounts was deferred while the Trustee engaged in the arduous process of selling the estate's primary asset and negotiating resolution of certain claims. Discussions between the Trustee and the Attorney General's Office resumed in July 2024. The Attorney General's primary concern involved the endowment funds contained in the Schwab account number 5234. According to the Debtor's records, the funds in account 5234 were subject to express restrictions requiring that the funds be used only for student scholarships and teaching support. There is $1,191,119.01 in account 5234. The Attorney General's Office asserted that, under state law, those restricted funds were unavailable to the Trustee for general purposes under any circumstance and should instead be distributed to an institution similar to the Debtor to fund student scholarships.

The Attorney General initially took the same position with respect to the funds from the other two accounts ($717,223.09 in the second Schwab account and $83,260.50 in the Silicon Valley Bank account). However, the Debtor's records indicated that funds in these accounts had been used for more general purposes by the Debtor from time to time as directed by its Board of Directors. Although the funds were part of the Debtor's endowment, the restrictions on use were more general than the restrictions on the funds from account 5234. The Trustee pointed out to the Attorney General's office that, because all three accounts had been in the name of the Debtor only and the

account statements had contained no indication that they were subject to any restriction, a provision of the Bankruptcy Code might make restrictions unenforceable; the result would be that all funds in the three accounts would be available for payment of creditor claims. The Attorney General's office did not agree.

The Attorney General and the Trustee were in agreement that, setting aside how the accounts were held at the financial institutions, the Debtor's records and practices indicated a distinction between the funds in account 5234 and funds in the other two accounts: the funds derived from account ending 5234 were subject to more stringent restrictions than the funds derived from the other two accounts. Both parties recognized that, absent an agreement approved by the Bankruptcy court, litigation would be required to resolve the issues. They also recognized that litigation could result in a complete victory for one and complete loss for the other.

**III.   RESOLUTION WITH ATTORNEY GENERAL'S OFFICE**

The Trustee and the Attorney General's Office have reached an agreement whereby (a) the funds from account 5234 that derived from the more restricted donations will be distributed by the Trustee according to the instructions of the Attorney General's Office as provided by existing state law (i.e., to institutions similar to the Debtor for purposes similar to those specified by the original donors) and (b) the funds derived from the other two accounts would be retained by the Trustee as unrestricted funds available for payment of creditor claims. The agreement is subject to Bankruptcy Court approval.

If the agreement is approved by the Bankruptcy Court, the Trustee will distribute at the Attorney General's direction the sum of $1,191,119.01 as an administrative expense to the California College of the Arts located in San Francisco (Corp. #0100930), an institution that is similar to the Debtor, to be used for student scholarships, and the Trustee will retain for the general benefit of the estate and its creditors the $717,223.09 from the second Schwab account and the $83,260.50 derived from the Silicon Valley Bank account for the benefit of creditors.

**IV.   STANDARDS FOR APPROVAL OF A COMPROMISE**

Approval or rejection of a compromise is within the Court's discretion. In considering the approval of a proposed compromise, the Court must take into account the following factors:

1. The probability of success in the litigation;
2. The difficulty, if any, to be encountered in collection;
3. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it;
4. The paramount interest of creditors and proper deference to their reasonable views.

*In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).

### A. Probability of Success

Litigation of the issues the Trustee and the Attorney General's Office have discussed would involve significant risk. The public policy considerations that underlie the existing state law that directs funds held by a defunct non-profit institution to similar institutions for similar purposes are strong. However, the provision of the Bankruptcy Code (the "strong-arm" clause) is a powerful tool by which unrecorded or unperfected interests in an asset can be overcome for the benefit of creditors. In the Trustee's view, the tension between California law and federal law created a situation in which either the Trustee would prevail completely or the Attorney General would prevail completely; there does not appear to be any middle ground. The Trustee attributes a 50 percent to 60 percent probability of success on the merits.

### B. Difficulty in Collection

The funds are in the Trustee's possession at this time and collection is not an issue.

### C. Complexity, Expense, and Delay

In the Trustee's opinion, the issues are not particularly complex. He believes it is possible that, after filing a complaint for declaratory relief, the Trustee might achieve a resolution of the issues by bringing a summary judgment motion. A motion for summary judgment would be a relatively inexpensive endeavor (i.e., $20,000 in attorney fees or less). However, if summary judgment were denied, the Trustee predicts that significant discovery would be required and possibly protracted litigation at great expense to the estate. Litigation would cause a delay in the Trustee's administration of the bankruptcy estate.

/ / /

/ / /

### D. Paramount Interest of Creditors

The Trustee believes that the proposed agreement is in the best interest of creditors because it will add approximately $800,000 to the funds available for payment of creditor claims which would not exist if the Trustee were to litigate the disputes and lose.

## V. CONCLUSION AND PRAYER

WHEREFORE the Trustee prays for authority to enter into the agreement described above with the California Attorney General's Office regarding the use of funds.

DATED: December 16, 2024     RINCON LAW, LLP

By: */s/Charles P. Maher*
CHARLES P. MAHER
Counsel for PAUL MANSDORF,
Trustee in Bankruptcy