Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-672-5991
Facsimile No.: 415-680-1712
E-mail:  gkleiner@rinconlawllp.com
         cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE SAN FRANCISCO ART INSTITUTE,<br>    a California nonprofit<br>    public benefit corporation,<br><br>    Debtor. | Case No. 23-30250 HLB<br>Chapter 7<br>Hon. Hannah L. Blumenstiel<br><br>**DECLARATION OF PAUL MANSDORF IN SUPPORT OF AGREEMENT WITH CALIFORNIA ATTORNEY GENERAL**<br><br>[No Hearing Required Unless Requested] |

I, Paul Mansdorf, declare as follows:

1. The above Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on April 19, 2023. I was appointed interim trustee and became permanent Trustee upon conclusion of the Debtor's first meeting of creditors under Section 341 of the Bankruptcy Code.

2. In its Schedule B filed on April 19, 2023, the Debtor disclosed ownership of two investment accounts at Charles Schwab (accounts ending in 3651 and 5234) and a capital campaign checking account at Silicon Valley Bank (account ending 8530) (collectively, the "Accounts").

3. The Debtor described the Accounts as holding "restricted donor funds." However, the statements issued by Charles Schwab and Silicon Valley Bank indicated that the funds were not subject to restriction.

4. The statements issued by Charles Schwab on accounts 3651 and 5234 indicate that the accounts were held in the name of "San Francisco Art Institut [sic]" with the address of 800 Chestnut Street, San Francisco, California.

5. The statement issues by Silicon Valley Bank indicated that the account was in the name of "San Francisco Art Institute Checking Account" with the 800 Chestnut Street address.

6. At the beginning of the case, I took control of the funds in the three Accounts and placed them in segregated accounts.

7. As the Bankruptcy Court may recall, the estate was in desperate straits financially because of ongoing monthly obligations to secure the 800 Chestnut Street premises and preserve the Diego Rivera mural. There were no funds that were readily available to pay necessary expenses of preserving the estate.

8. In May 2023, I proposed by motion on notice to all parties-in-interest to borrow funds from one of the two accounts (account ending 3621). The Attorney General of the State of California filed an opposition to the motion, arguing that the funds were already property of the bankruptcy estate and could not be "borrowed" or used for any purpose other than the purpose specified by the donors.

9. The Court held a hearing on the motion and objection on June 15, 2023, and granted the motion for borrowing on an interim basis from the April 19, 2023, petition date through August 31, 2023, and set a further hearing on the motion for August 17, 2023. I am aware that my counsel communicated with counsel for the Attorney General's Office during the interim period. Because I received a tax refund in a significant amount before August 31, 2023, it was no longer necessary for me to continue to borrow from the funds from account ending 3621. My counsel appeared at the continued hearing on August 17, 2023. The Attorney General did not appear. The Court gave final approval for the borrowing from the petition date through August 31, 2023. I subsequently repaid the approved borrowing in full.

10. The Debtor had made the choice to hold the funds as it did in the three Accounts and, when the Debtor filed its Chapter 7 petition, the filing effectuated the choice the Debtor had made to hold the funds without reference to any restrictions or limitations.

11. I am aware that, in a non-bankruptcy setting, upon termination of a non-profit entity's activity, the entity would be required under state law to transfer the funds in its accounts to another qualified organization to be used for the original purpose of the donation, subject to objection or direction by the Attorney General.

12. After consultation with my counsel, I instructed counsel to prepare a complaint for declaratory relief against the Attorney General asserting a trustee's rights as a hypothetical judgment creditor who perfected a judgment lien on the funds in the Accounts and the rights of a hypothetical creditor who extended credit to the Debtor and obtained an execution against the Debtor that was returned unsatisfied on the petition date.

13. At my instruction, my counsel communicated with counsel within the Attorney General's Office regarding the issue and my belief that, under Sections 544(a)(1) and (2), I could avoid any interests in the Accounts and preserve the funds in the Accounts for the benefit of the bankruptcy estate and its creditors. My counsel provided a copy of the draft complaint to attorneys in the Attorney General's Office.

14. The complaint contained claims under Section 544 and a claim that, under the supremacy clause of the United States Constitution, the state laws were preempted insofar as they were inconsistent with Section 541(a), Sections 544(a)(1) and (2), and Section 726.

15. My counsel and counsel within the Attorney General's Office engaged in discussions over a period of months. Through these discussions I have been able reach an agreement by which the Attorney General's Office will not contest my right as Trustee to retain for the benefit of the estate the funds in Schwab account ending 3621 and in Silicon Valley Bank account ending 8506 on the condition that I obtain authority to distribute the balance of funds in Schwab account ending 5234 to an institution similar to the Debtor as directed by the Attorney General's office. The Attorney General has identified the institution as the California College of Arts in San Francisco, California. The distribution will be treated as an administrative expense.

16. I have consulted with my counsel regarding the probability of success in litigation with the Attorney General's office. Based on what I have taken from my discussions with my counsel, I have concluded that the risk to the estate of pursuing litigation is significant. I am

informed and believe that there would be no middle ground if I took the complaint to trial. In other words, I would enjoy either complete victory (meaning that the estate would be entitled to retain almost $2 million for creditors) or suffer a complete loss (meaning the estate would be entitled to retain none of the funds). Under these circumstances, the risk of litigation is too high. In addition, in litigation with the Attorney General's Office, I would expect the expense to the estate for attorney fees and possibly expert fees to be very high. Litigation would cause a significant delay in completing administration of the estate.

17. For the reasons described in the notice served on creditors, I believe the agreement is in the best interest of the bankruptcy estate and its creditors and ask the Court to approve it.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the _____ day of December 2024 in Berkeley, California.

Paul J. Mansdorf
Digitally signed by Paul J. Mansdorf
Date: 2024.12.13 14:58:13 -08'00'

PAUL MANSDORF