Gary M. Kaplan (State Bar No. 155530)
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
Email: gkaplan@fbm.com

Attorneys for Creditor
FMC PIER 2 SUBLESSOR, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>THE SAN FRANCISCO ART INSTITUTE, a California nonprofit public benefit corporation,<br><br>Debtor. | Case No.: 23-30250 HLB<br><br>Chapter 7<br><br>**FMC PIER 2 SUBLESSOR, LLC's RESPONSE TO CHAPTER 7 TRUSTEE'S OBJECTION TO PROOF OF CLAIM (#40)** |

## I. <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

FMC Pier 2 Sublessor, LLC ("FMC") hereby provides its Response to the Objection by Paul Mansdorf, Chapter 7 Trustee (the "Trustee") for The San Francisco Art Institute ("SFAI" or "Debtor"), to FMC's Proof of Claim, #40 (the "Claim").[1]  As further explained below, the Objection lacks merit including with respect to the following issues:

- The Objection erroneously seeks to "unwind" the prepetition setoff of FMC's payment obligation under the Note against SFAI's prepetition arrearages under the Sublease.

- The Objection wrongly seeks to disallow prepetition late charges and interest owed by SFAI pursuant to the Sublease.

- The Objection erroneously states that the Claim does not accrue postpetition interest, in contravention of controlling bankruptcy law providing for pendency interest on fully

---

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Claim.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

Case: 23-30250   Doc# 223   Filed: 01/03/25   Entered: 01/03/25 10:45:27   Page 1 of 9

secured claims, including those subject to setoff, as the Claim indisputably is.

- The Objection wrongly contends that post-termination, prepetition damages are excluded from the capped portion of the Claim, when it actually provides expressly to the contrary.

- The Objection incorrectly calculates the "cap" applicable to damages from termination of the Sublease pursuant to Bankruptcy Code Section 502(b)(6), including failing to include regular, periodic charges in accordance with controlling law (on which the Trustee relies).

- The Objection wrongly seeks to disallow portions of the Claim that are *not* subject to the Section 502(b)(6) cap under controlling law (including cases on which the Trustee relies).[2]

## II. DISCUSSION

### A. The Objection Erroneously Seeks To Unwind FMC's Prepetition Setoff Despite The Trustee Acknowledging Such Setoff Right

As discussed in the Claim (Addendum, p. 3, n. 8) FMC's obligations to SFAI under the Note are expressly subject to setoff against SFAI's arrearages under the Sublease, pursuant to Section 6 of the Note and Section 8.01(e) of the Sublease.[3]   Accordingly, as set forth in the

---

[2] The Objection also includes numerous assertions that are inaccurate and/or false. Because these are not germane to adjudicating the Objection, this Response does not attempt to address them. However, this should not be construed as FMC's lack of opposition to such allegations. For example, the Trustee's contention that the Sublease and Note were structured to financially benefit FMC to the detriment of SFAI (Objection, pp. 1-2) mischaracterizes the parties' dealings. In fact, the transaction was structured in the manner it was at SFAI's request to financially benefit it. FMC never needed to or desired to borrow funds from a prospective future tenant such as SFAI. Rather, SFAI, acting through its independent legal counsel, approved the entire structure (including the terms of the Sublease and the Note) in an effort to benefit from millions of dollars of federal historic tax credits that were only available on the improvements done to the Premises if they were undertaken and paid for by FMC (this is because federal tax law does not permit tenants such as SFAI to obtain tax credits on improvements but does allow landlords like FMC to receive tax credits on improvements paid for with their funds, even if the funds are borrowed from the tenant). Indeed, the improvements were the idea of SFAI and desired only by SFAI, and were improvements which SFAI could not fully pay for without the millions of dollars of historic tax credits that ultimately inured to SFAI's benefit by reason of FMC agreeing to borrow funds from SFAI and FMC undertaking and paying for the improvements with the borrowed funds. Had SFAI wished to not loan funds to FMC and instead simply undertaken and paid for all of the improvements on their own, FMC would have gladly agreed to an entirely different lease structure (one with differing rents and no loan) and permitted SFAI to undertake and pay for the improvements on their own without involving FMC. Again, the entire structure was done at the request of and solely for the benefit of SFAI (who was during the entire negotiation and documentation of the arrangement advised by its own legal and financial advisors).
[3] Section 6 of the Note provides in relevant part: "[FMC] may upon written notice to [SFAI] not later than sixty (60) days after the due date of any payment of this Note, offset amounts due as Base Rent, Service District Charges, Adjustment Rent and the Deposit, if such amounts are not paid by [SFAI] when due pursuant to the Sublease ('Unpaid Sublease Amounts') against accrued and unpaid interest and then against the then-principal balance under this Note." Section 8.01(e) of the Sublease likewise provides in pertinent part: "If and to the extent that [SFAI] does not make payment when due of all amounts of Base Rent, Adjustment Rent, Service District Charges, the Deposit and all other additional rent, then FMC may, without notice to [SFAI], offset such unpaid amounts under this Sublease against accrued and unpaid interest and the outstanding balance under the Project Cost Promissory Note."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

- 2 -

Case: 23-30250   Doc# 223   Filed: 01/03/25   Entered: 01/03/25 10:45:27   Page 2 of 9

Claim (Addendum, p. 3, ¶6), on January 5, 2023 (*prior to* the April 19, 2023 Petition Date), FMC provided notice to SFAI that the $387,500 interest payment owed by FMC on December 31, 2022 under the Note was being fully setoff against SFAI's prepetition, pretermination arrearages under the Sublease. The Trustee acknowledges such setoff right. *See* Objection, p. 6 ("FMC has the contractual and a common law right to offset the Annual Payments [under the Note] against sums due and owing under the [Sub]lease. . . .")

But, the Trustee seeks to effectively unwind that prepetition setoff, and instead apply it to the capped damages pursuant to Bankruptcy Code Section 502(b)(6) resulting from the termination of the Sublease. Objection, pp. 6-7. In doing so, the Trustee relies on *In re Connectix Corp.*, 372 B.R. 488, 494 (Bankr. N.D. Cal. 2007) and other cases holding that a landlord's ***unapplied*** security deposit or letter of credit should be applied to its capped lease termination claim under Section 502(b)(6). However, those cases have no applicability here, in view of the setoff being taken prepetition against pre-lease termination arrearages, rather than with respect to subsequent lease termination damages, subject to the Section 502(b)(6) cap. Indeed, the Trustee describes the *Connectix* case as follows: "***Following the petition date***, *the* ***landlord, in its claim, applied the draws it made on the letter of credit against the post-*** ***termination/pre-petition lease damages***, not to the capped claim." Objection, p. 6 (emphasis added). The Trustee does not offer any authority authorizing the unwinding of a prepetition setoff against pre-lease termination damages based on the cap on lease termination damages under Section 502(b)(6).

The Trustee's attempt to unwind such setoff and recalculate the Claim accordingly should be denied.

## B. The Objection Erroneously Contends, Contrary To Section 506, That The Claim Is Unsecured And Not Entitled To Accrual Of Postpetition Interest

As set forth in the Claim (Addendum, ¶16), Section 506(a)(1) of the Bankruptcy Code provides that a claim that is subject to setoff constitutes a secured claim to the extent of the amount of such setoff, stating in relevant part:

> An allowed claim of a creditor . . . that is subject to setoff under

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

- 3 -

Case: 23-30250   Doc# 223   Filed: 01/03/25   Entered: 01/03/25 10:45:27   Page 3 of 9

section 553 of [the Bankruptcy Code], is a secured claim . . . to the extent of the amount subject to setoff . . . and is an unsecured claim to the extent that . . . the amount so subject to setoff is less than the amount of such allowed claim."

As discussed above, the Claim is expressly subject to setoff against FMC's obligations to SFAI under the Note, and the Trustee acknowledges such setoff right. The Trustee further recognizes that the amount owed by FMC on the Note--*see* Objection, p. 5 ("On the Petition Date, FMC owed the Debtor $11,389,310 under the [N]ote")--exceeds the amount of the Claim—*see* Objection, p. 5 (recognizing FMC's asserted "claim in the amount of $3,064,029.95"). Thus, the Trustee acknowledges that the Claim (even if it were allowed in the full amount asserted) is fully secured pursuant to Bankruptcy Code Section 506(a).

Bankruptcy Code Section 506(b) provides that a fully secured claim is entitled to postpetition interest and fees, costs and other charges in accordance with the parties' agreement or applicable law, stating in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

As set forth in the Claim (Addendum, p. 3, n. 5), Section 16.06 of the Sublease provides for accrual of interest on amounts not timely paid by SFAI.[4] Thus, the Claim properly asserts that it is secured and seeks recovery of interest accruing postpetition, in an amount to be determined.

The Objection erroneously asserts that the Claim should be reclassified as unsecured and not be entitled to recovery of any postpetition interest, arguing (at pp. 7-8):

> FMC is not entitled to collect post lease termination interest as part of its Claim because it falls outside the allowed parameters of "rent reserved" as capped under Section 502(b)(6). *In re Kupfer*, 852 F.3d 853, 858 (9th Cir. 2016) (Adopting the position taken by the 8th Circuit BAP that interest that arose after the lease termination could not be included in the landlord's claim). *In re McSheridan*, 184 B.R. 91, 99-100 (B.A.P. 9th Cir.1995) (Setting out the allowed elements of what constitutes a claim under Section 502(b)(6)).

---

[4] Section 16.06 provides in relevant part: "Any amount owed by [SFAI] to [FMC] which is not paid when due shall bear interest at the lesser of (a) the 'prime' or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum or (b) the maximum rate of interest permitted by law."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S OBJ. TO FMC PROOF OF CLAIM #40

- 4 -

The cases cited by the Trustee do not support his position that Section 502(b)(6) overrides Section 506's mandate for the accrual of postpetition interest on fully secured claims. Indeed, the authorities on which the Trustee relies stand for a contrary proposition. In *Kupfer*, the Ninth Circuit held that damages which do not directly result from termination of a lease (such as interest accruing postpetition on lease arrearages) are ***not*** subject to the "cap" of Section 502(b)(6):

> The obligation to reimburse Creditors for fees and costs arose from covenants in the leases, but § 502(b)(6) does not cap damages resulting from every breach of contract—only those claims for "damages *resulting* from the *termination* of a lease." 11 U.S.C. § 502(b)(6) (emphases added)

*Id.*, 852 F.3d at 858-59.

The interest accruing postpetition on SFAI's arrearages under the Sublease (as set forth in the Claim) does ***not*** result from the termination of the Sublease, and thus, under *Kupfer,* is ***not*** subject to the Section 502(b)(6) cap on damages resulting from lease termination. The Trustee's reliance on *In re McSheridan* is likewise misplaced, as that case does not mention interest accrual.

In view of the foregoing, the Trustee's contention that the Claim is unsecured and not entitled to accrual of postpetition interest lacks merit and should be rejected.

**C.     The Objection Wrongly Seeks To Disallow Prepetition Late Fees And Interest**

As set forth therein (Addendum, pp. 2-3, ¶6), the Claim includes prepetition late charges pursuant to Section 9.0 of the Sublease,[5] and prepetition interest pursuant to Section 16.06 of the Sublease.[6] The Objection (at pp. 6-7) asserts that such amounts should be disallowed pursuant to Section 502(b)(6), even though they accrued prior to termination of the Sublease.

As discussed above, this contention is refuted by the Ninth Circuit's holding in *Kupfer* (on which the Trustee elsewhere relies) that damages which do not directly result from termination of a lease (such as late fees and interest accruing prepetition) are ***not*** subject to the "cap" of Section

---

[5] Section 9.0 states in relevant part: "if any installment of Base Rent or any other sums due from [SFAI] shall not be received by [FMC] within five (5) days of the date due, [SFAI] shall pay to [FMC] a late charge equal to four percent (4%) of the amount not paid."

[6] As noted above, Section 16.06 provides in relevant part: "Any amount owed by [SFAI] to [FMC] which is not paid when due shall bear interest at the lesser of (a) the 'prime' or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum or (b) the maximum rate of interest permitted by law."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

- 5 -

Case: 23-30250    Doc# 223    Filed: 01/03/25    Entered: 01/03/25 10:45:27    Page 5 of 9

502(b)(6).  The Trustee's effort to disallow prepetition late fees and interest sought by the Claim accordingly should be denied.

**D.**      **The Objection Wrongly Contends That Post-Termination, Prepetition Damages Are Excluded From The Capped Portion Of The Claim, While The Claim Expressly Provides To The Contrary**

The Objection contends (at p. 6) that the Claim fails to include rent and other obligations owed by SFAI (referred to as Post-Termination Sublease Obligations) from the Repossession Date through the Petition Date in the capped portion of the Claim subject to Bankruptcy Code Section 502(b)(6).  This is incorrect, as the Claim expressly states to the contrary:

> *[T]he total Post-Termination Sublease Obligations aggregate $16,400,472.76, comprised of (i) $260,440.57 from the Repossession Date through the Petition Date*, and (ii) $16,140,032.19 from the Petition Date through the Sublease Termination Date. . . . *The "capped" amount of the Post-Termination Sublease Obligations pursuant to Bankruptcy Code Section 502(b)(6)* is $2,460,070.91 (the "Capped Post-Termination Sublease Obligations"), which is *equal to 15% of the $16,400,472.76 uncapped figure*, which constitutes "rent reserved" under the Sublease following the Repossession Date.

Addendum, ¶¶ 9-10 (emphasis added).

**E.**      **The Objection Incorrectly Calculates The Amount Of The Claim Subject To The Cap On Lease Termination Damages Pursuant To Section 502(b)(6)**

In addition to ordinary rent, the Claim (Ex. 2) includes the following items in calculating the "rent reserved" for purposes of the Section 502(b)(6) cap: insurance,[7] service district charges ("SDC"[8]) and utilities.[9]  The Trustee argues that such amounts should be excluded in calculating the portion of the Claim subject to the Section 502(b)(6) cap.  *See* Objection, pp. 7-12.  This is contrary to the very authorities on which the Trustee relies.

---

[7] Section 10.04(b) of the Sublease provides in relevant part: "Within fifteen (15) days following [FMC's] request from time to time, [SFAI] shall pay to [FMC] [SFAI's] share of property insurance premiums incurred by [FMC] for property casualty insurance covering the Premises and [SFAI's] share of any deductible amounts incurred by [FMC] in connection with an insured casualty."

[8] Section 8.04 of the Sublease provides in relevant part: "[SFAI] shall pay to [FMC] on a monthly basis the service district charge (the 'Service District Charge') as designated by [FMC] to [SFAI] at the rate and on the basis paid by FMC to [the master landlord] as 'Minimum Rent' (as defined in the [Master Lease] allocable to the Premises. The amount of the Service District Charge shall be subject to adjustment from time to time in accordance with the terms of the NPS Lease.  The initial Service District Charge per square foot is set forth in Exhibit F-2 of the [Master] Lease."

[9] Section 8.02 of the Sublease provides in relevant part: "[SFAI] shall be responsible for and pay when due all charges for electricity, gas, water, sewer, and trash services related to the Premises."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA  94104
(415) 954-4400

- 6 -

As the Trustee recognizes (Objection, p. 11), in *In re McSheridan*, 184 B.R. 91, 99-100 (B.A.P. 9th Cir.1995), the BAP ruled that to constitute "rent reserved" under Section 502(b)(6), a charge must (i) be provided as the tenant's obligation in the lease, (ii) relate to the value of the property or lease thereon, and (iii) be a fixed, regular or periodic charge.  FMC submits that the insurance, SDC and utility charges included in the Claim's Section 502(b)(6) calculations are appropriate.  Indeed, in *McSheridan*, the court found that "triple net" charges that included similar "assessments . . .  insurance premiums and utilities" (*id.*, 184 B.R. at 94) could be deemed "rent reserved" and remanded the case to the bankruptcy case for such determination, finding:

> [S]ome of the charges may have been related to the value of the property or the lease. Furthermore, some of the charges might have been fixed and payable in a regular, periodic fashion like the regular rent. These determinations are for the bankruptcy court to make.

*Id.*, 184 B.R. at 100.

The Trustee's categorical exclusion of all utility, SDC and insurance charges from the "rent reserved" calculation of Section 502(b)(6) in the Claim was thus improper.

**F.      The Objection Wrongly Seeks To Disallow Portions Of The Claim That Are Not Subject To The Section 502(b)(6) Cap Under Controlling Law**

As detailed on Exhibit 3 attached thereto, the Claim includes $391,956.61 of "Sublease Termination Damages," including specified maintenance, repair and similar costs.[10]  As set forth in the Claim (Addendum, ¶¶ 12-13), such "collateral damages" are ***not*** included in the calculation of the Section 502(b)(6) cap, as they fall outside the applicable parameters, as established by the Ninth Circuit.  As the Ninth Circuit explained in *In re El Toro Materials Co., Inc.,* 504 F.3d 978, 979 (9th Cir. 2007) (footnote omitted) (a case on which the Objection relies, at pp. 8, 11):

> The structure of the cap-measured as a fraction of the remaining term-suggests that damages other than those based on a loss of future rental income are not subject to the cap. . . . . In contrast, collateral damages are likely to bear only a weak correlation to the amount of rent . . . .  Metering these collateral damages by the amount of the rent would be inconsistent with the goal of providing

---

[10] For example, as set forth in Exhibit 3, such maintenances costs include roof and gutter cleanings, elevator maintenance servicing, boiler/HVAC/other building systems maintenance, pest control, alarm monitoring service fees, and other routine maintenance costs. All of these costs were the responsibility of SFAI under the Sublease.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

- 7 -

compensation to each creditor in proportion with what it is owed. Landlords in future cases may have significant claims for both lost rental income and for breach of other provisions of the lease. To limit their recovery for collateral damages only to a portion of their lost rent would leave landlords in a materially worse position than other creditors. In contrast, capping rent claims but allowing uncapped claims for collateral damage to the rented premises will follow congressional intent by preventing a potentially overwhelming claim for lost rent from draining the estate, while putting landlords on equal footing with other creditors for their collateral claims.

As the Ninth Circuit later recognized in *In re Kupfer*, 852 F.3d 853, 858 (9th Cir. 2016) (a case on which the Objection relies, at pp. 3, 12) (citation and internal quotes omitted):

> *El Toro* established a test for determining which claims would be capped and which claims would be allowed in full:

> A simple test reveals whether the damages result from the rejection of the lease: Assuming all other conditions remain constant, would the landlord have the same claim against the tenant if the tenant were to assume the lease rather than rejecting it?

FMC submits that the subject $391,956.61 portion of the Claim is comprised of amounts for which SFAI would be liable even if had (hypothetically) assumed the Sublease, so that they should be excluded from the Section 502(b)(6) cap on damages resulting from Sublease termination (and FMC thus did not include such amounts in the calculation of the capped portion of its Claim). However, if the Court finds that such amounts should properly be included in the Section 502(b)(6) cap, then the amount of FMC's allowed Claim should be adjusted accordingly.

As set forth therein, the Claim (Addendum, ¶14) also includes a claim for attorneys' fees and costs incurred by FMC in enforcing the Sublease pursuant to Section 22.01 thereof, in amounts to be determined.[11] The Objection (at pp. 11-12) asserts that all attorneys' fees sought by FMC should be disallowed, based on the Trustee's selective quotation from *Kupfer*. In fact, in that case, the Ninth Circuit recognized that a landlord's entitlement to recover attorneys' fees in litigating matters *other than* lease termination:

> The obligation to reimburse Creditors for fees and costs arose from covenants in the leases, but § 502(b)(6) does not cap damages resulting from every breach of contract—only those claims for "damages resulting from the termination of a lease." 11 U.S.C. §

---

[11] Section 22.01 provides: "In the event either party is required to commence an action in a court of law to enforce its rights under this Sublease, the prevailing party shall be entitled to an award of reasonable attorneys' fees and costs."

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

- 8 -

Case: 23-30250   Doc# 223   Filed: 01/03/25   Entered: 01/03/25 10:45:27   Page 8 of 9

502(b)(6) (emphases added). Fees attributable to litigating Creditors' claims for future rent are capped, because such claims would not arise were the leases not terminated. But the arbitration award also included damages for past rent, which Creditors could claim independent of termination; the fees attributable to that portion of the litigation are not capped.

*Id.*, 852 F.3d at 858-59.

Thus, under the holding in *Kupfer*, the attorneys' fees and expenses incurred by FMC prior to and independent of the termination of the Sublease, are not capped. In addition, as discussed in part II.B. above, pursuant to Bankruptcy Code Section 506(b), FMC, as an oversecured creditor, is entitled to recover its attorneys' fees and expenses incurred postpetition pursuant to Section 22.01 of the Sublease (with all such amounts subject to the determination of this Court).

It is clear from the above that the Objection wrongly seeks to disallow or cap portions of the Claim under Section 502(b)(6).[12]

### III. CONCLUSION

Based on the foregoing, the Court should overrule the Objection and allow the Claim, consistent with this Response.

Dated: January 3, 2025

FARELLA BRAUN + MARTEL LLP

By: _____/s/ *Gary M. Kaplan*_____
Gary M. Kaplan

Attorneys for Creditor
FMC PIER 2 SUBLESSOR, LLC

25727\20053008.2

---

[12] The Objection (at pp. 8-9) further argues that the Claim incorrectly calculates the Section 502(b)(6) cap by using the "rent approach" rather than the "time approach," and asserts the latter has been "[t]he standard for over 30 years in cases in the Ninth Circuit." In fact, the case on which the Trustee primarily relies--*In re Connectix Corp.*, 372 B.R. 488 (Bankr. N.D. Cal. 2007)--recognizes "the equal division in the authority on [this and another] issue[]" and observes that the "'total rent' approach is sometimes referred to as the 'majority' view . . . ." and "The commentators are also divided . . . ." *Id.*, 372 B.R. at 391 (citations omitted). The *In re Heller Ehrman LLP*, 2011 WL 635224 (N.D. Cal. 2011) case, on which the Trustee also relies, likewise notes "courts and commentators are divided over this dispute whether the 15% cap applies to time or rent." FMC accordingly reserves the right to assert that the "rent approach" rather than the "time approach" should be utilized in calculating the cap under Section 502(b)(6).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, CA 94104
(415) 954-4400

FMC RESPONSE TO CH. 7 TRUSTEE'S
OBJ. TO FMC PROOF OF CLAIM #40

- 9 -