| | |
|---|---|
| 1 | Gregg S. Kleiner, State Bar No. 141311 |
| 2 | Charles P. Maher, State Bar No. 124748<br>RINCON LAW LLP |
| 3 | 268 Bush Street, Suite 3335<br>San Francisco, CA 94104 |
| 4 | Telephone No.: 415-840-6385 |
| 5 | Facsimile No.: 415-680-1712<br>E-mail: gkleiner@rinconlawllp.com |
| 6 | cmaher@rinconlawllp.com |
| 7 | Counsel for PAUL MANSDORF,<br>Trustee in Bankruptcy |

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE SAN FRANCISCO ART INSTITUTE,<br>   a California nonprofit<br>   public benefit corporation,<br><br>       Debtor. | Case No. 23-30250 HLB<br>Chapter 7<br>Hon. Hannah L. Blumenstiel<br><br>**MOTION FOR ORDER<br>AUTHORIZING COMPROMISE<br>CONCERNING CLAIM FILED<br>BY FMC PIER 2 SUBLESSOR, LLC**<br><br>[No Hearing Requested] |

      Paul Mansdorf, Chapter 7 Trustee ("**Trustee**") of the estate of The San Francisco Art Institute ("**Debtor**" or "**SFAI**"), files this motion for an order authorizing him to enter into an "Agreement to Resolve Claim Objection and Mutual Release" ("**Agreement**")[1] with FMC Pier 2 Sublessor, LLC ("**Claimant**") and Fort Mason Center, a California non-profit public benefit corporation ("**FMC**"). If approved by the Bankruptcy Court, the Agreement will resolve the secured claim filed by Claimant, result in FMC issuing a new unsecured note in favor of the Debtor's estate in the amount of $7 million, and the mutual release of certain claims between the Trustee, the Claimant, and FMC.

---

[1] The summary of the Agreement set forth in this Motion is for informational purposes and, in all instances, the terms in the Agreement shall control. A copy of the Agreement is attached as Exhibit A to the Declaration of Paul Mansdorf in Support of Motion for Order Authorizing Compromise Concerning Claim Filed by FMC Pier 2 Sublessor, LLC. A copy of the Agreement can be obtained from the Bankruptcy Court or from aworthing@rinconlawllp.com.

## I. BACKGROUND

In June 2016, the Debtor entered into a long-term sublease (the "**Sublease**") with Claimant for real property commonly referred to as Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**"). The Trustee understands that the Premises was intended to be a satellite campus for the Debtor, whose primary campus and administrative location was 800 Chestnut Street, San Francisco, California. The Sublease had an initial term through December 31, 2033.

Claimant sought to make substantial tenant improvements to the Premises at its cost in connection with the Sublease. Claimant asserts that in order for Debtor to benefit from millions of dollars of federal historic tax credits that were only available for improvements done to the Premises if they were undertaken and paid for by FMC, Claimant, FMC and the Debtor reached an agreement under which the Debtor agreed to lend funds to FMC on an unsecured basis, which Claimant then used to pay for the tenant improvements desired by SFAI. FMC's obligation to the Debtor for the loan to fund such tenant improvements was documented by that certain Unsecured Recourse Promissory Note dated June 6, 2016 (the "**Original Note**").

The Original Note was amended and restated pursuant to that certain Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020 in the face amount of $11,932,478.36 (the "**FMC Recourse Note**"). The Trustee is in possession of the original FMC Recourse Note. The FMC Recourse Note includes a payment schedule, pursuant to which FMC is to make specified annual debt service payments to the Debtor, subject to FMC's right to set off amounts owed by Debtor under the Sublease against the debt service payments owed by FMC.

Under the provisions of the FMC Recourse Note, interest accrues on the principal balance at the rate of 0.75% per annum, and FMC is obligated to make payments to Holder (previously the Debtor, and now the Trustee) in arrears each December 31, as follows: (i) $240,000 annually for 2017 through 2021; (ii) $387,500 annually for 2022, 2023 and 2024; and (iii) $553,000 for 2025 through 2058 (collectively, "**Annual Payments**"). The FMC Recourse Note provides that, in the event of a default by the Debtor under the Sublease, FMC may offset amounts owed by FMC under

the FMC Recourse Note (including the Annual Payments) against amounts the Debtor owes FMC under the provisions of the Sublease.

Based on Debtor's uncured defaults, the Sublease was terminated by the Claimant on December 30, 2022 (the "**Sublease Termination Date**"). Since the Sublease Termination Date, FMC has exercised two setoffs: for calendar years ending 2022 and 2023 (with the Trustee's agreement, and the Court's approval for calendar year ending 2023), each in the amount of $387,500. The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023. On June 23, 2023, Claimant timely filed claim number 40 in the Debtor's bankruptcy case in the liquidated amount of $3,064,029.95 ("**Claim**") based on Debtor's obligations under the Sublease. Among other things, the Claim asserts that it is secured by the FMC Recourse Note, based on the setoff rights described above. The liquidated amount of the Claim does not include interest, at 10% per annum, and over $100,000 in attorney's fees and costs that Claimant asserts it is also owed.

On December 4, 2024, the Trustee filed an objection to the Claim, asserting, among other things that the Claim was: (a) incorrectly calculated and overstated; (b) unsecured; and (c) that Claimant is not entitled to collect damages for post Sublease termination charges, such as interest, attorney fees, utilities, or late fees. Claimant filed opposition to the claim objection generally denying the Trustee's allegations. The Trustee filed a response.

The Court conducted an initial hearing on the objection to the Claim on January 30, 2025. At the hearing, the Court made certain preliminary rulings, including that certain components of the Claim were incorrectly calculated and that the 2022 Annual Payment was not properly applied by the Claimant. The Court also preliminarily held that the Claim was to be treated as a secured claim, that the Claimant was entitled to prepetition and postpetition interest and attorney fees, and post Sublease termination charges, including utilities were part of the Claim that would otherwise be capped under Section 502(b)(6) of the Bankruptcy Code (11 U.S.C. § 502(b)(6)). At the conclusion of the January 30, 2025 hearing, the Court continued the matter to March 13, 2025 to allow the Parties to evaluate and discuss the Court's preliminary rulings.

///

## II. SETTLEMENT

After the hearing, the parties conducted arms' length negotiations. Working from the Court's preliminary rulings on the objection to Claim and shared documents setting out each side's calculations of the Claim's components, the parties concluded that after reducing the sums sought under the Claim and applying the Annual Payments to accelerate the payoff of the Claim, the remaining balance due under the FMC Recourse Note will be $7,000,000 as of December 31, 2030. Subject to entry by the Court of an order authorizing the Trustee to enter into the Agreement ("**Approval Order**"), FMC will be deemed to have been granted relief from the automatic stay to accelerate the Annual Payments that it owes under the FMC Recourse Note to extinguish (via setoff) all sums due and owing by the Debtor under the Claim. Upon entry of the Approval Order, the Claim shall be deemed fully satisfied and entitled to no other distributions.

Following FMC's just described set-off of the Annual Payments, the remaining principal balance due and owing under the FMC Recourse Note shall be seven million dollars ($7,000,000) as of December 31, 2030. Following entry of the Approval Order, FMC and the Trustee shall be bound by the Amended FMC Recourse Note in the principal amount of $7 million ("**Amended FMC Note**") in substantially the form attached as Exhibit A to the Agreement.

The Amended FMC Note provides, in part, that: (a) the first payment will be due on December 31, 2030, in the amount of $110,315; and (b) annual payments of $553,000 shall be due and owing commencing December 31, 2031, until the Amended FMC Note is paid in full. The payments due under the Amended FMC Note are set forth in detail in the Amortization Table attached as Schedule 1 to the Amended FMC Note, which Amortization Table governs the timing and amount of the payments. Nothing in the Agreement or in the Amended FMC Note, shall prohibit or impair the Trustee's right to transfer, convey, or hypothecate the Amended FMC Note. The Agreement includes certain mutual releases of claims, but expressly excludes any release of FMC's obligations under the Amended FMC Note.

In entering into the Agreement and the Amended FMC Note, the Trustee took into account the preliminary rulings made by the Bankruptcy Court at the January 30, 2025 hearing, which included the Court's holding that the Claim was secured by the FMC Recourse Note and that

Claimant would be entitled to its contract rate of interest, 10% per annum (which, through paydown of the FMC Recourse Note through setoffs would have exceeded $830,000), Claimant's attorney fees (estimated to date to exceed $100,000), and other fees and costs that were allowed under the provisions of the Sublease. If the Agreement is approved, the accelerated payoff of the Claim through the setoffs against the FMC Recourse Note will speed up the Trustee's administration of the estate, as the Trustee will no longer have to wait for the annual setoffs to occur through 2030 to zero out the Claim. Further, the Trustee will be in a position to market for sale the Amended FMC Note with a face value of $7 million, which Amended FMC Note will not be subject to further setoff reductions or restrictions.

The Trustee seeks the following provision in the order approving the settlement described above: "This order is effective upon entry and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply."

### III. ANALYSIS

Approval or rejection of a compromise is within the Court's discretion. In considering the approval of a proposed compromise, the Court must take into account the following factors: 1. The probability of success in the litigation; 2. The difficulty, if any, to be encountered in collection; 3. The complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; 4. The paramount interest of creditors and proper deference to their reasonable views. *In re A&C Properties*, 784 F. 2d 1377, 1381 (9th Cir. 1986).

#### A. Complexity of the Litigation

During the preliminary hearing on the Trustee's objection to the Claim, the Court made clear that the issues surrounding the Claim and its interrelationship with the FMC Recourse Note were complicated. In its preliminary rulings, the Court: (A) agreed with the Trustee's position (i) that the time frame by which the Claimant could collect base rent and additional rent was limited under the cap set forth under 11 U.S.C. § 502(b)(6) to 15% of the remaining term of the Sublease (as opposed to the method by which the Claim was calculated by the Claimant, which sought 15% of the total amount of the remaining rent due under the Sublease), resulting in a material reduction of this part of the Claim, and (ii) that the Claimant incorrectly applied the 2022 annual payment, $387,500, to

the post Sublease Termination Date component of the Claim; (B) agreed with Claimant that (i) the Claim was secured by the FMC Recourse Note and entitled to the payment of pre- and post-petition interest, (ii) it was entitled to collect certain post Sublease termination expenses, including utilities that it sought under the Claim, and (iii) collect attorney fees.

Working with these preliminary rulings from the Court, the analysis shared between the parties after the hearing, the remaining open issues set forth in the Claim objection and the Claimant's response, it became clear to the Trustee that further litigation of the dispute would result in materially higher attorney fees on both sides and greatly delay the Trustee's ability to promptly administer the Debtor's estate. Absent the Agreement, the Claimant's setoff of the Annual Payments against the FMC Recourse Note would mean the Claim would not be satisfied by setoffs until 2030 at the earliest. In short, the Agreement is highly beneficial to the estate as it results in the immediate liquidation and payoff of the Claim by accelerating the Annual Payments, results in reduced litigation costs to the estate and provides a prompt and certain outcome to a dispute that did not have a clear or certain resolution.

### B. Probability of Success

As noted in the prior subsection, outcome of the Claim objection is at best muddled. On a preliminary basis, each party prevailed on important issues, many of which were worth hundreds of thousands of dollars. The initial hearing on the objection made it clear that each side was likely to prevail on several important issues and not on others. The Trustee places a probability of success in overcoming Claimant's arguments that it is entitled to interest and attorney's fees at under 50 percent and less than 25% in overcoming its arguments that utilities and other post Sublease termination expenses can be included as additional rent owed under Bankruptcy Code Section 502(b)(6).

### C. Difficulty in Collection

Because the estate is the beneficiary under the FMC Recourse Note, and because the estate is the obligor under the Claim, this factor is not relevant to the analysis.

/ / /

/ / /

/ / /

### D. Paramount Interest of Creditors

By entering into the Agreement, the Trustee has greatly accelerated the process by which the case can be administered and distributions made to creditors. Without the Agreement, the Claimant could continue to exercise its rights of setoff through 2030 delaying the case's administration. If the Agreement is approved, the Trustee will be in a much stronger position to market for sale the Amended FMC Note to interested buyers, a note that will be unencumbered by the Claim.

## IV. CONCLUSION AND PRAYER

WHEREFORE the Trustee prays for authority to enter into the Agreement described above with FMC Pier 2 Sublessor, LLC and Fort Mason Center.

DATED: March 7, 2025      RINCON LAW LLP

By: */s/ Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for PAUL MANSDORF,
Trustee in Bankruptcy