Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-840-6385
Facsimile No.: 415-680-1712
E-mail: gkleiner@rinconlawllp.com
cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE SAN FRANCISCO ART INSTITUTE, a California nonprofit public benefit corporation,<br><br>Debtor. | Case No. 23-30250 HLB<br>Chapter 7<br>Hon. Hannah L. Blumenstiel<br><br>**DECLARATION OF PAUL MANSDORF IN SUPPORT OF MOTION FOR ORDER AUTHORIZING COMPROMISE CONCERNING CLAIM FILED BY FMC PIER 2 SUBLESSOR, LLC**<br><br>[No Hearing Requested] |

I, Paul Mansdorf, declare as follows:

1. I am serving as Chapter 7 Trustee of the estate of the above Debtor. I file this declaration in support of my motion for authorization to enter into an "Agreement to Resolve Claim Objection and Mutual Release" ("**Agreement**") with FMC Pier 2 Sublessor, LLC ("**Claimant**") and Fort Mason Center, a California non-profit public benefit corporation ("**FMC**"). A copy of the Agreement is attached as **Exhibit A**.

2. If approved by the Bankruptcy Court, the Agreement will resolve the secured claim filed by Claimant, result in FMC issuing a new unsecured note in favor of the Debtor's estate in the amount of $7 million, and the mutual release of certain claims between the estate, the Claimant, and FMC.

3. I am informed and believe and on that basis state that: in June 2016, the Debtor entered into a long-term sublease (the "**Sublease**") with Claimant for real property commonly referred to as Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**"); and the Premises was intended to be a satellite campus for the Debtor, whose primary campus and administrative location was 800 Chestnut Street, San Francisco, California. The Sublease had an initial term through December 31, 2033.

4. I am informed by Claimant of the following: Claimant sought to make substantial tenant improvements to the Premises at its cost in connection with the Sublease; and Claimant asserts that in order for Debtor to benefit from millions of dollars of federal historic tax credits that were only available for improvements done to the Premises if they were undertaken and paid for by FMC, Claimant, FMC and the Debtor reached an agreement under which the Debtor agreed to lend funds to FMC on an unsecured basis, which Claimant then used to pay for the tenant improvements desired by SFAI.

5. FMC's obligation to the Debtor for the loan to fund such tenant improvements was documented by that certain Unsecured Recourse Promissory Note dated June 6, 2016 (the "**Original Note**"). The Original Note was amended and restated pursuant to that certain Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020 in the face amount of $11,932,478.36 (the "**FMC Recourse Note"**). I am in possession of the original FMC Recourse Note. The FMC Recourse Note includes a payment schedule, pursuant to which FMC is to make specified annual debt service payments to the Debtor, subject to FMC's right to set off amounts owed by Debtor under the Sublease against the debt service payments owed by FMC.

6. Under the provisions of the FMC Recourse Note, FMC is obligated to make payments to Holder (previously the Debtor, and now the estate) in arrears each December 31, as follows: (i) $240,000 annually for 2017 through 2021; (ii) $387,500 annually for 2022, 2023 and 2024; and (iii) $553,000 for 2025 through 2058 (collectively, "**Annual Payments**"). The FMC Recourse Note provides that, in the event of a default by the Debtor under the Sublease, FMC may offset amounts owed by FMC under the FMC Recourse Note (including the Annual Payments) against amounts the Debtor owes FMC under the provisions of the Sublease.


Case: 23-30250 Doc# 231-1 Filed: 03/07/25 Entered: 03/07/25 11:49:07 Page 2 of 17

7. I am informed and believe and on that basis state that the Debtor defaulted under the Sublease and it was terminated by the Claimant on December 30, 2022 (the "**Sublease Termination Date**"). I am informed and believe and on that basis state that since the Sublease Termination Date, FMC has exercised two setoffs: for calendar years ending 2022 and 2023 (with my agreement, and the Court's approval for calendar year ending 2023), each in the amount of $387,500.

8. The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023 and I was appointed Trustee of the Debtor's estate. On June 23, 2023, Claimant timely filed claim number 40 in the Debtor's bankruptcy case in the liquidated amount of $3,064,029.95 ("**Claim**") based on Debtor's alleged obligations under the Sublease. Among other things, the Claim asserts that it is secured by the FMC Recourse Note, based on the setoff rights described above. I am informed and believe and on that basis state that the liquidated amount of the Claim does not include interest, at 10% per annum, and over $100,000 in attorney's fees and costs that Claimant asserts it is also owed.

9. On December 4, 2024, I had my counsel file an objection to the Claim, asserting, among other things that the Claim was: (a) incorrectly calculated and overstated; (b) unsecured; and (c) that Claimant is not entitled to collect damages for post Sublease termination charges, such as interest, attorney fees, utilities, or late fees. Claimant filed opposition to the claim objection generally denying my allegations. A response was filed.

10. The Court conducted an initial hearing on the objection to the Claim on January 30, 2025. While I did not make a formal appearance at the hearing, I listened to the hearing over the phone. At the hearing, the Court made certain preliminary rulings, including that certain components of the Claim were incorrectly calculated and that the 2022 Annual Payment was not properly applied by the Claimant. The Court also preliminarily held that the Claim was to be treated as a secured claim, that the Claimant was entitled to prepetition and postpetition interest and attorney fees, and post Sublease termination charges, including utilities were part of the Claim that would otherwise be capped under Section 502(b)(6) of the Bankruptcy Code (11 U.S.C. § 502(b)(6)). At the conclusion of the January 30, 2025 hearing, the Court continued the matter to March 13, 2025.

11. After the hearing, through counsel, the parties conducted arms' length negotiations. Working from the Court's preliminary rulings on the objection to Claim and shared documents setting out each side's calculations of the Claim's components, the parties concluded that after reducing the sums sought under the Claim and applying the Annual Payments to accelerate the payoff of the Claim, the remaining balance due under the FMC Recourse Note will be $7,000,000 as of December 31, 2030.

12. Subject to entry by the Court of an order authorizing me to enter into the Agreement ("**Approval Order**"), FMC will be deemed to have been granted relief from the automatic stay to accelerate the Annual Payments that it owes under the FMC Recourse Note to extinguish (via setoff) all sums due and owing by the Debtor under the Claim. Upon entry of the Approval Order, the Claim shall be deemed fully satisfied and entitled to no other distributions.

13. Following FMC's just described set-off of the Annual Payments, the remaining principal balance due and owing under the FMC Recourse Note shall be seven million dollars ($7,000,000) as of December 31, 2030. Following entry of the Approval Order, FMC and the estate shall be bound by the Amended FMC Recourse Note in the principal amount of $7 million ("**Amended FMC Note**") in substantially the form attached as Exhibit A to the Agreement. Subject to notice and Court authorization, the Agreement provides, among other things, that I will be free to transfer, convey, or hypothecate the Amended FMC Note. The Agreement includes certain mutual releases of claims, but expressly excludes any release of FMC's obligations under the Amended FMC Note.

14. In entering into the Agreement and the Amended FMC Note, I took into account the preliminary rulings made by the Bankruptcy Court at the January 30, 2025 hearing, which included the Court's holding that the Claim was secured by the FMC Recourse Note and that Claimant would be entitled to its contract rate of interest, 10% per annum (which, through paydown of the FMC Recourse Note through setoffs would have exceeded $830,000), Claimant's attorney fees (estimated to date to exceed $100,000), and other fees and costs that were allowed under the provisions of the Sublease.

15. If the Agreement is approved, the accelerated payoff of the Claim through the setoffs against the FMC Recourse Note will speed up my administration of the estate, as I will no longer have to wait for the annual setoffs to occur through 2030 to zero out the Claim. Further, I will be in a position to market for sale the Amended FMC Note with a face value of $7 million, which Amended FMC Note will not be subject to further setoff reductions or restrictions.

16. During the preliminary hearing on my objection to the Claim, the Court made clear that the issues surrounding the Claim and its interrelationship with the FMC Recourse Note were complicated. In its preliminary rulings, the Court: (A) agreed with my position (i) that the time frame by which the Claimant could collect base rent and additional rent was limited under the cap set forth under 11 U.S.C. § 502(b)(6) to 15% of the remaining term of the Sublease (as opposed to the method by which the Claim was calculated by the Claimant, which sought 15% of the total amount of the remaining rent due under the Sublease), resulting in a material reduction of this part of the Claim, and (ii) that the Claimant incorrectly applied the 2022 annual payment, $387,500, to the post Sublease Termination Date component of the Claim; (B) agreed with Claimant that (i) the Claim was secured by the FMC Recourse Note and entitled to the payment of pre- and post-petition interest, (ii) it was entitled to collect certain post Sublease termination expenses, including utilities that it sought under the Claim, and (iii) collect attorney fees.

17. Working with these preliminary rulings from the Court, the analysis shared between the parties after the hearing, the remaining open issues set forth in the Claim objection and the Claimant's response, I concluded, in consultation with my professionals, that further litigation of the dispute would result in materially higher attorney fees on both sides and greatly delay my ability to promptly administer the Debtor's estate. Absent the Agreement, the Claimant's setoff of the Annual Payments against the FMC Recourse Note would mean the Claim would not be satisfied by setoffs until 2030 at the earliest. I believe that the Agreement is highly beneficial to the estate as it results in the immediate liquidation and payoff of the Claim by accelerating the Annual Payments, results in reduced litigation costs to the estate and provides a prompt and certain outcome to a dispute that did not have a clear or certain resolution.

/ / /



Case: 23-30250 Doc# 231-1 Filed: 03/07/25 Entered: 03/07/25 11:49:07 Page 5 of 17

18. At this juncture, I believe that the outcome of the Claim objection is at best muddled. On a preliminary basis, each party prevailed on important issues, many of which were worth hundreds of thousands of dollars. The initial hearing on the objection made it clear that each side was likely to prevail on several important issues and not on others. I place a probability of success in overcoming Claimant's arguments that it is entitled to interest and attorney's fees at under 50 percent and less than 25% in overcoming its arguments that utilities and other post Sublease termination expenses can be included as additional rent owed under Bankruptcy Code Section 502(b)(6).

19. Because the estate is the beneficiary under the FMC Recourse Note, and because the estate is the obligor under the Claim, the second factor of the *A&C Properties* test is not relevant.

20. I believe entering into the Agreement is in the paramount interest of the estate's creditors. If approved, the Agreement will greatly accelerate the process by which the case can be administered and distributions made to creditors. Without the Agreement, the Claimant could continue to exercise its rights of setoff through 2030 delaying the case's administration. If the Agreement is approved, I will be in a much stronger position to market for sale the Amended FMC Note to interested buyers, a note that will be unencumbered by the Claim.

Except for statements made upon information and belief, I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the ______ day of March 2025 in Berkeley, California.

Paul J. Mansdorf

Digitally signed by Paul J. Mansdorf
Date: 2025.03.07 08:15:01 -08'00'

Paul Mansdorf

# AGREEMENT TO RESOLVE CLAIM OBJECTION AND MUTUAL RELEASE

This Agreement to Resolve Claim Objection and Mutual Release ("**Agreement**") is entered into this 5th day of March 2025, by and between: (i) Paul Mansdorf, the duly appointed and acting Chapter 7 Trustee ("**Trustee**") of the estate of The San Francisco Art Institute (Case No. 23-30250 HLB) ("**Debtor**"), pending before the United States Bankruptcy Court, Northern District of California, San Francisco Division ("**Bankruptcy Court**"); (ii) FMC Pier 2 Sublessor LLC ("**Claimant**"); and (iii) Fort Mason Center, a California non-profit public benefit corporation ("**FMC**"). The Trustee, Claimant and FMC are each a "**Party**" and collectively the "**Parties**."

## RECITALS

A. The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023 ("**Petition Date**"). Following the Petition Date, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's estate.

B. On or about June 9, 2016, the Debtor entered into a long-term sublease (the "**Sublease")** with Claimant for real property described in the Sublease, located at Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**"). The Trustee understands that the Premises was intended to be a satellite campus for the Debtor, whose primary campus and administrative location was 800 Chestnut Street, San Francisco, California. The Sublease had an initial term through December 31, 2033.

C. Claimant sought to make substantial tenant improvements to the Premises at its cost in connection with the Sublease.

D. Claimant asserts that in order for Debtor to benefit from millions of dollars of federal historic tax credits that were only available for improvements done to the Premises if they were undertaken and paid for by FMC, Claimant, FMC and the Debtor reached an agreement under which the Debtor agreed to lend funds to FMC on an unsecured basis, which Claimant then used to pay for the tenant improvements desired by SFAI.

E. FMC's obligation to the Debtor for the loan to fund such tenant improvements was documented by that certain Unsecured Recourse Promissory Note dated June 6, 2016 (the "**Original Note**"). The Original Note was amended and restated pursuant to that certain Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020 in the face amount of $11,932,478.36 (the ""**FMC Recourse Note**"). The Trustee is in possession of the original (signed) FMC Recourse Note. The FMC Recourse Note includes a payment schedule, pursuant to which FMC is to make specified annual debt service payments to the Debtor, subject to FMC's right to setoff amounts owed by Debtor under the Sublease against the debt service payments owed by FMC, as further described below.

F. Under the provisions of the FMC Recourse Note, interest accrues on the principal balance at the rate of 0.75% per annum, and FMC was or is obligated to make payments to Holder (previously the Debtor, and now the Trustee) in arrears each December 31, as follows: (i) $240,000 annually for 2017 through 2021; (ii) $387,500 annually for 2022, 2023 and 2024; (iii) $553,000 for 2025 through 2058 (collectively, "**Annual Payments**"). The FMC Recourse Note provides that, in the event of a default by the Debtor under the Sublease, FMC may offset amounts owed by FMC under the FMC Recourse Note (including the Annual Payments) against amounts the Debtor owes FMC under the provisions of the Sublease.

G. Based on Debtor's uncured defaults, the Sublease was terminated by the Claimant on December 30, 2022 (the "**Sublease Termination Date**"). Since the Sublease Termination Date, FMC has exercised two setoffs: for calendar years ending 2022 and 2023 (with the Trustee's agreement, and the Court's approval for calendar year ending 2023), each in the amount of $387,500.

H. On June 23, 2023, Claimant timely filed claim number 40 in the Debtor's bankruptcy case in the liquidated amount of $3,064,029.95 ("**Claim**") based on Debtor's obligations under the Sublease. Among other things, the Claim asserts that it is secured by the FMC Recourse Note, based on the setoff rights noted above.

I. On December 4, 2024, the Trustee filed an objection to the Claim, asserting, among other things that the Claim was: (a) incorrectly calculated and overstated; (b) unsecured; and (c) that Claimant is not entitled to collect damages for post Sublease termination charges, such as interest, attorney fees, utilities, or late fees.

J. Claimant filed opposition to the claim objection generally denying the Trustee's allegations. The Trustee filed a response. The Court conducted an initial hearing on the objection to the Claim on January 30, 2025. At the hearing, the Court made certain preliminary rulings, including that certain components of the Claim were incorrectly calculated and that the 2022 Annual Payment was not properly applied by the Claimant. The Court also preliminarily held that the Claim was to be treated as a secured claim, and that the Claimant was entitled to prepetition and postpetition interest and attorney fees, and post Sublease termination charges, including utilities were part of the Claim that would otherwise be capped under Section 502(b)(6) of the Bankruptcy Code. At the conclusion of the January 30, 2025 hearing, the Court continued the matter to March 13, 2025 to allow the Parties to evaluate and discuss the Court's preliminary rulings.

K. As part of arms' length negotiations between the Parties after the January 30, 2025 hearing, and working from the Court's preliminary rulings on the objection to Claim, the Parties concluded that after reducing the sums sought under the Claim and applying the Annual Payments to accelerate the payoff of the Claim, the remaining balance due under the FMC Recourse Note will be $7,000,000 as of December 31, 2030, plus $110,315.

L. Pursuant to this Agreement the Parties seek to resolve the dispute concerning the Claim by accelerating the application of the Annual Payments to the Claim, after taking into account Claimant's attorneys' fees and additional interest Claimant would be entitled to receive, in accordance with the Court's January 30, 2025 preliminary rulings. This settlement requires a modification of the FMC Recourse Note.

## AGREEMENT

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1. The foregoing Recital paragraphs are incorporated by reference.

2. The effectiveness of this Agreement is subject to entry of an Order by the Bankruptcy Court approving it, and authorizing the Trustee to enter this Agreement (the "**Approval Order**"). The Trustee shall promptly seek approval of this Agreement, and Claimant and FMC shall be provided with a reasonable opportunity to review and comment on the draft motion or other request to the Court seeking such approval.

3. Subject to entry of the Approval Order, FMC is hereby granted relief from the automatic stay to accelerate the Annual Payments that it owes under the FMC Recourse Note to extinguish (via setoff) all sums due and owing by the Debtor under the Claim. Upon entry of the Approval Order, the Claim shall be deemed fully satisfied and entitled to no other distributions.

4. Following FMC's set-off of the Annual Payments as provided in the foregoing paragraph, the remaining principal balance due and owing under the FMC Recourse Note shall be seven million dollars ($7,000,000) as of December 31, 2030, after which date interest shall accrue at the rate of 0.75% per annum. Upon entry of the Approval Order, FMC and the Trustee shall be bound by the Amended FMC Recourse Note in the principal amount of $7 million ("**Amended FMC Note**") in substantially the form attached to this Agreement as **Exhibit A**. The Amended FMC Note provides, in part, that: (a) the first payment will be due on December 31, 2030, in the amount of $110,315; and (b) annual payments of $553,000 shall be due and owing commencing December 31, 2031, until the Amended FMC Note is paid in full. Payments due under the Amended FMC Note are set forth in detail in the Amortization Table attached as Schedule 1 to the Amended FMC Note, which Amortization Table governs the timing and amount of the payments.

5. Nothing in this Agreement or in the Amended FMC Note, shall prohibit or impair the Trustee's right to transfer, convey, or hypothecate the Amended FMC Note.

6. Upon entry of the Approval Order, and except for the Trustee's duties and obligations under this Agreement, Claimant and FMC, their successors, assignees, insurers, agents, attorneys and accountants and all persons and/or entities claiming by or through them, and each of them (the "**FMC Releasing Parties**"), release and forever discharge the Trustee, the estate, the Debtor, and their predecessors, successors, assignees, professionals, insurers, agents, employees, partners, shareholders, members, directors, officers, managers, attorneys, and accountants, and

each of them (the "**Trustee Released Parties**"), from any and all claims, debts, actions, demands, reckonings, accountings, liabilities, obligations, and causes of action, of whatever kind or nature, arising from prior to the Petition Date through the date of entry of the Approval Order, which they may have, hold, or may hold, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, asserted or not asserted, in law or equity, related to or arising out of the Claim and the Premises.

7. Upon entry of the Approval Order, and except for Claimant's and FMC's duties and obligations under this Agreement and the Amended FMC Note, the Trustee, the estate, the Debtor, and each of his or its successors, assignees, insurers, agents, accountants, attorneys, representatives, and all persons and/or entities claiming by or through them, and each of them (the "**Trustee Releasing Parties**"), release and forever discharge Claimant and FMC, and their respective predecessors, successors, assignees, professionals, insurers, agents, employees, attorneys, partners, shareholders, members, directors, officers, managers and accountants, and each of them and each of them (the "**FMC Released Parties**"), from any and all claims, debts, actions, demands, reckonings, accountings, liabilities, obligations, and causes of action, of whatever kind or nature, arising from prior to the Petition Date through the date of entry of the Approval Order, which they may have, hold, or may hold, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, asserted or not asserted, in law or equity, related to or arising out of the FMC Recourse Note, the Claim, the Premises and claims that could be asserted by the Trustee Releasing Parties against the FMC Released Parties under Chapter 5 of the Bankruptcy Code. For purposes of clarity and notwithstanding anything in this Agreement to the contrary, this Agreement does not and shall not alter any obligations of FMC under the Amended FMC Note.

8. Upon entry of the Approval Order, except with respect to enforcing this Agreement and the Amended FMC Note, the Trustee Releasing Parties and the FMC Releasing Parties forever waive any and all benefits and rights he, she, it, or they may have, now hold, or in the future may have or hold that concern, arise from, or relate to the matters released herein by reason of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

9. The Trustee Releasing Parties and the FMC Releasing Parties understand that if the facts giving rise to this Agreement are found later to be different from or other than the facts now believed by him, her, it, or them to be true, or if new facts come to his, her, its, or their attention, each and all of them accept and assume the risk of such possible differences in the facts and agree that the releases above shall be and remain effective, notwithstanding such new or different facts.

10. The Parties represent and warrant that they have not assigned, transferred or otherwise encumbered any of the claims, demands, causes of action, or interests herein settled, released or transferred and that they are fully entitled to enter into this Agreement.

11. Each Party shall bear his, her, or its own attorneys' fees and costs in connection with the negotiation of this Agreement and obtaining Bankruptcy Court approval to allow the Trustee to enter into this Agreement.

12. The Parties make no representations or warranties regarding the legal effect or tax consequences of this Agreement, or of any such filing or reporting by the Parties, or any of them. Each Party acknowledges that he, she, or it has not received or relied upon any tax advice from any other Party.

13. The Parties warrant and represent that they have read and understand this Agreement, that they have had a free and unfettered opportunity to consult individually and jointly with an independent attorney of their choosing regarding this Agreement and its effect, and that they execute this Agreement voluntarily and without duress or undue influence.

14. Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because it was drafted in full or in part by such Party or its attorney. The Agreement shall be accordingly construed equally against all Parties. In this regard, the Parties waive any and all benefits and rights he, she, it, or they may have under California Civil Code Section 1654, which provides as follows:

> IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

15. This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the matters described herein, and any and all prior and contemporaneous agreements, representations, discussions, negotiations, commitments, and understandings are merged into and superseded by this Agreement. No representations, oral or otherwise, express or implied, other than those written and contained herein have been made or relied upon by any of the Parties.

16. The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, including, but not limited to the interpretation and enforcement of this Agreement, and, if necessary to effect the Bankruptcy Court's jurisdiction, the Parties, by their signature to this Agreement, hereby stipulate to such jurisdiction.

17. The Agreement may not be modified except by a writing signed by all Parties, with specific written reference to this Agreement, and with approval of the Bankruptcy Court; provided, however, Bankruptcy Court approval is not required if the modification is ministerial or does not negatively impact the estate or its creditors. This paragraph shall in no way limit the Parties from entering into any agreements they deem necessary to consummate this Agreement.

18. This Agreement will be binding upon and inure to the benefit of each respective Party, and their respective successors and permitted assigns.

19. This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws.

20. This Agreement may be executed in one or more counterparts for the convenience of the Parties hereto, all of which together shall constitute one and the same instrument. Facsimile signatures, or signatures transferred in pdf format, or e-signatures shall be treated as original signatures for all purposes.

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement.

DATED: March ____, 2024

BANKRUPTCY ESTATE OF THE SAN FRANCISCO ART INSTITUTE, Case No. 23-30250 HLB

Paul J. Mansdorf Digitally signed by Paul J. Mansdorf Date: 2025.03.05 16:21:24 -08'00'

By: ______________________________
PAUL MANSDORF,
Trustee in Bankruptcy

DATED: March 5, 2025

FMC PIER 2 SUBLESSOR LLC

By: ______________________________
MIKE BUHLER,
President

DATED: March 5, 2025

FORT MASON CENTER

By: ______________________________
MIKE BUHLER,
President and CEO



EXHIBIT A

**APPROVED AS TO FORM AND CONTENT:**

DATED: March _____, 2025 FARELLA BRAUN + MARTEL LLP

By: /s Gary M. Kaplan
GARY M. KAPLAN,
Attorney for Claimant, FMC Pier 2 Sublessor LLC and Fort Mason Center, a California non-profit public benefit corporation

DATED: March 5, 2025 RINCON LAW LLP

By: */s/ Gregg S. Kleiner*
GREGG S. KLEINER
Counsel for PAUL MANSDORF, Trustee in Bankruptcy

**SECOND AMENDED AND RESTATED**
**UNSECURED RECOURSE PROMISSORY NOTE**

March 5, 2025

$7,000,000.00

THIS NOTE AMENDS AND RESTATES IN ITS ENTIRETY THAT CERTAIN AMENDED AND RESTATED UNSECURED RECOURSE PROMISSORY NOTE DATED OCTOBER 30, 2020 IN THE ORIGINAL PRINCIPAL AMOUNT OF $11,932,478.36 MADE BY MAKER IN FAVOR OF THE SAN FRANCISCO ART INSTITUTE.

FOR VALUE RECEIVED, FORT MASON CENTER, a California nonprofit public benefit corporation ("Maker"), promises to pay to THE BANKRUPTCY ESTATE OF THE SAN FRANCISCO ART INSTITUTE, a California nonprofit public benefit corporation, or such party's designee, Paul Mansdorf, Chapter 7 Trustee ("Holder"), in lawful money of the United States, the lesser of the principal sum of Seven Million Dollars ($7,000,000), plus interest on the outstanding principal balance hereof, as set forth below.

1. **Interest.** Interest on the principal sum of this Note shall accrue at the rate of seventy-five hundredths percent (.75%) per annum based on a 365 day year and the actual number of days elapsed, beginning January 1, 2031.

2. **Payments**. Interest and principal shall be due annually in accordance with the payment schedule attached hereto as **Schedule 1**.

3. **Default Interest: Late Charge**. Upon the occurrence of an Event of Default (as defined below), the unpaid principal balance of this Note, together with all interest accrued but unpaid on the date of the Event of Default, shall bear interest at the rate of the "prime" or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum (the "Default Rate") commencing on the date the payment was due and continuing until the delinquent payment in full is received by Holder. Maker acknowledges that late payment will cause Holder to incur costs and other damages not otherwise provided for in this Note. Therefore, if any payment is not received by Holder within ten (10) days after written notice from Holder that a payment has not been timely made a late charge shall be charged and is immediately due and payable. The late charge shall be an amount equal to six percent (6%) of the overdue installment. Acceptance of any late payment or late charge will not constitute a waiver of the default with respect to the overdue amount and shall not prevent Holder from exercising any of Holder's other rights and remedies under this Note.

4. **Prepayment**. This Note may be prepaid in whole or in part, at any time, without penalty or premium, on any date that a payment of interest is due hereunder, upon thirty (30) days prior written notice to Holder.

5. **Security.** This Note is recourse to the Maker but otherwise unsecured and the Holder shall have no direct or indirect lien on any assets of the Maker by reason of this Note.



EXHIBIT A
EXHIBIT A

6. **Application of Payments**. All payments received by Holder shall be applied first to late payment charges, second to accrued interest, then to other charges due with respect to this Note, and then to the unpaid principal balance.

7. **Default and Remedies**. The unpaid principal balance of this Note, together with all accrued interest thereon, shall, at the option of Holder, become immediately due and payable, without demand or notice, upon the occurrence of any of the following events (each an "Event of Default"):

(a) the failure of Maker to pay when due any interest, principal, or other amount payable under this Note, if such failure to pay continues for a period of ten days after written notice from Holder;

(b) Maker (i) becoming the subject of any order for relief in a proceeding under any Debtor Relief Law (as defined below); (ii) becoming unable to pay, or admitting in writing Maker's inability to pay, Maker's debts as they mature; (iii) making an assignment for the benefit of creditors; (iv) applying for or consenting to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or for all or any part of Maker's property or assets; (v) instituting or consenting to any proceeding under any Debtor Relief Law with respect to or all or any part of the Maker's property or assets, or the institution of any similar case or proceeding without the consent of the Maker if such case or proceeding continues undismissed or unstayed for 60 calendar days;

(c) the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or either of them, or for all or any part of Maker's property or assets without the application or consent of Maker, if such appointment continues undischarged or unstayed for 60 calendar days;

(d) the issuance or levy of any judgment, writ, warrant of attachment or execution or similar process against all or any material part of the property or assets of Maker if such process is not released, vacated or fully bonded within 60 calendar days after its issue or levy; and

(e) the taking of any action by Maker to initiate any of the actions described in paragraphs 7(c) or 7(d) of this Section.

8. As used in this Note, the term "Debtor Relief Law" shall mean the Bankruptcy Code of the United States of America, as amended, or any other similar debtor relief law affecting the rights of creditors generally.

9. **Maximum Legal Rate of Interest**. All agreements between Maker and Holder, whether now existing or hereafter arising, are hereby limited so that in no event shall the interest charged hereunder or agreed to be paid to Holder exceed the maximum amount permissible under applicable law. If Holder ever receives interest or anything deemed interest in excess of the maximum lawful amount, an amount equal to the excessive interest shall be applied to the



EXHIBIT A
EXHIBIT A

Case: 23-30250 Doc# 231-1 Filed: 03/07/25 Entered: 03/07/25 11:49:07 Page 15 of 17

reduction of the principal, and if it exceeds the unpaid balance of principal hereof, such excess shall be refunded to Maker. If interest otherwise payable to Holder would exceed the maximum lawful amount, the interest payable shall be reduced to the maximum amount permitted under applicable law. This paragraph shall control all agreements between Maker and Holder in connection with the indebtedness evidenced hereby.

10. **Miscellaneous**. This Note may be modified only by a written agreement executed by Maker and Holder. This Note shall be governed by California law. The terms of this Note shall inure to the benefit of and bind Maker and Holder and their respective heirs, legal representatives and successors and assigns. If this Note is destroyed, lost or stolen, Maker will deliver a new note to Holder on the same terms and conditions as this Note with a notation of the unpaid principal and accrued and unpaid interest in substitution of the prior Note. Holder shall furnish to Maker reasonable evidence that the Note was destroyed, lost or stolen and any security or indemnity that may be reasonably required by Maker in connection with the replacement of this Note. Maker's execution, delivery and performance of this Note have been duly authorized by all necessary action on the part of Maker.

IN WITNESS WHEREOF, Maker has executed this Note as of the date first above written.

MAKER

FORT MASON CENTER,
a California nonprofit public benefit corporation

By: ____________________________________
Mike Buhler, President and CEO



EXHIBIT A
EXHIBIT A

# SCHEDULE 1

# PAYMENT SCHEDULE

| Annual Interest at 0.75% | 0.0075 | | | | |
|---|---|---|---|---|---|
| Year | Balance Beggining of the Year | Annual Interest | Balance Prior To Annual Payment | FMC Annual Payment 12/31 | Balance End of Year |
| 2025 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2026 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2027 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2028 | 7,000,000.00 | | 7,000,000.00 | | 7,000,000.00 |
| 2029 | 7,000,000.00 | | 7,000,000.00 | | 7,000,000.00 |
| 2030 | 7,000,000.00 | | 7,000,000.00 | (110,315.00) | 6,889,685.00 |
| 2031 | 6,889,685.00 | 51,672.64 | 6,941,357.64 | (553,000.00) | 6,388,357.64 |
| 2032 | 6,388,357.64 | 47,912.68 | 6,436,270.32 | (553,000.00) | 5,883,270.32 |
| 2033 | 5,883,270.32 | 44,124.53 | 5,927,394.85 | (553,000.00) | 5,374,394.85 |
| 2034 | 5,374,394.85 | 40,307.96 | 5,414,702.81 | (553,000.00) | 4,861,702.81 |
| 2035 | 4,861,702.81 | 36,462.77 | 4,898,165.58 | (553,000.00) | 4,345,165.58 |
| 2036 | 4,345,165.58 | 32,588.74 | 4,377,754.32 | (553,000.00) | 3,824,754.32 |
| 2037 | 3,824,754.32 | 28,685.66 | 3,853,439.98 | (553,000.00) | 3,300,439.98 |
| 2038 | 3,300,439.98 | 24,753.30 | 3,325,193.28 | (553,000.00) | 2,772,193.28 |
| 2039 | 2,772,193.28 | 20,791.45 | 2,792,984.73 | (553,000.00) | 2,239,984.73 |
| 2040 | 2,239,984.73 | 16,799.89 | 2,256,784.61 | (553,000.00) | 1,703,784.61 |
| 2041 | 1,703,784.61 | 12,778.38 | 1,716,563.00 | (553,000.00) | 1,163,563.00 |
| 2042 | 1,163,563.00 | 8,726.72 | 1,172,289.72 | (553,000.00) | 619,289.72 |
| 2043 | 619,289.72 | 4,644.67 | 623,934.39 | (553,000.00) | 70,934.39 |
| 2044 | 70,934.39 | 532.01 | 71,466.40 | (71,466.40) | 0.00 |
| | | 370,249.39 | | (7,370,781.40) | |



EXHIBIT A

EXHIBIT A