Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-840-6385
Facsimile No.: 415-680-1712
E-mail:     gkleiner@rinconlawllp.com
            cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

THE SAN FRANCISCO ART INSTITUTE,
    a California nonprofit
    public benefit corporation,

        Debtor.

Case No. 23-30250 HLB
Chapter 7
Hon. Hannah L. Blumenstiel

**MOTION FOR AUTHORITY TO SELL ESTATE'S RIGHT, TITLE AND INTEREST IN AND TO A PROMISSORY NOTE**

[No Hearing Required Unless Requested]

Paul Mansdorf, Chapter 7 Trustee ("**Trustee**") of the estate of The San Francisco Art Institute ("**Debtor**" or "**SFAI**"), files this motion for an order authorizing him to enter into a "Purchase and Sale Agreement – Fort Mason Center Promissory Note" ("**Agreement**")[1] with Fort Mason Center, a California non-profit public benefit corporation ("**FMC**" or "**Buyer**"). The Agreement concerns the estate's sale of its right, title and interest in and to a promissory note dated March 5, 2025 in the original principal amount of $7 million ("**Amended FMC Note**"); by which the Buyer has agreed to pay to the Trustee the sum of $780,000, in exchange for the Amended FMC Note. A copy of the

---

[1] The summary of the Agreement set forth in this Motion is for informational purposes and, in all instances, the terms in the Agreement shall control. A copy of the Agreement is attached as Exhibit 1 to the Declaration of Paul Mansdorf in Support of Motion for Authority to Sell Estate's Right, Title and Interest in and to a Promissory Note. A copy of the Agreement can be obtained from the Bankruptcy Court or from aworthing@rinconlawllp.com.

1

Amended FMC Note is attached to the Agreement. The sale of the Amended FMC Note to the Buyer is subject to higher and better offer, as set forth below.

I.     BACKGROUND

In June 2016, the Debtor entered into a long-term sublease (the "Sublease") with FMC Pier 2 Sublessor, LLC ("**FMCP2**") for real property commonly referred to as Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**"). The Trustee understands that the holder of the master lease for the Premises is the Buyer.

The Sublease required substantial tenant improvements that FMC was not in a position to advance but was willing to reimburse the Debtor over time if the Debtor paid for the improvements upfront. To pay for the improvements, FMC entered into a promissory note in favor of the Debtor dated June 6, 2016 (the "**Original Note**"). The Original Note was amended and restated pursuant to that certain Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020 in the face amount of $11,932,478.36 (the "**FMC Recourse Note**"). The Trustee is in possession of the original FMC Recourse Note. The FMC Recourse Note includes a payment schedule, pursuant to which FMC was to make specified annual debt service payments to the Debtor, subject to FMC's right to set off amounts owed by Debtor under the Sublease against the debt service payments owed by FMC.

FMCP2 filed claim number 40 in the Debtor's bankruptcy case in the liquidated amount of $3,064,029.95 ("**Claim**") based on Debtor's obligations under the Sublease. Among other things, the Claim asserted that it is secured by the FMC Recourse Note, based on the setoff rights described in the prior paragraph. The liquidated amount of the Claim did not include interest, at 10% per annum, and over $100,000 in attorney's fees and costs that FMCP2 asserts it was owed.

On April 2, 2025, the Bankruptcy Court entered its order approving a settlement between the Trustee and the estate on the one hand and FMCP2 and FMC on the other. The settlement resulted in the complete satisfaction of the Claim in full through FMC's accelerated setoffs against annual payments called for under the FMC Recourse Note, and FMC entering into a new unsecured recourse unsecured promissory note, the Amended FMC Note, in the principal amount of Seven

Million Dollars ($7,000,000). The Trustee is in possession of the original (signed) Amended FMC Note.

The Amended FMC Note provides, in part, that: (a) the first payment will be due on December 31, 2030, in the amount of $110,315; and (b) annual payments of $553,000 shall be due and owing commencing December 31, 2031, until the Amended FMC Note is paid in full. The payments due under the Amended FMC Note are set forth in detail in the Amortization Table attached as Schedule 1 to the Amended FMC Note, which Amortization Table governs the timing and amount of the payments.

**II.    AGREEMENT**

Prior to entering into the Agreement, the Trustee solicited offers to purchase the Amended FMC Note from multiple parties. The Trustee received three offers. The offer from the Buyer was, in the Trustee's opinion, the highest and best offer. Under the provisions of the Agreement, subject to higher and better offer, notice to creditors, and Bankruptcy Court approval, the Trustee has agreed to sell to the Buyer the estate's right, title and interest in and to the Amended FMC Note for $780,000 in cash. Following the Bankruptcy Court's approval of the sale of the Amended FMC Note, the Trustee's sole deliverable to the Buyer (or any overbidder) is the original (signed) Amended FMC Note.

The Agreement provides, among other things that: (i) Buyer acknowledges and agrees that the sale of the Amended FMC Note is made without any warranty or representation of any kind by the Trustee or the estate, either express or implied, with respect to any aspect, portion or component of the Amended FMC Note; (ii) Buyer agrees and acknowledges that it has made and completed its evaluation, inquiries, and investigations concerning its purchase which Buyer deemed necessary to satisfy itself as to all aspects of Amended FMC Note; (iii) Buyer further agrees and acknowledges that, in purchasing the Amended FMC Note, Buyer has relied entirely on its own investigation, examination and inspection of the Amended FMC Note and not upon any representation or warranty of the Trustee, the estate, or any agent or representative of the Trustee; and (iv) Buyer agrees that, in consummating the purchase of the Amended FMC Note pursuant to the Agreement, Buyer shall acquire the Amended FMC Note in its "as is, where is" and with all faults condition, solely in

reliance on Buyer's own investigation, examination, inspection, analysis and evaluation of the Amended FMC Note.

### III. SALE SUBJECT TO OVERBID

The sale of the Amended FMC Note is subject to overbid. The deadline to submit and overbid is May 19, 2025, 5:00 pm PDT ("**Bid Deadline**"). In the event that there is an overbid for the Amended FMC Note, the overbid auction will take place telephonically within five (5) business days after the Bid Deadline.

The following terms shall apply to all parties seeking to make an overbid for the Amended FMC Note in order for its bid to be deemed a "**Qualified Bid**."

1. On or before the Bid Deadline -May 19, 2025, 5:00 pm PDT bidders must:

    (i) provide evidence (e.g., current financial institution statements) to the Trustee at paul@mansdorftrustee.com (with a copy to Trustee's counsel – gkleiner@rinconlawllp.com and cmaher@rinconlawllp.com), that they can close and pay the purchase price in cash;

    (ii) deliver to the Trustee, a $100,000 good faith deposit *by wire transfer*;[2]

    (iii) agree to be bound by all of the terms of the Agreement (except the amount of the purchase price, which amount will be the amount of a party's highest offer);

    (iv) agree that their bids may not contain any contingencies, whatsoever, including, but not limited to, any loan contingencies and inspection contingencies; and

    (v) submit an opening bid in the minimum amount of $830,000.

2. If there are one or more Qualified Bids for the Amended FMC Note:

    (i) the Trustee will conduct a telephonic auction within five (5) business days after the Bid Deadline among the Buyer and Qualified Bidder(s). All

---

[2] Parties interested in submitting an overbid must contact the undersigned - gkleiner@rinconlawllp.com or Alissa Worthing – aworthing@rinconlawllp.com for wire instructions.

qualified overbidders, the Buyer, and their respective agents will be provided a telephone dial-in number in advance of the telephonic auction;

(ii) the minimum bids over $830,000 will be in an amount set at the Trustee's reasonable discretion, but not less than $5,000.00; and

(iii) the successful bidder for the Amended FMC Note must tender the entire purchase price to the Trustee, less a credit for any deposit held by the Trustee, not later than ten (10) days after the Approval Order is entered. ***If the purchaser of the Amended FMC Note, including FMC, fails to timely deliver the entire purchaser price for the Amended FMC Note, it will forfeit its deposit to the Trustee for all purposes.*** In the event of such a default, the Trustee will, without further order of the Court, be free to sell the FMC Note to another party at the back-up bidder's last highest offer.

3. Prior to the start of the auction the Trustee will (i) identify any party or parties that have made a Qualified Bid for the Amended FMC Note and (ii) announce the auction rules, and may amend, modify or alter any bid procedure, rule or provision as the Trustee deems necessary, just or appropriate. The Trustee reserves the right, in his sole and absolute discretion, to refuse bids that do not, in his sole opinion, conform with the terms of the sale, to modify the terms and conditions of the sale or auction, to continue the sale from time to time. Only Qualified Bid participants may attend the overbid auction. All disputes with regard to the sale or auction will be resolved by the U.S. Bankruptcy Court. At the conclusion of the auction, the Trustee, in his sole discretion, will determine the highest and best bid and make a recommendation to the Bankruptcy Court to approve the sale of the Amended FMC Note.

## IV. LEGAL AUTHORITY

The Court may authorize the Trustee to sell property of the estate on adequate notice under 11 U.S.C. § 363(b). The proper standard for a court to use when considering a proposed motion to sell assets is the business judgment test. *Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F. 2d 1063 (2nd Cir. 1983). It is this standard that has been adopted by the vast majority of Courts. *In re Gulf States Steel, Inc. of Ala.*, 285 B.R. 497, 515 (Bankr. N.D. Ala. 2002).

> Under this standard, the Trustee has the burden to establish sound business reasons for the terms of a proposed sale. Factors for the Court to consider in whether to approve the sale include: (1) any improper or bad faith motive, (2) price is fair and the negotiations or bidding occurred at arms-length, (3) adequate procedure, including proper exposure to the market and accurate and reasonable notice to all parties in interest. The Trustee is responsible for the administration of the estate and his or her judgment on the sale and the procedure for the sale is entitled to respect and deference from the Court, so long as the burden of giving sound business reasons is met. *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998) (noting discretion accorded to trustee with regard to sale of assets).

285 B.R. at 514.

The transaction must make good business sense and the creditors as a whole should benefit. *In re UAL Corp.*, 443 F. 3d 565, 571 (7th Cir. 2006).

> The "business judgment" test, as it is sometimes called, differs from the business judgment rule under corporate law. 3 Collier in Bankruptcy ¶ 363.02[4] at 363-18 (Alan and Resnick and Henry J. Sommer, eds., 16th ed. 2012). The bankruptcy court reviews the trustee's business judgment "to determine independently whether the judgment is a reasonable one." Id. At the same time, the court "should not substitute its judgment for the trustee's." Id. A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to "great judicial deference" as long as a sound business reason is given. In re State Park Bldg. Grp. Ltd., 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005); In re Murphy, 28 B.R. 1, 5 (Bankr. D. Me. 2002); In re Gulf States Steel, Inc. of Ala., 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

*In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012).

In analyzing the proposed sale, the Court must consider whether the sale is in the best interests of the estate, based on the facts and history of the case. *In re America West Airlines*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994) (citing *In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983)). The courts examined the "business justification" for the proposed sale. *In re Wilde Horses Enterprises, Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991) (citing *In re Lionel Corp.*, 722 F. 2d 1063, 1071 (2nd Cir. 1983)). The Trustee has broad power under Section 363 to sell property of the estate

and the manner of sale is within the discretion of the trustee. *In re The Canyon Partnership*, 55 B.R. 520, 524 (Bankr. S.D. Cal. 1985).

Under the circumstances in this case, the Trustee believes that he has properly exercised his business judgment in accepting the Buyer's offer of $780,000.

The Trustee submits that, in entering into the Agreement with the Buyer, there is no improper bad faith motive. The Buyer is the underlying obligor under the Amended FMC Note and, through purchasing the note, the Trustee understands it desires to greatly reduce its future potential liability to the estate through the early acquisition of the note.

The Trustee submits that the price is fair and the negotiations for the Buyer's acquisition of the Amended FMC Note were conducted at arms' length. Prior to receiving the offer from the Buyer, the Trustee contacted approximately four other entities who regularly purchase assets in bankruptcy cases. From these solicitations, the Trustee received two written offers, the highest of which was $525,000. At least one of these entities required, among other things, that the estate agree to a break-up fee and include bid provisions that the Trustee did not believe were beneficial to the estate.

The offer from the Buyer, which is set forth in the Agreement, did not include these types of terms and is almost 50% greater in dollar amount than the next written proposal that the Trustee received. Negotiations with the Buyer took place over the course of several weeks and resulted in a materially higher and better offer, in the Trustee's opinion, than any other written proposal the Trustee has received to date. The Buyer's purchase of the note is subject to higher and better offer. Notice of the proposed sale will be provided to creditors and parties-in-interest identified in the limited service list, and to entities and individuals who have expressed interest in the note or whom the Trustee has previously contacted to solicit purchase offers so that those parties may determine if they would like to make an overbid for the Amended FMC Note.

In addition to approval of the sale, the Trustee is requesting a waiver of the automatic stay of the sale order imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

/ / /

/ / /

/ / /

## V. CONCLUSION AND PRAYER

WHEREFORE the Trustee prays for authority to enter into the Agreement described above with Fort Mason Center, a California non-profit public benefit corporation.

DATED: May 5, 2025　　　　　RINCON LAW LLP


By: */s/Gregg S. Kleiner*
　　GREGG S. KLEINER
　　Counsel for PAUL MANSDORF,
　　Trustee in Bankruptcy