Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.:  415-840-6385
Facsimile No.:  415-680-1712
E-mail:       gkleiner@rinconlawllp.com
              cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

THE SAN FRANCISCO ART INSTITUTE,
    a California nonprofit
    public benefit corporation,

          Debtor.

Case No. 23-30250 HLB
Chapter 7
Hon. Hannah L. Blumenstiel

**DECLARATION OF PAUL MANSDORF IN SUPPORT OF MOTION FOR AUTHORITY TO SELL ESTATE'S RIGHT, TITLE AND INTEREST IN AND TO A PROMISSORY NOTE**

[No Hearing Required Unless Requested]

I, Paul Mansdorf, declare as follows:

1.    I am serving as Chapter 7 Trustee of the estate of the above Debtor. This declaration is filed in support of my motion made for an order authorizing me to enter into a "Purchase and Sale Agreement – Fort Mason Center Promissory Note" ("**Agreement**")[1] with Fort Mason Center, a California non-profit public benefit corporation ("**FMC**" or "**Buyer**").

2.    The Agreement concerns the estate's sale of its right, title and interest in and to a promissory note dated March 5, 2025 in the original principal amount of $7 million ("**Amended FMC Note**"); by which the Buyer has agreed to pay to the Trustee the sum of $780,000, in exchange

---

[1] A true and correct copy of the Agreement is attached hereto as Exhibit 1.

for the Amended FMC Note. A copy of the Amended FMC Note is attached to the Agreement. The Buyer is the obligor under the Amended FMC Note. The sale of the Amended FMC Note to the Buyer is subject to higher and better offer as discussed in the sale notice and motion.

3. The Amended FMC Note provides, in part, that: (a) the first payment will be due on December 31, 2030, in the amount of $110,315; and (b) annual payments of $553,000 shall be due and owing commencing December 31, 2031, until the Amended FMC Note is paid in full. The payments due under the Amended FMC Note are set forth in detail in the Amortization Table attached as Schedule 1 to the Amended FMC Note, which Amortization Table governs the timing and amount of the payments.

4. I submit that, in entering into the Agreement with the Buyer, there is no improper bad faith motive. Prior to entering into the Agreement, I solicited offers to purchase the Amended FMC Note from multiple parties. I received three written offers. Two of these written offers were made by parties other than the Buyer. The Buyer is the underlying obligor under the Amended FMC Note. Through purchasing the note, I understand it desires to greatly reduce its future potential liability to the estate through the early acquisition of the note.

5. I submit that the price that the Buyer is offering for the Amended FMC Note is fair and the negotiations for the Buyer's acquisition of the Amended FMC Note were conducted at arms' length. Prior to receiving the offer from the Buyer, I contacted approximately four other entities who I am advised regularly purchase assets in bankruptcy cases. From these solicitations, I received two written offers, the highest of which was $525,000. At least one of these entities required, among other things, that the estate agree to a break-up fee and include other bid provisions that I did not believe were beneficial to the estate. The offer from the Buyer, which is set forth in the Agreement, did not include these types of terms and is almost 50% greater in dollar amount than the next written proposal that I received.

6. Negotiations with the Buyer took place over the course of several weeks and resulted in a materially higher and better offer, in my opinion, than any other written proposal I have received to date. The Buyer's purchase of the note is subject to higher and better offer. Notice of the proposed sale will be provided to creditors and parties-in-interest identified in the limited service list, and to

entities and individuals who have expressed interest in the note or whom the estate has previously contacted to solicit purchase offers so that those parties may determine if they would like to make an overbid for the Amended FMC Note.

Except for statements made upon information or belief, I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the _____ day of May 2025 in Berkeley, California.

Paul J. Mansdorf
Digitally signed by Paul J. Mansdorf
Date: 2025.05.02 10:46:42 -07'00'

PAUL MANSDORF

## PURCHASE AND SALE AGREEMENT –
## FORT MASON CENTER PROMISSORY NOTE

This Purchase and Sale Agreement – Fort Mason Center Promissory Note ("**Agreement**") is made this 2nd day of May 2025, by and between: (i) Paul Mansdorf, solely in his capacity as the duly appointed and acting Chapter 7 Trustee ("**Trustee**") of the bankruptcy estate ("**Estate**") of The San Francisco Art Institute, a California nonprofit public benefit corporation, Case No. 23-30250 HLB, pending before the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("**Bankruptcy Court**"), on the one hand; and (ii) Fort Mason Center, a California non-profit public benefit corporation ("**FMC**" or "**Buyer**"). The Trustee and Buyer are each a "**Party**" and collectively the "**Parties**."

### RECITALS

A.　　The San Francisco Art Institute, a California nonprofit public benefit corporation, Case No. 23-30250 HLB ("**Debtor**"), filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023, and the Trustee was appointed to administer the Estate.

B.　　In June 2016, the Debtor entered into a long-term sublease (the "**Sublease**") with FMC Pier 2 Sublessor, LLC ("**FMCP2**") for real property commonly referred to as Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**").

C.　　The Sublease required substantial tenant improvements that FMC was not in a position to advance but was willing to reimburse the Debtor over time if the Debtor paid for the improvements upfront. According to FMC, in order for the Debtor to benefit from millions of dollars of federal historic tax credits that were only available for improvements done to the Premises if they were undertaken and paid for by FMC, FMCP2, FMC and the Debtor reached an agreement under which the Debtor agreed to lend funds to FMC on an unsecured basis, which FMCP2 then used to pay for the tenant improvements desired by the Debtor. The loan was memorialized in a promissory note signed by FMC in favor of the Debtor dated June 6, 2016 (the "**Original Note**"). The Original Note was amended and restated pursuant to that certain Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020 in the face amount of $11,932,478.36 (the "**FMC Recourse Note**"). The Trustee is in possession of the original (signed) FMC Recourse Note. The FMC Recourse Note includes a payment schedule, pursuant to which FMC was to make specified annual debt service payments to the Debtor, subject to FMC's right to set off amounts owed by Debtor under the Sublease against the debt service payments owed by FMC.

D.　　On June 23, 2023, FMCP2 filed claim number 40 in the Debtor's bankruptcy case in the liquidated amount of $3,064,029.95 ("**Claim**") based on Debtor's obligations under the Sublease. Among other things, the Claim asserts that it is secured by the FMC Recourse Note, based on the setoff rights described in the prior paragraph. The liquidated amount of the Claim did not include interest, at 10% per annum, and over $100,000 in attorney's fees and costs that FMCP2 asserts it was owed.

1

**EXHIBIT 1**

E.     On April 2, 2025, the Bankruptcy Court entered its order approving a settlement between the Trustee and the Estate on the one hand and FMCP2 and FMC on the other. The settlement resulted in the complete satisfaction of the Claim in full through FMC's accelerated setoffs against annual payments called for under the FMC Recourse Note, and FMC entering into a new unsecured recourse unsecured promissory note in the principal amount of Seven Million Dollars ($7,000,000) ("**Amended FMC Note**").  The Trustee is in possession of the original (signed) Amended FMC Note.  A copy of the Amended FMC Note is attached hereto as **Exhibit A**.  A copy of the (i) Estate's settlement agreement with FMC and FMCP2 and the Bankruptcy Court order approving the settlement agreement are respectively attached hereto as **Exhibits B and C**.

F.     The Amended FMC Note provides, in part, that: (a) the first payment will be due on December 31, 2030, in the amount of $110,315; and (b) annual payments of $553,000 shall be due and owing commencing December 31, 2031, until the Amended FMC Note is paid in full. The payments due under the Amended FMC Note are set forth in detail in the Amortization Table attached as Schedule 1 to the Amended FMC Note, which Amortization Table governs the timing and amount of the payments.

G.     Pursuant to the provisions of this Agreement, the Buyer seeks to purchase from the Trustee all of the Debtor's estate's right, title and interest in and to the Amended FMC Note.

## AGREEMENT

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1.     The foregoing Recital paragraphs are incorporated by reference.

2.     Subject to higher and better offers pursuant to the bidding procedures described below, which shall be set forth below in the related notice to creditors and other interested parties (the "Notice"), and Bankruptcy Court approval, the Trustee agrees to sell to the Buyer the estate's right, title and interest in and to the Amended FMC Note for $780,000 ("**Purchase Price**").  The Trustee shall promptly seek Bankruptcy Court authorization to enter into this Agreement (the "**Approval Order**"). .

3.     The Notice shall set forth procedures for parties seeking to bid on the FMC Note, including that any bidder must satisfy all of the following requirements within fourteen (14) days after service of the Notice (the "Bid Deadline") in order for its bid to be deemed a "Qualified Bid":

(i) provide evidence (e.g., current financial institution statements) to the Trustee at paul@mansdorftrustee.com (with a copy to Trustee's counsel – gkleiner@rinconlawllp.com cmaher@rinconlawllp.com), that they can close and pay the purchase price in cash;

(ii) deliver to the Trustee, a $100,000 good faith deposit by wire transfer;

(iii) agree to be bound by all of the terms of this Agreement (except the amount of the purchase price, which amount will be the amount of a party's highest offer);

**EXHIBIT 1**

(iv) agree that their bids may not contain any contingencies, whatsoever, including, but not limited to, any loan contingencies and inspection contingencies; and

(v) be in the minimum amount of $830,000.

4.      If there are one or more Qualified Bids for the Amended FMC Note: (i) the Trustee shall conduct a telephonic auction within five (5) business days after the Bid Deadline among the Buyer and Qualified Bidder(s); (ii) the minimum bids over $830,000 will be in an amount set at the Trustee's reasonable discretion, but not less than $5,000.00; and (iii) the successful bidder for the Amended FMC Note must tender the entire purchase price to the Trustee, less a credit for any deposit held by the Trustee, not later than ten (10) days after the Approval Order is entered.  If the purchaser of the Amended FMC Note, including FMC, fails to timely deliver the entire purchaser price for the Amended FMC Note, it will forfeit its deposit to the Estate for all purposes. In the event of such a default, the Trustee will, without further order of the Court, be free to sell the FMC Note to another party at the back-up bidder's last highest offer.

5.      Following the Bankruptcy Court's approval of the sale of the Amended FMC Note to the Buyer or the successful overbidder, the Trustee's sole deliverable is the original (signed) Amended FMC Note.

6.      The Purchase Price shall be delivered by wire transfer to the Trustee as follows: (i) $100,000 ("**Deposit**") within three business days of the execution of this Agreement; and (ii) the balance of the Purchase Price within ten (10) calendar days of the entry of the Approval Order. The Buyer's counsel acknowledges receipt of the wire transfer instructions.

7.      In the event that the Bankruptcy Court: (i) declines to authorize the Trustee to enter into this Agreement; or (ii) a party other than the Buyer is the successful overbidder for the Amended FMC Note, the Deposit shall be returned to the Buyer, by check, within ten (10) days of the entry of an order either (y) declining to authorize the Trustee to enter into this Agreement with the Buyer or (z) authorizing the Trustee to sell the Amended FMC Note to another purchaser.

8.      Buyer acknowledges and agrees that the sale of the Amended FMC Note to Buyer is made without any warranty or representation of any kind by the Trustee or the Estate, either express or implied, with respect to any aspect, portion or component of the Amended FMC Note. Buyer agrees and acknowledges that, as of the date of the execution of this Agreement, Buyer has made and completed its evaluation, inquiries, and investigations concerning its purchase which Buyer shall deem necessary to satisfy itself as to all aspects of Amended FMC Note. Buyer further agrees and acknowledges that, in purchasing the Amended FMC Note, Buyer has relied entirely on its own investigation, examination and inspection of the Amended FMC Note and not upon any representation or warranty of the Trustee, the Estate, or any agent or representative of the Trustee. **BUYER AGREES THAT, IN CONSUMMATING THE PURCHASE OF THE FMC NOTE PURSUANT TO THIS AGREEMENT, BUYER SHALL ACQUIRE THE AMENDED FMC NOTE IN ITS "AS IS, WHERE IS" AND WITH ALL FAULTS CONDITION, SOLELY IN RELIANCE ON BUYER'S OWN INVESTIGATION, EXAMINATION, INSPECTION, ANALYSIS AND EVALUATION OF THE AMENDED FMC NOTE.**

**EXHIBIT 1**

9.      Subject to the condition of Bankruptcy Court approval, each Party represents and warrants to the other party that he, she or it has full authority to bind herself, himself and itself to the terms of this Agreement.

10.     Each Party shall bear his, her, or its own attorneys' fees and costs in connection with the negotiation of this Agreement.

11.     The Parties make no representations or warranties regarding the legal effect or tax consequences of this Agreement, or of any such filing or reporting by the Parties, or any of them. Each Party acknowledges that he, she, or it has not received or relied upon any tax advice from any other Party.

12.     The Parties warrant and represent that they have read and understand this Agreement, that they have had a free and unfettered opportunity to consult individually and jointly with an independent attorney of their choosing regarding this Agreement and its effect, and that they execute this Agreement voluntarily and without duress or undue influence.

13.     Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because it was drafted in full or in part by such Party or its attorney. The Agreement shall be accordingly construed equally against all Parties. In this regard, the Parties waive any and all benefits and rights he, she, it, or they may have under California Civil Code § 1654, which provides as follows:

> IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

14.     This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the matters described herein, and any and all prior and contemporaneous agreements, representations, discussions, negotiations, commitments, and understandings are merged into and superseded by this Agreement. No representations, oral or otherwise, express or implied, other than those written and contained herein have been made or relied upon by any of the Parties.

15.     The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, including, but not limited to the interpretation and enforcement of this Agreement, and, if necessary, to effect the Bankruptcy Court's jurisdiction, and by their signature to this Agreement, hereby stipulate to an order providing for such jurisdiction. Each Party agrees to waive any and all rights it may have to a jury trial to resolve any disputes concerning or related to this Agreement.

16.     The Agreement may not be modified except by a writing signed by all Parties, with specific written reference to this Agreement, and with approval of the Bankruptcy Court; provided, however, Bankruptcy Court approval is not required if the modification is ministerial or does not negatively impact the Debtor, the Estate, or its creditors. This paragraph shall in no way limit the Trustee, and Buyer from entering into any agreements they deem necessary to consummate this Agreement.

**EXHIBIT 1**

17.    This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws.

18.    This Agreement may be executed in one or more counterparts for the convenience of the Parties hereto, all of which together shall constitute one and the same instrument. Facsimile signatures, or signatures transferred in PDF, shall be treated as original signatures for all purposes.

DATED:  May _____, 2025          BANKRUPTCY ESTATE OF
                                 THE SAN FRANCISCO ART INSTITUTE,
                                 a California nonprofit public benefit corporation,
                                 Case No. 23-30250 HLB

                                 Paul J.          Digitally signed by Paul J.
                                                  Mansdorf
                                 Mansdorf         Date: 2025.05.02 09:01:39
                          By: _____
                                 PAUL MANSDORF,
                                 Chapter 7 Trustee


DATED:  May _____, 2025          FORT MASON CENTER, A CALIFORNIA NON-PROFIT
                                 PUBLIC BENEFIT CORPORATION



                          By: _____
                                 MIKE BUHLER,
                                 President and CEO

5

**EXHIBIT 1**

17.     This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws.

18.     This Agreement may be executed in one or more counterparts for the convenience of the Parties hereto, all of which together shall constitute one and the same instrument. Facsimile signatures, or signatures transferred in PDF, shall be treated as original signatures for all purposes.

DATED:  May _____, 2025            BANKRUPTCY ESTATE OF
                                   THE SAN FRANCISCO ART INSTITUTE,
                                   a California nonprofit public benefit corporation,
                                   Case No. 23-30250 HLB

                                   By: _____
                                        PAUL MANSDORF,
                                        Chapter 7 Trustee

DATED:  May __2__, 2025            FORT MASON CENTER, A CALIFORNIA NON-PROFIT
                                   PUBLIC BENEFIT CORPORATION

                                   By: _____
                                        MIKE BUHLER,
                                        President and CEO

5

**EXHIBIT 1**

Case: 23-30250   Doc# 241-1   Filed: 05/05/25   Entered: 05/05/25 03:33:16   Page 9 of 26

## SECOND AMENDED AND RESTATED
## UNSECURED RECOURSE PROMISSORY NOTE

March 5, 2025

$7,000,000.00

THIS NOTE AMENDS AND RESTATES IN ITS ENTIRETY THAT
CERTAIN AMENDED AND RESTATED UNSECURED RECOURSE PROMISSORY NOTE
DATED OCTOBER 30, 2020
IN THE ORIGINAL PRINCIPAL AMOUNT OF $11,932,478.36 MADE BY MAKER
IN FAVOR OF THE SAN FRANCISCO ART INSTITUTE.

FOR VALUE RECEIVED, FORT MASON CENTER, a California nonprofit public benefit corporation ("Maker"), promises to pay to THE BANKRUPTCY ESTATE OF THE SAN FRANCISCO ART INSTITUTE, a California nonprofit public benefit corporation, or such party's designee, Paul Mansdorf, Chapter 7 Trustee ("Holder"), in lawful money of the United States, the lesser of the principal sum of Seven Million Dollars ($7,000,000), plus interest on the outstanding principal balance hereof, as set forth below.

1. **Interest.** Interest on the principal sum of this Note shall accrue at the rate of seventy-five hundredths percent (.75%) per annum based on a 365 day year and the actual number of days elapsed, beginning January 1, 2031.

2. **Payments**. Interest and principal shall be due annually in accordance with the payment schedule attached hereto as **Corrected Schedule 1**.

3. **Default Interest; Late Charge**. Upon the occurrence of an Event of Default (as defined below), the unpaid principal balance of this Note, together with all interest accrued but unpaid on the date of the Event of Default, shall bear interest at the rate of the "prime" or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum (the "Default Rate") commencing on the date the payment was due and continuing until the delinquent payment in full is received by Holder. Maker acknowledges that late payment will cause Holder to incur costs and other damages not otherwise provided for in this Note. Therefore, if any payment is not received by Holder within ten (10) days after written notice from Holder that a payment has not been timely made a late charge shall be charged and is immediately due and payable. The late charge shall be an amount equal to six percent (6%) of the overdue installment. Acceptance of any late payment or late charge will not constitute a waiver of the default with respect to the overdue amount and shall not prevent Holder from exercising any of Holder's other rights and remedies under this Note.

4. **Prepayment**. This Note may be prepaid in whole or in part, at any time, without penalty or premium, on any date that a payment of interest is due hereunder, upon thirty (30) days prior written notice to Holder.

5. **Security.** This Note is recourse to the Maker but otherwise unsecured and the Holder shall have no direct or indirect lien on any assets of the Maker by reason of this Note.

**EXHIBIT A**

**EXHIBIT 1**

6. **Application of Payments**. All payments received by Holder shall be applied first to late payment charges, second to accrued interest, then to other charges due with respect to this Note, and then to the unpaid principal balance.

7. **Default and Remedies**. The unpaid principal balance of this Note, together with all accrued interest thereon, shall, at the option of Holder, become immediately due and payable, without demand or notice, upon the occurrence of any of the following events (each an "Event of Default"):

    (a)    the failure of Maker to pay when due any interest, principal, or other amount payable under this Note, if such failure to pay continues for a period of ten days after written notice from Holder;

    (b)    Maker (i) becoming the subject of any order for relief in a proceeding under any Debtor Relief Law (as defined below); (ii) becoming unable to pay, or admitting in writing Maker's inability to pay, Maker's debts as they mature; (iii) making an assignment for the benefit of creditors; (iv) applying for or consenting to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or for all or any part of Maker's property or assets; (v) instituting or consenting to any proceeding under any Debtor Relief Law with respect to or all or any part of the Maker's property or assets, or the institution of any similar case or proceeding without the consent of the Maker if such case or proceeding continues undismissed or unstayed for 60 calendar days;

    (c)    the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or either of them, or for all or any part of Maker's property or assets without the application or consent of Maker, if such appointment continues undischarged or unstayed for 60 calendar days;

    (d)    the issuance or levy of any judgment, writ, warrant of attachment or execution or similar process against all or any material part of the property or assets of Maker if such process is not released, vacated or fully bonded within 60 calendar days after its issue or levy; and

    (e)    the taking of any action by Maker to initiate any of the actions described in paragraphs 7(c) or 7(d) of this Section.

8. As used in this Note, the term "Debtor Relief Law" shall mean the Bankruptcy Code of the United States of America, as amended, or any other similar debtor relief law affecting the rights of creditors generally.

9. **Maximum Legal Rate of Interest**. All agreements between Maker and Holder, whether now existing or hereafter arising, are hereby limited so that in no event shall the interest charged hereunder or agreed to be paid to Holder exceed the maximum amount permissible under applicable law. If Holder ever receives interest or anything deemed interest in excess of the maximum lawful amount, an amount equal to the excessive interest shall be applied to the

EXHIBIT A
EXHIBIT 1
Case: 23-30250   Doc# 241-1   Filed: 05/05/25   Entered: 05/05/25 03:33:16   Page 11 of 26

reduction of the principal, and if it exceeds the unpaid balance of principal hereof, such excess shall be refunded to Maker. If interest otherwise payable to Holder would exceed the maximum lawful amount, the interest payable shall be reduced to the maximum amount permitted under applicable law. This paragraph shall control all agreements between Maker and Holder in connection with the indebtedness evidenced hereby.

10.     **Miscellaneous**. This Note may be modified only by a written agreement executed by Maker and Holder. This Note shall be governed by California law. The terms of this Note shall inure to the benefit of and bind Maker and Holder and their respective heirs, legal representatives and successors and assigns. If this Note is destroyed, lost or stolen, Maker will deliver a new note to Holder on the same terms and conditions as this Note with a notation of the unpaid principal and accrued and unpaid interest in substitution of the prior Note. Holder shall furnish to Maker reasonable evidence that the Note was destroyed, lost or stolen and any security or indemnity that may be reasonably required by Maker in connection with the replacement of this Note. Maker's execution, delivery and performance of this Note have been duly authorized by all necessary action on the part of Maker.

IN WITNESS WHEREOF, Maker has executed this Note as of the date first above written.

MAKER

FORT MASON CENTER,
a California nonprofit public benefit corporation

By:     _____

Mike Buhler, President and CEO

EXHIBIT A

**EXHIBIT 1**

# CORRECTED SCHEDULE 1

## PAYMENT SCHEDULE

Annual Interest at 0.75%          0.0075

| Year | Balance Beginning of the Year | Annual Interest | Balance Prior To Annual Payment | FMC Annual Payment 12/31 | Balance End of Year |
|---|---|---|---|---|---|
| 2025 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2026 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2027 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2028 | 7,000,000.00 | | 7,000,000.00 | | 7,000,000.00 |
| 2029 | 7,000,000.00 | | 7,000,000.00 | | 7,000,000.00 |
| 2030 | 7,000,000.00 | | 7,000,000.00 | (110,315.00) | 6,889,685.00 |
| 2031 | 6,889,685.00 | 51,672.64 | 6,941,357.64 | (553,000.00) | 6,388,357.64 |
| 2032 | 6,388,357.64 | 47,912.68 | 6,436,270.32 | (553,000.00) | 5,883,270.32 |
| 2033 | 5,883,270.32 | 44,124.53 | 5,927,394.85 | (553,000.00) | 5,374,394.85 |
| 2034 | 5,374,394.85 | 40,307.96 | 5,414,702.81 | (553,000.00) | 4,861,702.81 |
| 2035 | 4,861,702.81 | 36,462.77 | 4,898,165.58 | (553,000.00) | 4,345,165.58 |
| 2036 | 4,345,165.58 | 32,588.74 | 4,377,754.32 | (553,000.00) | 3,824,754.32 |
| 2037 | 3,824,754.32 | 28,685.66 | 3,853,439.98 | (553,000.00) | 3,300,439.98 |
| 2038 | 3,300,439.98 | 24,753.30 | 3,325,193.28 | (553,000.00) | 2,772,193.28 |
| 2039 | 2,772,193.28 | 20,791.45 | 2,792,984.73 | (553,000.00) | 2,239,984.73 |
| 2040 | 2,239,984.73 | 16,799.89 | 2,256,784.61 | (553,000.00) | 1,703,784.61 |
| 2041 | 1,703,784.61 | 12,778.38 | 1,716,563.00 | (553,000.00) | 1,163,563.00 |
| 2042 | 1,163,563.00 | 8,726.72 | 1,172,289.72 | (553,000.00) | 619,289.72 |
| 2043 | 619,289.72 | 4,644.67 | 623,934.39 | (553,000.00) | 70,934.39 |
| 2044 | 70,934.39 | 532.01 | 71,466.40 | (71,466.40) | 0.00 |
| | | 370,781.40 | | (7,370,781.40) | |

## AGREEMENT TO RESOLVE CLAIM OBJECTION AND MUTUAL RELEASE

This Agreement to Resolve Claim Objection and Mutual Release ("**Agreement**") is entered into this 5th day of March 2025, by and between: (i) Paul Mansdorf, the duly appointed and acting Chapter 7 Trustee ("**Trustee**") of the estate of The San Francisco Art Institute (Case No. 23-30250 HLB) ("**Debtor**"), pending before the United States Bankruptcy Court, Northern District of California, San Francisco Division ("**Bankruptcy Court**"); (ii) FMC Pier 2 Sublessor LLC ("**Claimant**"); and (iii) Fort Mason Center, a California non-profit public benefit corporation ("**FMC**"). The Trustee, Claimant and FMC are each a "**Party**" and collectively the "**Parties**."

## RECITALS

A.      The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023 ("**Petition Date**"). Following the Petition Date, the Trustee was appointed as the Chapter 7 Trustee of the Debtor's estate.

B.      On or about June 9, 2016, the Debtor entered into a long-term sublease (the "**Sublease**") with Claimant for real property described in the Sublease, located at Pier 2, Fort Mason Center, 2 Marina Boulevard, San Francisco, California ("**Premises**"). The Trustee understands that the Premises was intended to be a satellite campus for the Debtor, whose primary campus and administrative location was 800 Chestnut Street, San Francisco, California. The Sublease had an initial term through December 31, 2033.

C.      Claimant sought to make substantial tenant improvements to the Premises at its cost in connection with the Sublease.

D.      Claimant asserts that in order for Debtor to benefit from millions of dollars of federal historic tax credits that were only available for improvements done to the Premises if they were undertaken and paid for by FMC, Claimant, FMC and the Debtor reached an agreement under which the Debtor agreed to lend funds to FMC on an unsecured basis, which Claimant then used to pay for the tenant improvements desired by SFAI.

E.      FMC's obligation to the Debtor for the loan to fund such tenant improvements was documented by that certain Unsecured Recourse Promissory Note dated June 6, 2016 (the "**Original Note**"). The Original Note was amended and restated pursuant to that certain Amended and Restated Unsecured Recourse Promissory Note dated October 30, 2020 in the face amount of $11,932,478.36 (the ""**FMC Recourse Note**"). The Trustee is in possession of the original (signed) FMC Recourse Note. The FMC Recourse Note includes a payment schedule, pursuant to which FMC is to make specified annual debt service payments to the Debtor, subject to FMC's right to setoff amounts owed by Debtor under the Sublease against the debt service payments owed by FMC, as further described below.

1

F.      Under the provisions of the FMC Recourse Note, interest accrues on the principal balance at the rate of 0.75% per annum, and FMC was or is obligated to make payments to Holder (previously the Debtor, and now the Trustee) in arrears each December 31, as follows: (i) $240,000 annually for 2017 through 2021; (ii) $387,500 annually for 2022, 2023 and 2024; (iii) $553,000 for 2025 through 2058 (collectively, "**Annual Payments**"). The FMC Recourse Note provides that, in the event of a default by the Debtor under the Sublease, FMC may offset amounts owed by FMC under the FMC Recourse Note (including the Annual Payments) against amounts the Debtor owes FMC under the provisions of the Sublease.

G.      Based on Debtor's uncured defaults, the Sublease was terminated by the Claimant on December 30, 2022 (the "**Sublease Termination Date**"). Since the Sublease Termination Date, FMC has exercised two setoffs: for calendar years ending 2022 and 2023 (with the Trustee's agreement, and the Court's approval for calendar year ending 2023), each in the amount of $387,500.

H.      On June 23, 2023, Claimant timely filed claim number 40 in the Debtor's bankruptcy case in the liquidated amount of $3,064,029.95 ("**Claim**") based on Debtor's obligations under the Sublease. Among other things, the Claim asserts that it is secured by the FMC Recourse Note, based on the setoff rights noted above.

I.      On December 4, 2024, the Trustee filed an objection to the Claim, asserting, among other things that the Claim was: (a) incorrectly calculated and overstated; (b) unsecured; and (c) that Claimant is not entitled to collect damages for post Sublease termination charges, such as interest, attorney fees, utilities, or late fees.

J.      Claimant filed opposition to the claim objection generally denying the Trustee's allegations. The Trustee filed a response. The Court conducted an initial hearing on the objection to the Claim on January 30, 2025. At the hearing, the Court made certain preliminary rulings, including that certain components of the Claim were incorrectly calculated and that the 2022 Annual Payment was not properly applied by the Claimant. The Court also preliminarily held that the Claim was to be treated as a secured claim, and that the Claimant was entitled to prepetition and postpetition interest and attorney fees, and post Sublease termination charges, including utilities were part of the Claim that would otherwise be capped under Section 502(b)(6) of the Bankruptcy Code. At the conclusion of the January 30, 2025 hearing, the Court continued the matter to March 13, 2025 to allow the Parties to evaluate and discuss the Court's preliminary rulings.

K.      As part of arms' length negotiations between the Parties after the January 30, 2025 hearing, and working from the Court's preliminary rulings on the objection to Claim, the Parties concluded that after reducing the sums sought under the Claim and applying the Annual Payments to accelerate the payoff of the Claim, the remaining balance due under the FMC Recourse Note will be $7,000,000 as of December 31, 2030, plus $110,315.

L.     Pursuant to this Agreement the Parties seek to resolve the dispute concerning the Claim by accelerating the application of the Annual Payments to the Claim, after taking into account Claimant's attorneys' fees and additional interest Claimant would be entitled to receive, in accordance with the Court's January 30, 2025 preliminary rulings. This settlement requires a modification of the FMC Recourse Note.

**AGREEMENT**

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

1.     The foregoing Recital paragraphs are incorporated by reference.

2.     The effectiveness of this Agreement is subject to entry of an Order by the Bankruptcy Court approving it, and authorizing the Trustee to enter this Agreement (the "**Approval Order**"). The Trustee shall promptly seek approval of this Agreement, and Claimant and FMC shall be provided with a reasonable opportunity to review and comment on the draft motion or other request to the Court seeking such approval.

3.     Subject to entry of the Approval Order, FMC is hereby granted relief from the automatic stay to accelerate the Annual Payments that it owes under the FMC Recourse Note to extinguish (via setoff) all sums due and owing by the Debtor under the Claim. Upon entry of the Approval Order, the Claim shall be deemed fully satisfied and entitled to no other distributions.

4.     Following FMC's set-off of the Annual Payments as provided in the foregoing paragraph, the remaining principal balance due and owing under the FMC Recourse Note shall be seven million dollars ($7,000,000) as of December 31, 2030, after which date interest shall accrue at the rate of 0.75% per annum. Upon entry of the Approval Order, FMC and the Trustee shall be bound by the Amended FMC Recourse Note in the principal amount of $7 million ("**Amended FMC Note**") in substantially the form attached to this Agreement as **Exhibit A**. The Amended FMC Note provides, in part, that: (a) the first payment will be due on December 31, 2030, in the amount of $110,315; and (b) annual payments of $553,000 shall be due and owing commencing December 31, 2031, until the Amended FMC Note is paid in full. Payments due under the Amended FMC Note are set forth in detail in the Amortization Table attached as Schedule 1 to the Amended FMC Note, which Amortization Table governs the timing and amount of the payments.

5.     Nothing in this Agreement or in the Amended FMC Note, shall prohibit or impair the Trustee's right to transfer, convey, or hypothecate the Amended FMC Note.

6.     Upon entry of the Approval Order, and except for the Trustee's duties and obligations under this Agreement, Claimant and FMC, their successors, assignees, insurers, agents, attorneys and accountants and all persons and/or entities claiming by or through them, and each of them (the "**FMC Releasing Parties**"), release and forever discharge the Trustee, the estate, the Debtor, and their predecessors, successors, assignees, professionals, insurers, agents, employees, partners, shareholders, members, directors, officers, managers, attorneys, and accountants, and

3

each of them (the "**Trustee Released Parties**"), from any and all claims, debts, actions, demands, reckonings, accountings, liabilities, obligations, and causes of action, of whatever kind or nature, arising from prior to the Petition Date through the date of entry of the Approval Order, which they may have, hold, or may hold, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, asserted or not asserted, in law or equity, related to or arising out of the Claim and the Premises.

7. Upon entry of the Approval Order, and except for Claimant's and FMC's duties and obligations under this Agreement and the Amended FMC Note, the Trustee, the estate, the Debtor, and each of his or its successors, assignees, insurers, agents, accountants, attorneys, representatives, and all persons and/or entities claiming by or through them, and each of them (the "**Trustee Releasing Parties**"), release and forever discharge Claimant and FMC, and their respective predecessors, successors, assignees, professionals, insurers, agents, employees, attorneys, partners, shareholders, members, directors, officers, managers and accountants, and each of them and each of them (the "**FMC Released Parties**"), from any and all claims, debts, actions, demands, reckonings, accountings, liabilities, obligations, and causes of action, of whatever kind or nature, arising from prior to the Petition Date through the date of entry of the Approval Order, which they may have, hold, or may hold, whether known or unknown, suspected or unsuspected, liquidated or unliquidated, asserted or not asserted, in law or equity, related to or arising out of the FMC Recourse Note, the Claim, the Premises and claims that could be asserted by the Trustee Releasing Parties against the FMC Released Parties under Chapter 5 of the Bankruptcy Code. For purposes of clarity and notwithstanding anything in this Agreement to the contrary, this Agreement does not and shall not alter any obligations of FMC under the Amended FMC Note.

8. Upon entry of the Approval Order, except with respect to enforcing this Agreement and the Amended FMC Note, the Trustee Releasing Parties and the FMC Releasing Parties forever waive any and all benefits and rights he, she, it, or they may have, now hold, or in the future may have or hold that concern, arise from, or relate to the matters released herein by reason of California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

9. The Trustee Releasing Parties and the FMC Releasing Parties understand that if the facts giving rise to this Agreement are found later to be different from or other than the facts now believed by him, her, it, or them to be true, or if new facts come to his, her, its, or their attention, each and all of them accept and assume the risk of such possible differences in the facts and agree that the releases above shall be and remain effective, notwithstanding such new or different facts.

EXHIBIT B
EXHIBIT 1

10.     The Parties represent and warrant that they have not assigned, transferred or otherwise encumbered any of the claims, demands, causes of action, or interests herein settled, released or transferred and that they are fully entitled to enter into this Agreement.

11.     Each Party shall bear his, her, or its own attorneys' fees and costs in connection with the negotiation of this Agreement and obtaining Bankruptcy Court approval to allow the Trustee to enter into this Agreement.

12.     The Parties make no representations or warranties regarding the legal effect or tax consequences of this Agreement, or of any such filing or reporting by the Parties, or any of them. Each Party acknowledges that he, she, or it has not received or relied upon any tax advice from any other Party.

13.     The Parties warrant and represent that they have read and understand this Agreement, that they have had a free and unfettered opportunity to consult individually and jointly with an independent attorney of their choosing regarding this Agreement and its effect, and that they execute this Agreement voluntarily and without duress or undue influence.

14.     Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because it was drafted in full or in part by such Party or its attorney. The Agreement shall be accordingly construed equally against all Parties. In this regard, the Parties waive any and all benefits and rights he, she, it, or they may have under California Civil Code Section 1654, which provides as follows:

> IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

15.     This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the matters described herein, and any and all prior and contemporaneous agreements, representations, discussions, negotiations, commitments, and understandings are merged into and superseded by this Agreement. No representations, oral or otherwise, express or implied, other than those written and contained herein have been made or relied upon by any of the Parties.

16.     The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, including, but not limited to the interpretation and enforcement of this Agreement, and, if necessary to effect the Bankruptcy Court's jurisdiction, the Parties, by their signature to this Agreement, hereby stipulate to such jurisdiction.

17.     The Agreement may not be modified except by a writing signed by all Parties, with specific written reference to this Agreement, and with approval of the Bankruptcy Court; provided, however, Bankruptcy Court approval is not required if the modification is ministerial or does not negatively impact the estate or its creditors. This paragraph shall in no way limit the Parties from entering into any agreements they deem necessary to consummate this Agreement.

18.     This Agreement will be binding upon and inure to the benefit of each respective Party, and their respective successors and permitted assigns.

19.     This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws.

20.     This Agreement may be executed in one or more counterparts for the convenience of the Parties hereto, all of which together shall constitute one and the same instrument. Facsimile signatures, or signatures transferred in pdf format, or e-signatures shall be treated as original signatures for all purposes.

IN WITNESS WHEREOF, the Parties have each approved and executed this Agreement.

DATED:  March _____, 2024          BANKRUPTCY ESTATE OF THE SAN FRANCISCO
                                                          ART INSTITUTE, Case No. 23-30250 HLB

Paul J. Mansdorf
Digitally signed by Paul J. Mansdorf
Date: 2025.03.05 16:21:24 -08'00'

By: _____
PAUL MANSDORF,
Trustee in Bankruptcy

DATED:  March __5__, 2025          FMC PIER 2 SUBLESSOR LLC

By: _____
MIKE BUHLER,
President

DATED:  March __5__, 2025          FORT MASON CENTER

By: _____
MIKE BUHLER,
President and CEO

6

EXHIBIT B
EXHIBIT 1

**APPROVED AS TO FORM AND CONTENT:**

DATED:  March _____, 2025          FARELLA BRAUN + MARTEL LLP


By: /s Gary M. Kaplan
  _____
  GARY M. KAPLAN,
  Attorney for Claimant, FMC Pier 2 Sublessor LLC and
  Fort Mason Center, a California non-profit public
  benefit corporation


DATED:  March 5, 2025          RINCON LAW LLP


By: */s/ Gregg S. Kleiner*
  _____
  GREGG S. KLEINER
  Counsel for PAUL MANSDORF,
  Trustee in Bankruptcy

7

**SECOND AMENDED AND RESTATED**
**UNSECURED RECOURSE PROMISSORY NOTE**

March 5, 2025

$7,000,000.00

THIS NOTE AMENDS AND RESTATES IN ITS ENTIRETY  THAT
CERTAIN AMENDED AND RESTATED UNSECURED RECOURSE PROMISSORY NOTE
DATED OCTOBER 30, 2020
IN THE ORIGINAL PRINCIPAL AMOUNT OF $11,932,478.36 MADE BY MAKER
IN FAVOR OF THE SAN FRANCISCO ART INSTITUTE.

FOR VALUE RECEIVED, FORT MASON CENTER, a California nonprofit public benefit corporation ("Maker"), promises to pay to THE BANKRUPTCY ESTATE OF THE SAN FRANCISCO ART INSTITUTE, a California nonprofit public benefit corporation, or such party's designee, Paul Mansdorf, Chapter 7 Trustee ("Holder"), in lawful money of the United States, the lesser of the principal sum of Seven Million Dollars ($7,000,000), plus interest on the outstanding principal balance hereof, as set forth below.

1.    **Interest.** Interest on the principal sum of this Note shall accrue at the rate of seventy-five hundredths percent (.75%) per annum based on a 365 day year and the actual number of days elapsed, beginning January 1, 2031.

2.    **Payments**. Interest and principal shall be due annually in accordance with the payment schedule attached hereto as **Schedule 1**.

3.    **Default Interest: Late Charge**. Upon the occurrence of an Event of Default (as defined below), the unpaid principal balance of this Note, together with all interest accrued but unpaid on the date of the Event of Default, shall bear interest at the rate of the "prime" or reference rate for short term commercial loans as announced from time to time in the Wall Street Journal or other national daily business journal or report, plus three percent (3%) per annum (the "Default Rate") commencing on the date the payment was due and continuing until the delinquent payment in full is received by Holder. Maker acknowledges that late payment will cause Holder to incur costs and other damages not otherwise provided for in this Note. Therefore, if any payment is not received by Holder within ten (10) days after written notice from Holder that a payment has not been timely made a late charge shall be charged and is immediately due and payable. The late charge shall be an amount equal to six percent (6%) of the overdue installment. Acceptance of any late payment or late charge will not constitute a waiver of the default with respect to the overdue amount and shall not prevent Holder from exercising any of Holder's other rights and remedies under this Note.

4.    **Prepayment**. This Note may be prepaid in whole or in part, at any time, without penalty or premium, on any date that a payment of interest is due hereunder, upon thirty (30) days prior written notice to Holder.

5.    **Security.** This Note is recourse to the Maker but otherwise unsecured and the Holder shall have no direct or indirect lien on any assets of the Maker by reason of this Note.

**EXHIBIT A**
**EXHIBIT B**
**EXHIBIT 1**

Case: 23-30250    Doc# 241-1    Filed: 05/05/25    Entered: 05/05/25 03:33:16    Page 21 of 26

6.     **Application of Payments**. All payments received by Holder shall be applied first to late payment charges, second to accrued interest, then to other charges due with respect to this Note, and then to the unpaid principal balance.

7.     **Default and Remedies**. The unpaid principal balance of this Note, together with all accrued interest thereon, shall, at the option of Holder, become immediately due and payable, without demand or notice, upon the occurrence of any of the following events (each an "Event of Default"):

    (a)    the failure of Maker to pay when due any interest, principal, or other amount payable under this Note, if such failure to pay continues for a period of ten days after written notice from Holder;

    (b)    Maker (i) becoming the subject of any order for relief in a proceeding under any Debtor Relief Law (as defined below); (ii) becoming unable to pay, or admitting in writing Maker's inability to pay, Maker's debts as they mature; (iii) making an assignment for the benefit of creditors; (iv) applying for or consenting to the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or for all or any part of Maker's property or assets; (v) instituting or consenting to any proceeding under any Debtor Relief Law with respect to or all or any part of the Maker's property or assets, or the institution of any similar case or proceeding without the consent of the Maker if such case or proceeding continues undismissed or unstayed for 60 calendar days;

    (c)    the appointment of any receiver, trustee, custodian, conservator, liquidator, rehabilitator, or similar officer for Maker, or either of them, or for all or any part of Maker's property or assets without the application or consent of Maker, if such appointment continues undischarged or unstayed for 60 calendar days;

    (d)    the issuance or levy of any judgment, writ, warrant of attachment or execution or similar process against all or any material part of the property or assets of Maker if such process is not released, vacated or fully bonded within 60 calendar days after its issue or levy; and

    (e)    the taking of any action by Maker to initiate any of the actions described in paragraphs 7(c) or 7(d) of this Section.

8.     As used in this Note, the term "Debtor Relief Law" shall mean the Bankruptcy Code of the United States of America, as amended, or any other similar debtor relief law affecting the rights of creditors generally.

9.     **Maximum Legal Rate of Interest**. All agreements between Maker and Holder, whether now existing or hereafter arising, are hereby limited so that in no event shall the interest charged hereunder or agreed to be paid to Holder exceed the maximum amount permissible under applicable law. If Holder ever receives interest or anything deemed interest in excess of the maximum lawful amount, an amount equal to the excessive interest shall be applied to the

EXHIBIT A
EXHIBIT B
EXHIBIT 1

reduction of the principal, and if it exceeds the unpaid balance of principal hereof, such excess shall be refunded to Maker. If interest otherwise payable to Holder would exceed the maximum lawful amount, the interest payable shall be reduced to the maximum amount permitted under applicable law. This paragraph shall control all agreements between Maker and Holder in connection with the indebtedness evidenced hereby.

10. **Miscellaneous**. This Note may be modified only by a written agreement executed by Maker and Holder. This Note shall be governed by California law. The terms of this Note shall inure to the benefit of and bind Maker and Holder and their respective heirs, legal representatives and successors and assigns. If this Note is destroyed, lost or stolen, Maker will deliver a new note to Holder on the same terms and conditions as this Note with a notation of the unpaid principal and accrued and unpaid interest in substitution of the prior Note. Holder shall furnish to Maker reasonable evidence that the Note was destroyed, lost or stolen and any security or indemnity that may be reasonably required by Maker in connection with the replacement of this Note. Maker's execution, delivery and performance of this Note have been duly authorized by all necessary action on the part of Maker.

IN WITNESS WHEREOF, Maker has executed this Note as of the date first above written.


MAKER

FORT MASON CENTER,
a California nonprofit public benefit corporation



By: _____
      Mike Buhler, President and CEO

EXHIBIT A
EXHIBIT B
**EXHIBIT 1**

## SCHEDULE 1

## PAYMENT SCHEDULE

| | | | | | |
|---|---|---|---|---|---|
| Annual Interest at 0.75% | 0.0075 | | | | |
| | | | | | |
| | **Balance Begginning of the Year** | **Annual Interest** | **Balance Prior To Annual Payment** | **FMC Annual Payment 12/31** | **Balance End of Year** |
| **Year** | | | | | |
| 2025 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2026 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2027 | 7,000,000.00 | | 7,000,000.00 | - | 7,000,000.00 |
| 2028 | 7,000,000.00 | | 7,000,000.00 | | 7,000,000.00 |
| 2029 | 7,000,000.00 | | 7,000,000.00 | | 7,000,000.00 |
| 2030 | 7,000,000.00 | | 7,000,000.00 | (110,315.00) | 6,889,685.00 |
| 2031 | 6,889,685.00 | 51,672.64 | 6,941,357.64 | (553,000.00) | 6,388,357.64 |
| 2032 | 6,388,357.64 | 47,912.68 | 6,436,270.32 | (553,000.00) | 5,883,270.32 |
| 2033 | 5,883,270.32 | 44,124.53 | 5,927,394.85 | (553,000.00) | 5,374,394.85 |
| 2034 | 5,374,394.85 | 40,307.96 | 5,414,702.81 | (553,000.00) | 4,861,702.81 |
| 2035 | 4,861,702.81 | 36,462.77 | 4,898,165.58 | (553,000.00) | 4,345,165.58 |
| 2036 | 4,345,165.58 | 32,588.74 | 4,377,754.32 | (553,000.00) | 3,824,754.32 |
| 2037 | 3,824,754.32 | 28,685.66 | 3,853,439.98 | (553,000.00) | 3,300,439.98 |
| 2038 | 3,300,439.98 | 24,753.30 | 3,325,193.28 | (553,000.00) | 2,772,193.28 |
| 2039 | 2,772,193.28 | 20,791.45 | 2,792,984.73 | (553,000.00) | 2,239,984.73 |
| 2040 | 2,239,984.73 | 16,799.89 | 2,256,784.61 | (553,000.00) | 1,703,784.61 |
| 2041 | 1,703,784.61 | 12,778.38 | 1,716,563.00 | (553,000.00) | 1,163,563.00 |
| 2042 | 1,163,563.00 | 8,726.72 | 1,172,289.72 | (553,000.00) | 619,289.72 |
| 2043 | 619,289.72 | 4,644.67 | 623,934.39 | (553,000.00) | 70,934.39 |
| 2044 | 70,934.39 | 532.01 | 71,466.40 | (71,466.40) | 0.00 |
| | | | | | |
| | | 370,249.39 | | (7,370,781.40) | |

EXHIBIT A
EXHIBIT B
EXHIBIT 1



1 | Gregg S. Kleiner (SBN 141311)
2 | Charles P. Maher (SBN 124748)
RINCON LAW LLP
3 | 268 Bush Street, Suite 3335
San Francisco, CA 94104
4 | Tel. 415-840-6385
gkleiner@rinconlawllp.com
5 | cmaher@rinconlawllp.com

6 | Counsel for
7 | PAUL MANSDORF,
Trustee in Bankruptcy

Signed and Filed: April 2, 2025



**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

8 |        UNITED STATES BANKRUPTCY COURT

9 |        NORTHERN DISTRICT OF CALIFORNIA

10 |        SAN FRANCISCO DIVISION

11 | In re                                     Case No. 23-30250 HLB
Chapter 7
12 | THE SAN FRANCISCO ART INSTITUTE,          Hon. Hannah L. Blumensiel
        a California nonprofit
13 |    public benefit corporation,
                                               **ORDER AUTHORIZING COMPROMISE**
14 |                                            **CONCERNING CLAIM FILED**
                Debtor.                        **BY FMC PIER 2 SUBLESSOR, LLC**
15 |

16 |

17 |        Based on the Trustee's Motion for Order Authorizing Compromise Concerning Claim Filed

18 | by FMC Pier 2 Sublessor, LLC [Docket No. 231] ("Motion"),[1] his March 7, 2025, Notice of

19 | Compromise Concerning Claim Filed by FMC Pier 2 Sublessor, LLC [Docket No. 232], and the

20 | certificate of non-opposition, and it appearing that notice has been adequate, that no objection has

21 | been filed or served, and that good cause exists,

22 |        IT HEREBY ORDERED THAT:

23 |        1.        The Motion, which satisfies the requirements of *In re A&C Properties*, 784 F. 2d

24 | 1377 (9th Cir. 1986) and Federal Rule of Bankruptcy Procedure 9019, is granted.

25 |        2.        The Trustee is authorized to enter into an "Agreement to Resolve Claim Objection

26 | and Mutual Release" ("Agreement") with FMC Pier 2 Sublessor, LLC and Fort Mason Center, a

27 |

28 | _____
[1] Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

California non-profit public benefit corporation. A copy of the Agreement is attached to the Declaration of Paul Mansdorf in Support of Motion for Order Authorizing Compromise Concerning Claim Filed by FMC Pier 2 Sublessor, LLC [Docket No. 231-1].

3.    The Trustee is authorized to execute any and all documents he deems necessary to consummate the Agreement and satisfy his obligations under the Agreement.

4.    Upon entry of this Order (i) FMC will be deemed to have been granted relief from the automatic stay to accelerate the Annual Payments that it owes under the FMC Recourse Note to extinguish (via setoff) all sums due and owing by the Debtor under the Claim, (ii) the Claim shall be deemed fully satisfied and entitled to no other distributions, and (iii) FMC shall promptly deliver to the Trustee (or his counsel) the signed blue ink original Amended FMC Recourse Note in the principal amount of seven million dollars ($7,000,000.00) as of December 31, 2030, in the form substantially similar to the Amended FMC Recourse Note that is attached as Exhibit A to the Agreement.

5.    This order is effective upon entry and the stay otherwise imposed by Rule 62(a) of the Federal Rules of Civil Procedure and/or Bankruptcy Rule 6004(h) shall not apply.

*** END OF ORDER ***