Gregg S. Kleiner, State Bar No. 141311
Charles P. Maher, State Bar No. 124748
RINCON LAW LLP
268 Bush Street, Suite 3335
San Francisco, CA 94104
Telephone No.: 415-840-6385
Facsimile No.: 415-680-1712
E-mail:    gkleiner@rinconlawllp.com
           cmaher@rinconlawllp.com

Counsel for PAUL MANSDORF,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>THE SAN FRANCISCO ART INSTITUTE,<br>    a California nonprofit<br>    public benefit corporation,<br><br>    Debtor. | Case No. 23-30250 HLB<br>Chapter 7<br>Hon. Hannah L. Blumenstiel<br><br>**SUPPLEMENTAL DECLARATION OF PAUL MANSDORF IN SUPPORT OF MOTION FOR AUTHORITY TO DISPOSE OF ASSET (LITIGATION CLAIMS)** |

I, Paul Mansdorf, declare as follows:

1.  I am serving as Chapter 7 Trustee of the estate of the above Debtor. This supplemental declaration is filed in support of my motion filed June 13, 2025 for an order authorizing me to sell and assign the estate's affirmative claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and other claims against 10 individuals who served as officers of the San Francisco Art Institute or as directors of its board of trustees.

2.  In my motion, I noted that a specific buyer and assignee had not yet been identified and that parties had until July 10, 2025, to submit offers for the estate's affirmative claims. As of July 9, 2025, I received inquiries from four different entities seeking additional information litigation claims. With the assistance of my counsel, all four interested parties executed NDAs and were sent background documents including a draft complaint.

3.     Of the four parties that requested further information, two made offers by the July 10, 2025 deadline. One offer tracked the proposal set out in the motion – the division of any proceeds from the litigation claims to be divided 70% for the buyer and 30% of the proceeds net of fees and costs.

4.     I also received an offer from SFAI D&O Claims LLC ("Buyer"). The Buyer's offer proposed a 70/30 split, but it also includes a $55,000 up front cash payment ("Payment") to the estate to be paid within five (5) business days after the Court authorizes the relief sought in the motion. Under the agreement with the Buyer the Payment shall be retained by the estate and shall be non-reimbursable to the Buyer even if the litigation claims do not result in a recovery. In the event that there is any recovery from the litigation claims, the Buyer shall receive a credit in the amount of the Payment (i.e. in the event of a recovery from the litigation claims, the estate's 30% net recovery shall be reduced by $55,000). A true and correct copy of the agreement I have signed with the Buyer is attached hereto as **Exhibit A**.

5.     I have determined in the exercise of my business judgment that the highest and best offer was submitted by the Buyer.

6.     Concurrent with the filing of this declaration, my counsel will lodge an order by which I am requesting authorization to sell and assign the estate's affirmative claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty to the Buyer, in exchange for receipt by the bankruptcy estate of (i) the Payment; plus (ii) 30 percent of the net recovery whether by settlement or judgment after deduction for the Payment, attorney fees and costs.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 11th day of July 2025 in Berkeley, California.

Paul J. Mansdorf
Digitally signed by Paul J. Mansdorf
Date: 2025.07.11 10:44:52 -07'00'

PAUL MANSDORF

# AGREEMENT TO CONVEY LITIGATION RIGHTS

This Agreement to Convey Litigation Rights ("**Agreement**") is entered into as of July 11, 2025, by and between: (i) Paul Mansdorf, solely in his capacity as the Chapter 7 Trustee ("**Trustee**") of the bankruptcy estate ("**Estate**") of The San Francisco Art Institute, a California nonprofit public benefit corporation, Case No. 23-30250 HLB ("**Debtor**"), pending before the United States Bankruptcy Court, Northern District of California, San Francisco Division ("**Bankruptcy Court**") on the one hand; and (ii) SFAI D&O Claims LLC (the "**Buyer**"), on the other hand. The Trustee and the Buyer are each a "**Party**" and, collectively, the "**Parties**."

## RECITALS

A. The Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on April 19, 2023 ("**Petition Date**"). Soon thereafter, the Trustee was appointed to administer the assets of the Estate.

B. On June 13, 2025, the Trustee filed and served notice ("**Notice**") [Docket No. 257] on creditors and parties in interest of his intent tell sell the Estate's right, title and interest in affirmative for the alleged breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and other claims (the "**Litigation Claims**") against 10 individuals (collectively, the "**Potential Defendants**") who served as officers of the Debtor or as directors of its board of trustees.

C. The Notice provided that the Trustee would convey to a qualified buyer the Litigation Claims in exchange for the Trustee's receipt 30 percent of the net recovery by the buyer from the Litigation Claims whether the recovery was from settlement or judgment, after deduction of the buyer's attorney fees and costs. The Notice provides that the Trustee would not consider an offer on the foregoing basis from any Potential Defendant or anyone acting on behalf of or in collusion with any Potential Defendant, provided, however, that (i) any Potential Defendant may purchase the Litigation Claims for a cash payment of $1,000,000; and (ii) to avoid collusion on behalf of Potential Defendants, the purchase agreement shall include a provision, pursuant to 11 U.S.C. § 363(n), for liquidated damages in the amount of $500,000 if the Trustee discovers collusion with the Potential Defendants, their counsel, on any insurance carrier.

D. As of June 19, 2025, the Trustee has received expressions of interest in acquiring the Litigation Claims from four (4) parties, including the Buyer. Each interested party has executed a Non-Disclosure Agreement, following which the Trustee's counsel has provided copies of documents including a draft copy of a complaint. The complaint has not been filed with the Bankruptcy Court. The deadline to file a complaint is the subject of a litigation tolling agreement that was executed by the Trustee and the Potential Defendants. The tolling agreement provides a deadline of August 31, 2025.

## AGREEMENT

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

**EXHIBIT A**

1. The foregoing Recital paragraphs are incorporated by reference.

2. Effective on the date that the Bankruptcy Court has authorized the Trustee to obtain the relief sought in the Notice, the Trustee agrees to sell and assign to the Buyer the Estate's right, title and interest in and to the Litigation Claims against the Potential Defendants.

3. The Buyer shall, at its sole expense, fund all legal fees and costs in connection with its investigation and litigation of the Litigation Claims against the Potential Defendants. The Buyer shall have sole discretion in its choice and method of retention of legal counsel. Buyer will deliver to the Trustee THIRTY PERCENT (30%) from any judgment or settlement of any of the Litigation Claims from any Potential Defendant, after payment of its actual and necessary fees and expenses. The Buyer will be entitled to retain for itself SEVENTY PERCENT (70%) of the net proceeds after deduction of attorney fees and costs. In the event that a settlement has been reached or judgment entered and the Debtor's case has been closed, Buyer shall promptly notify, by email, the Office of the United States Trustee (ustpregion17.sf.ecf@usdoj.gov), the Trustee (paul@mansdorftrustee.com) and his counsel (gkleiner@rinconlawllp.com and cmaher@rinconlawllp.com), provide them details of the settlement or judgment, and request that the Debtor's case be reopened.

4. In addition to the consideration set forth in the prior paragraph, within five (5) business days after the Bankruptcy Court enters it order authorizing the relief requested in the Notice, the Buyer shall wire the sum of FIFTY-FIVE THOUSAND DOLLARS ($55,000) ("Payment") to the Trustee for the benefit of the Estate. The Payment shall be retained by the Estate and shall be non-reimbursable to the Buyer, even if the Litigation Claims do not result in a recovery. In the event that there is any recovery from the Litigation Claims, the Buyer shall receive a credit in the amount of the Payment (i.e. in the event of a recovery from the Litigation Claims, the Estate's 30% net recovery shall be reduced by $55,000). Buyer acknowledges receipt of the wire instructions, attached hereto. Pursuant to the tolling agreement, any complaint must be filed by **August 29, 2025,** subject to additional tolling agreements that may be agreed to between the Buyer and the Potential Defendants. Buyer represents and warrants to the Trustee that Buyer shall pursue the Litigation Claims in good faith for the mutual benefit of the Buyer and the Trustee, and that neither Buyer nor its agents or its assigns, now or in the future, shall work with any of the Potential Defendants, their counsel, or any insurance carrier, or anyone on their behalf, to resolve the Litigation Claims outside the scope of this Agreement to the detriment of the Trustee. In the event that the Trustee discovers any such collusion in violation of this Agreement, Buyer and Trustee agree that the damages for violation shall be liquidated in the amount of $500,000.

5. The Buyer acknowledges and agrees that it shall keep the Trustee and his counsel periodically informed, at least quarterly, of developments in the litigation.

6. Buyer acknowledges and agrees that the sale of the Litigation Claims to Buyer is made without any warranty or representation of any kind by the Trustee or the Estate, either express or implied, with respect to any aspect, allegation, portion or component of the Litigation Claims. Buyer agrees and acknowledges that, as of the date of the execution of this Agreement, Buyer has made and completed its evaluation, inquiries, and investigations concerning its

**EXHIBIT A**

purchase which Buyer shall deem necessary to satisfy itself as to all aspects of the Litigation Claims. Buyer further agrees and acknowledges that, in purchasing the Litigation Claims, Buyer has relied entirely on its own investigation, examination and inspection of the Litigation Claims and not upon any representation or warranty of the Trustee, the Estate, or any agent or representative of the Trustee. The Trustee acknowledges and agrees that the sale of the Litigation Claims to Buyer is made without any warranty or representation of any kind by the Buyer, either express or implied, with respect to any aspect, allegation, portion or component of the Litigation Claims and potential or expected outcome thereof and that Buyer will use its sole determination as to the claims to pursue against the Potential Defendants and issues related to enforcement and collection of any claim.

> **THE PARTIES AGREE THAT, IN CONSUMMATING THE PURCHASE OF THE LITIGATION CLAIMS PURSUANT TO THIS AGREEMENT, BUYER SHALL ACQUIRE THE LITIGATION CLAIMS "AS IS, WHERE IS" AND WITH ALL FAULTS, SOLELY IN RELIANCE ON BUYER'S OWN INVESTIGATION, EXAMINATION, INSPECTION, ANALYSIS AND EVALUATION OF THE LITIGATION CLAIMS.**

7. Each Party shall bear his, her, or its own attorneys' fees and costs in connection with the negotiation of this Agreement and in pursuing the Litigation Claims.

8. The Parties make no representations or warranties regarding the legal effect or tax consequences of this Agreement, or of any such filing or reporting by the Parties, or any of them. Each Party acknowledges that he, she, or it has not received or relied upon any tax advice from any other Party.

9. The Parties warrant and represent that they have read and understand this Agreement, that they have had a free and unfettered opportunity to consult individually and jointly with an independent attorney of their choosing regarding this Agreement and its effect, and that they execute this Agreement voluntarily and without duress or undue influence.

10. Neither this Agreement, nor any provision within it, shall be construed against any Party or its attorney because it was drafted in full or in part by such Party or its attorney. The Agreement shall be accordingly construed equally against all Parties. In this regard, the Parties waive any and all benefits and rights he, she, it, or they may have under California Civil Code § 1654, which provides as follows:

> IN CASES OF UNCERTAINTY NOT REMOVED BY THE PRECEDING RULES, THE LANGUAGE OF A CONTRACT SHOULD BE INTERPRETED MOST STRONGLY AGAINST THE PARTY WHO CAUSED THE UNCERTAINTY TO EXIST.

11. This Agreement contains the sole and entire agreement and understanding of the Parties with respect to the matters described herein, and any and all prior and contemporaneous

agreements, representations, discussions, negotiations, commitments, and understandings are merged into and superseded by this Agreement. No representations, oral or otherwise, express or implied, other than those written and contained herein have been made or relied upon by any of the Parties.

12.     This Agreement shall be construed in accordance with the laws of the State of California, except to the extent it is controlled by the federal bankruptcy laws

13.     The Parties agree that the Bankruptcy Court shall have exclusive jurisdiction over any dispute arising out of this Agreement, including, but not limited to the interpretation and enforcement of this Agreement, and, if necessary, to effect the Bankruptcy Court's jurisdiction, and by their signature to this Agreement, hereby stipulate to an order providing for such jurisdiction.

14.     The Agreement may not be modified except by a writing signed by all Parties, with specific written reference to this Agreement, and with approval of the Bankruptcy Court; provided, however, Bankruptcy Court approval is not required if the modification is ministerial or does not negatively impact the Debtor, its Estate, or its creditors. This paragraph shall in no way limit the Trustee and the Buyer from entering into any agreements they deem necessary to consummate this Agreement.

15.     This Agreement may be executed in one or more counterparts for the convenience of the Parties hereto, all of which together shall constitute one and the same instrument. Facsimile signatures, signatures transferred in PDF, signatures made electronically (e.g. DocuSign, etc.) shall be treated as original signatures for all purposes.

IN WITNESS WHEREOF, the Parties have each approved.

DATED: July 11, 2025          Estate of The San Francisco Art Institute,
                              a California nonprofit public benefit corporation,
                              Case No. 23-30250 HLB

                              By: _Paul J. Mansdorf_ (Digitally signed by Paul J. Mansdorf, Date: 2025.07.11 11:09:07 -07'00')
                              PAUL MANSDORF,
                              Chapter 7 Trustee

DATED: July 11, 2025          SFAI D&O Claims LLC

                              _William Gray_ (signature)

                              WILLIAM GRAY,
                              Manager

<span style="color:blue">**EXHIBIT A**</span>

*FLAGSTAR BANK, N.A. - WIRE TRANSFER INSTRUCTIONS FOR:*

SAN FRANCISCO ART INSTITUTE A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION CASE 23-30250-HLB

| | |
|---|---|
| **Bank:** | **FLAGSTAR BANK, N.A.**<br>**1400 BROADWAY 26TH FL**<br>**NEW YORK, NY  10018** |
| **ABA Routing No.:** | 026013576 |
| **Account Name:** | **SAN FRANCISCO ART INSTITUTE A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION CASE 23-30250-HLB PAUL J MANSDORF AS TRUSTEE 1569 SOLANO AVE. #703 BERKELEY, CA  94707** |
| **Account No.:** | ▮▮▮▮▮▮▮ |

*NOTE:  These instructions are for transfers of US Dollars only.*

**Incoming International Wires**
For incoming international wires, please use **SWIFT/BIC** Code: **SIGNUS33** instead of the ABA Routing Number noted above. Please note that no intermediary bank is used for incoming international wires to Flagstar Bank.

**EXHIBIT A**